HUESTON HENNIGAN LLP
Alison L. Plessman, State Bar No. 250631
aplessman@hueston.com
Lauren M. Johnson, State Bar No. 301542
ljohnson@hueston.com
Sara Banco, State Bar No. 320660
sbanco@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
Facsimile: (888) 775-0898

Attorneys for Defendant
Jedd Williams

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CISCO SYSTEMS, INC., a California Corporation, CISCO TECHNOLOGY, INC., a California Corporation,

Plaintiffs,

vs.

PLANTRONICS, INC., a Delaware Corporation; WILSON CHUNG, JAMES HE, JEDD WILLIAMS, and THOMAS PUORRO individuals,

Defendants.

Case No. 4:19-cv-07562-PJH

Honorable Phyllis J. Hamilton
Courtroom 3, 3rd Floor

**DEFENDANT JEDD WILLIAMS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY CASE OR, IN THE ALTERNATIVE, TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**

[*Filed concurrently with the Declaration of Jedd Williams; Proposed Order*]

Date: March 18, 2020
Time: 9:00 a.m.
Courtroom: 3

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on March 18, 2020, at 9:00 a.m., or as soon thereafter as may be heard, in Courtroom 3 of the above-entitled Court, located in the United States Courthouse, 1301 Clay Street, Oakland, California 94612, Defendant Jedd Williams will and hereby does move, pursuant to 9 U.S.C. § 4, for an order compelling Plaintiffs Cisco Systems, Inc. and Cisco Technology, Inc. (collectively, "Cisco") to submit Cisco's claims against him to arbitration and stay this action or, alternatively, to dismiss Cisco's claims under Federal Rule of Civil Procedure 12(b)(6).

This Motion is made on the grounds that Cisco's claims against Mr. Williams must be arbitrated pursuant to a valid, enforceable Mutual Agreement to Arbitrate (the "Agreement") entered into between Cisco and Mr. Williams in 2019. By its express terms, the Agreement covers any disputes between Cisco and Mr. Williams, with only limited exceptions that are not applicable to Cisco's claims. As such, Cisco's claims must be submitted to binding arbitration. *See United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 796 (9th Cir. 2017).

This Motion is also made on the alternative grounds that Cisco's claims against Mr. Williams for trade secrets misappropriation must be dismissed because Cisco has failed to allege the existence of any trade secrets. Cisco has failed to allege with sufficient particularity any subject matter that constitutes a protectable trade secret. *See AlterG, Inc. v. Boost Treadmills LLC*, 388 F.Supp.3d 1133, 1145 (N.D. Cal. 2019). Moreover, Cisco has failed to allege any facts to support its conclusory assertion that its trade secrets "derive[] independent economic value . . . from not being generally known." *See Direct Techs., LLC v. Elec. Arts, Inc.*, 836 F.3d 1059, 1070 (9th Cir. 2016). As such, Cisco has failed to state a claim for relief against Mr. Williams.

This Motion is based on this Notice of Motion, Memorandum of Points and Authorities, and the Declaration of Jedd Williams in support filed herewith, all pleadings and papers filed in this action, and such other matters as may be presented to the Court at the time of or before the hearing.

Dated: January 27, 2020

Respectfully submitted,

HUESTON HENNIGAN LLP

By: */s/ Alison L. Plessman*
Alison L. Plessman
Attorneys for Defendant Jedd William

## TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 7

II. BACKGROUND ..... 8

III. LEGAL STANDARD ..... 10

A. Motion to Compel Arbitration ..... 10

B. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) ..... 11

IV. ARGUMENT ..... 12

A. The Court Should Compel Arbitration of Cisco's Claims Against Mr. Williams and Stay This Action ..... 12

1. The Agreement Constitutes a Valid Agreement to Arbitrate ..... 13

2. The Agreement Encompasses Cisco's Claims ..... 13

3. The Court Should Stay This Case Pending the Conclusion of the Arbitration Proceedings ..... 15

B. Alternatively, the Court Should Dismiss the Claims Pursuant to Federal Rule of Civil Procedure 12(b)(6) ..... 16

1. Cisco Fails to Allege its Purported Trade Secrets with Sufficient Particularity ..... 17

2. Cisco Fails to Allege Any Facts Showing that Its Purported Trade Secrets Derive Independent Economic Value ..... 20

V. CONCLUSION ..... 21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acrisure of Cal., LLC v. SoCal Commercial Ins. Servs., Inc.*,
2019 WL 4137618 (C.D. Cal. Mar. 27, 2019)........ 8, 20, 21

*AlterG, Inc. v. Boost Treadmills LLC*,
388 F.Supp.3d 1133 (N.D. Cal. 2019)........ 8, 16, 17

*Am. Exp. Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)........ 11

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)........ 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........ 12

*Bladeroom Grp. Ltd. v. Facebook, Inc.*,
2015 WL 8028294 (N.D. Cal. Dec. 7, 2015)........ 19

*Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*,
816 F.3d 1208 (9th Cir. 2016)........ 11

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000)........ 11, 12, 13

*Daniel v. Ford Motor* Co.,
806 F.3d 1217 (9th Cir. 2015)........ 14

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)........ 10, 12, 13

*Direct Techs., LLC v. Elec. Arts, Inc.*,
836 F.3d 1059 (9th Cir. 2016)........ 17, 20

*Doe v. City & Cnty. of S.F.*,
835 F. Supp. 2d 762 (N.D. Cal. 2011)........ 7

*Epicor Software Corp. v. Alternative Tech. Sols., Inc.*,
2013 WL 12130024 (C.D. Cal. Dec. 2, 2013)........ 21

*Hilderman v. Enea TekSci, Inc.*,
551 F.Supp.2d 1183 (S.D. Cal. 2008)........ 20

*Howard v. Octagon, Inc.*,
2013 WL 5122191 (N.D. Cal. Sept. 13, 2013)........ 14

TABLE OF AUTHORITIES

Page(s)

*Ileto v. Glock Inv.*,
349 F.3d 1191 (9th Cir. 2003) .......... 12

*Imax Corp. v. Cinema Techs., Inc.*,
152 F.3d 1161 (9th Cir. 1998) .......... 16

*Jaffe v. Zamora*,
57 F.Supp.3d 1244 (C.D. Cal. 2014) .......... 15, 16

*Levitt v. Yelp!, Inc.*,
765 F.3d 1123 (9th Cir. 2014) .......... 12

*Monzon v. S. Wine & Spirits of Cal.*,
834 F.Supp.2d 934 (N.D. Cal. 2011) .......... 14

*Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp.*,
460 U.S. 1 (1983) .......... 11, 14

*Norcia v. Samsung Telecomms. Am., LLC*,
845 F.3d 1279 (9th Cir. 2017) .......... 11

*Perryman v. Dorman*,
2011 WL 379313 (D. Ariz. Feb. 2, 2011) .......... 20

*PNR Mktg. Sols. LLC. v. Fun Flicks of S. Cal.*,
2019 WL 3220020 (C.D. Cal. Apr. 22, 2019) .......... 8, 14

*Revitch v. DirecTV, LLC*,
2018 WL 4030550 (N.D. Cal. Aug. 23, 2018) .......... 14

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) .......... 12

*Space Data Corporation v. X*,
2017 WL 5013363 (N.D. Cal. Feb. 16, 2017) .......... 17, 18

*SteppeChange LLC v. VEON Ltd.*,
354 F.Supp.3d 1033 (N.D. Cal. 2018) .......... 15, 16

*Torbit, Inc. v. Datanyze, Inc.*,
2013 WL 572613 (N.D. Cal. Feb. 13, 2013) .......... 13

*Tours & Travel, Inc. v. Infinitywaves, LLC*,
2014 WL 12597126 (C.D. Cal. Sept. 8, 2014) .......... 20

*United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*,
871 F.3d 791 (9th Cir. 2017) .......... 11

TABLE OF AUTHORITIES

Page(s)

*Vendavo, Inc. v. Price f(x) AG*,
2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) .......... 17, 18

*WeRide Corp. v. Kun Huang*,
379 F.Supp.3d 834 (N.D. Cal. 2019) .......... 16

*Wynn Resorts, Ltd. v. Atl.-Pac. Capital, Inc.*,
497 Fed. App'x 740 (9th Cir. 2012) .......... 11

**Statutes**

18 U.S.C. § 1839 .......... 17

9 U.S.C. § 2 .......... 11

9 U.S.C. § 3 .......... 15

9 U.S.C. § 4 .......... 11

Cal. Civ. Code § 3426.1 .......... 17, 19

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Mr. Williams moves to compel arbitration of Cisco's claims against him and stay this action or, in the alternative, to dismiss Cisco's claims under Federal Rule of Civil Procedure 12(b)(6).[1] Cisco's claims against Mr. Williams include (1) violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836; and (2) violation of the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426. These claims fall squarely within the Mutual Agreement to Arbitrate (the "Agreement") that Mr. Williams executed following his resignation from Cisco. But even if Cisco's claims are not subject to arbitration (they are), its claims must still be dismissed because Cisco has failed to allege a claim for trade secrets misappropriation under either DTSA or CUTSA.

Cisco's claims against Mr. Williams are based on allegations that Mr. Williams—a loyal Cisco employee for more than 21 years—misappropriated "Cisco's Confidential Materials" in order to obtain an employment position at Plantronics, Inc. ("Poly"). In support of these claims, Cisco asserts a litany of incredulous, unsupported accusations, including that Mr. Williams somehow misappropriated Cisco's trade secrets because he described his successful employment performance at Cisco during his interviews with Poly executives, uploaded Cisco's materials to Cisco's own storage site to assist Cisco with its transition process upon his resignation, and failed to return a back-up of his work laptop that was created on his home server pursuant to a standard computer feature of which Cisco was fully aware. Moreover, as the First Amended Complaint makes clear, Cisco's allegations rely almost entirely on private conversations that Cisco apparently took from Mr. Williams' personal email account and cell phone in an egregious invasion of Mr. Williams' privacy. *See Doe v. City & Cnty. of S.F.*, 835 F. Supp. 2d 762, 769 (N.D. Cal. 2011) (employees possess "reasonable expectation of privacy in [personal] data stored on work computers"). In short, Cisco's claims reveal nothing other than a blatant attempt to discourage Cisco's employees from accepting positions with its competitors by smearing the reputations of those that do and must be rejected for several reasons.

---

[1] For the convenience of the parties and the Court, Defendants collectively request that the motions to dismiss filed by each Defendant be heard together on March 18, 2020.

*First*, Cisco's claims must be submitted to binding arbitration pursuant to the Agreement. The Agreement's unequivocal, broad language requiring the arbitration of "all claims, disputes, or controversies, past, present, or future, whether or not arising out of [Williams'] employment (or its termination)" plainly reaches Cisco's claims against Mr. Williams for trade secrets misappropriation. *See PNR Mktg. Sols. LLC. v. Fun Flicks of S. Cal.*, 2019 WL 3220020, at *2 (C.D. Cal. Apr. 22, 2019) (finding that an arbitration agreement covering "any and all claims and controversies and all disputes that may arise between" the parties encompassed claims for trade secrets violations). To be sure, *none* of the limited claims excluded from arbitration by the Agreement have any remote connection to Cisco's claims. Cisco's attempt to evade the clear terms of the Agreement—which *Cisco* drafted and requested that Mr. Williams sign—should be rejected out of hand.

*Second*, even assuming Cisco's claims were not subject to arbitration (they are), Cisco's claims against Mr. Williams must still be dismissed because the First Amended Complaint fails to allege any protectable trade secrets that were misappropriated. The Complaint vaguely alleges that broad, generic categories of information pertaining to almost every aspect of Cisco's business constitute "Cisco's Confidential Materials," which Cisco alleges consist of the trade secrets that Mr. Williams purportedly misappropriated. Numerous courts in the Northern District of California have dismissed claims under DTSA and CUTSA based on similarly broad allegations. *See, e.g.*, *AlterG, Inc. v. Boost Treadmills LLC*, 388 F.Supp.3d 1133, 1144 (N.D. Cal. 2019) (dismissing complaint that alleged only broad categories of information and failed to identify any protectable trade secret with sufficient particularity). In addition, the First Amended Complaint fails to allege a single fact in support of its conclusory allegations that this wide range of information has "independent economic value" by virtue of it being unknown to others. *See Acrisure of Cal., LLC v. SoCal Commercial Ins. Servs., Inc.*, 2019 WL 4137618, at *4 (C.D. Cal. Mar. 27, 2019) (dismissing complaint that failed to allege any facts supporting conclusory statement that trade secrets had independent economic value).

For these reasons, the Court should compel arbitration of Cisco's claims and stay this action pending arbitration or, in the alternative, dismiss Cisco's claims against Mr. Williams.

## II. BACKGROUND

Mr. Williams was employed at Cisco for more than 21 years as a sales leader in Cisco's Global Collaboration Sales Department. *See* Decl. of Jedd Williams ISO Motion to Compel or Dismiss ("Williams Decl.") ¶ 2; First Amended Compl. ("FAC") ¶ 127, Dkt. 025 (Dec. 17, 2019). In 2019, Cisco eliminated Mr. Williams' team. As a result, Mr. Williams interviewed and was offered employment by several employers, including Plantronics, Inc. ("Poly"). *See* FAC ¶¶ 170, 179. Upon resigning from Cisco in October 2019, Mr. Williams made significant efforts to return Cisco's equipment and information. *See id.* ¶ 184.

As part of Mr. Williams' resignation process, Cisco requested that Mr. Williams execute a Mutual Agreement to Arbitrate. Williams Decl. ¶ 2. The Agreement includes the following provision:

> The Company [Cisco] and I [Mr. Williams] agree to resolve exclusively through binding arbitration all claims, disputes, or controversies ("claims"), past, present or future, ***whether or not arising out of my employment (or its termination),*** that the Company may have against me or that I may have against . . . the Company . . . . [e]xamples of claims that we both agree to submit to arbitration include . . . ***all other claims related to the employment relationship (or its termination)***, regardless of whether the claim is brought by me or the Company.

*Id.*, Ex. A at 1 (emphasis added).

The Agreement, by its plain terms, only exempts specific claims from arbitration, including: (1) claims for provisional relief, such as a preliminary injunction or temporary restraining order; (2) claims that are not subject to arbitration under applicable governing law, (3) administrative claims that must be filed with government agencies, (4) claims that were currently pending in litigation at the time the agreement was signed, and (5) representative claims filed by a party seeking civil penalties on behalf of the state. *Id.* The Agreement also contains an integration clause stating that it "is the complete Agreement between the parties on the subject of arbitration." *Id.* at 2.

Nevertheless, shortly after Mr. Williams' resignation, Cisco filed a complaint in this Court against Mr. Williams and two additional former Cisco employees alleging misappropriation of trade secrets in violation of DTSA and CUTSA. Compl., Dkt. 001 (Nov. 18, 2019). A month later, Cisco

amended its complaint to include Poly and Thomas Puorro, an additional former Cisco employee and current employee of Poly, as defendants. *See generally* FAC.

Cisco's claims against Mr. Williams are based on allegations that during his employment at Cisco, Mr. Williams misappropriated "Cisco's Confidential Materials" and disclosed them to individuals at Poly, including Mr. Puorro (a former Cisco employee and long-time friend of Mr. Williams), during his interview process so that he could obtain a job at Poly. *Id.* ¶¶ 8, 23, 129-187. The First Amended Complaint vaguely defines "Cisco Confidential Materials" as "highly confidential and proprietary business information [] relating to the design, manufacture, pricing, and market opportunities for both current and unreleased products." *Id.* ¶ 4. Among other things, Cisco alleges that Mr. Williams misappropriated these materials by: (1) disclosing a document containing "market and strategy data" and "financial and business information," such as "bookings data," "growth rate," and a "geographic breakdown" of Cisco's "global collaboration business" to a Poly consultant, *id.* ¶¶ 131, 153-54; (2) disclosing "partner margins," "product strategy," and "other financial data" to Poly executives, *id.* ¶¶ 156-57, 258; (3) disclosing business information in the form of Cisco's "potential limited restructurings" to Mr. Puorro, *id.* ¶ 159, 258; (4) disclosing "information concerning Cisco's emerging technologies, competitive focus, sales opportunities and customer lists, product pipelines, and future plans for current products" to Mr. Puorro and Poly executives, *id.* ¶¶ 162, 164-77, 258; and (5) failing to return an electronic backup of his work laptop, which allegedly contained "detailed information about Cisco's sales forecasts and opportunities, including customer names, commitments, and upsides," after his resignation, *id.* ¶ 187.

As set forth below, Cisco's claims against Mr. Williams fall squarely within the arbitration clause contained in the Agreement. But even if they do not (they do), these allegations fail to state a claim for trade secrets misappropriation under governing law.

## III. LEGAL STANDARD

### A. Motion to Compel Arbitration

Under the Federal Arbitration Act ("FAA"),[2] written agreements to arbitrate "'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (quoting 9 U.S.C. § 2). A party aggrieved by the refusal of another party to arbitrate under a written agreement for arbitration may petition the court for an order compelling arbitration. 9 U.S.C. § 4. The party moving to compel arbitration "bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quotation marks omitted). Once the moving party has met this initial burden, "the party resisting arbitration bears the burden of establishing that the arbitration agreement is inapplicable." *Wynn Resorts, Ltd. v. Atl.-Pac. Capital, Inc.*, 497 Fed. App'x 740, 742 (9th Cir. 2012).

Both the United States Supreme Court and the Ninth Circuit Court of Appeals have consistently emphasized the "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983); *AT&T Mobility LLC v. Concepcion*¸ 563 U.S. 333, 346 (2011) (noting the strong "national policy favoring arbitration"); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (same). For this reason, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

Whether an agreement to arbitrate exists is a matter of contract and thus courts interpret arbitration agreements under the same overarching principles that govern general contract interpretation. *See Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1211 (9th Cir. 2016). For an arbitration agreement covered by the FAA, this determination "is governed by federal common law, which, in

---

[2] The Agreement expressly states that "[t]he Federal Arbitration Act shall govern the interpretation and enforcement of this agreement." Williams Decl. Ex. A at 2.

turn, looks to general principles for interpreting contracts." *Casa del Caffe Vergnano S.P.A.*, 816 F.3d at 1211. If the text of the agreement plainly and unambiguously encompasses the claim, the court "must rigorously enforce arbitration agreements according to their terms." *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 796 (9th Cir. 2017).

**B. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. A defendant is entitled to dismissal where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). "[T]he complaint must allege factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Levitt v. Yelp!, Inc.*,765 F.3d 1123, 1134-35 (9th Cir. 2014). While a court analyzing a motion under Rule 12(b)(6) is required to construe all facts alleged in the light most favorable to the non-moving party, the court is not required to accept as true "unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations." *Ileto v. Glock Inv.*, 349 F.3d 1191, 1200 (9th Cir. 2003).

The Ninth Circuit has set forth a two-step process for evaluating pleadings. *Levitt*, 765 F.3d at 1135. First, "to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Id.* Second, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

## IV. <u>ARGUMENT</u>

### A. The Court Should Compel Arbitration of Cisco's Claims Against Mr. Williams and Stay This Action

In ruling on a motion to compel arbitration under the FAA, a district court's role is limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130. If a claim satisfies

these factors, district courts are mandated to "direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds*, 470 U.S. at 218. Both of these factors are easily met here. Moreover, given the overlapping factual issues between Cisco's claims against Mr. Williams and its claims against Poly and Mr. Puorro, a stay of this action is warranted pending the resolution of the arbitration proceedings.

1. The Agreement Constitutes a Valid Agreement to Arbitrate

The arbitration clause in the Agreement constitutes a valid and enforceable agreement between Mr. Williams and Cisco to submit "all claims, disputes, or controversies, past, present or future, whether or not arising out of [Mr. Williams'] employment (or its termination)" to arbitration. Williams Decl., Ex. A at 1. This Agreement became binding upon both Mr. Williams and Cisco once it was signed by Mr. Williams on October 15, 2019. *Id.* at 2 ("This Agreement shall become binding on the Company, without need for its signature, once I [Mr. Williams] electronically or physically sign the Agreement."); *see Dean Witter Reynolds, Inc.*, 470 U.S. at 218 (finding that once an arbitration agreement has been executed, it becomes binding under the FAA).

Thus, the only question before the Court is whether the arbitration clause in the Agreement encompasses Cisco's claims against Mr. Williams. *Chiron Corp.*, 207 F.3d at 1130. There is no question that it does.

2. The Agreement Encompasses Cisco's Claims

Cisco's claims against Mr. Williams for misappropriation of trade secrets fall squarely within the Agreement. The Agreement expressly covers all claims "***related to the employment relationship (or its termination)***," among others. Williams Decl., Ex. A at 1 (emphasis added). Cisco's allegations make clear that its claims are directly related to its employment relationship with Mr. Williams and Mr. Williams' subsequent resignation. To be sure, the First Amended Complaint alleges that Mr. Williams had access to Cisco's alleged trade secrets by virtue of his employment at Cisco, that Mr. Williams took that information from Cisco during his employment, and that Mr. Williams used that information to obtain a position with Poly, thereby resulting in his resignation from Cisco. *See, e.g.*, FAC ¶¶ 130-31, 153-55, 166, 174. These claims are undisputedly "related" to Cisco's employment relationship with Mr. Williams and its termination. *See Torbit, Inc. v.*

*Datanyze, Inc.*, 2013 WL 572613, at *4 (N.D. Cal. Feb. 13, 2013) (finding trade secrets misappropriation claim was arbitrable because it was "'intertwined' with or 'relate[d] directly to' [the former employee's] employment agreement" containing arbitration clause).

But even if Cisco's claims were not related to its employment relationship with Mr. Williams (they are), they would still be covered by the arbitration clause because the agreement covers *all* disputes between the parties, "*whether or not* arising out of [Mr. Williams's] employment." Williams Decl., Ex. A at 1. There is no question that claims for trade secret misappropriation are covered by this language. *See Monzon v. S. Wine & Spirits of Cal.*, 834 F.Supp.2d 934, 941-42 (N.D. Cal. 2011) (finding that plaintiff's statutory claims were covered by arbitration agreement's language encompassing "all claims or controversies ('claims'), past, present, or future, *whether or not* arising out of Plaintiff's employment, or its termination"); *PNR Mktg. Sols. LLC. v. Fun Flicks of S. Cal.*, 2019 WL 3220020, at *2 (C.D. Cal. Apr. 22, 2019) (finding that an arbitration agreement covering "any and all claims and controversies and all disputes that may arise between" the parties encompassed claims for trade secrets violations).

Moreover, even if Cisco were to argue the Agreement is somehow ambiguous as to whether it encompasses Cisco's claims (it is not), any ambiguity must be construed against Cisco. Federal courts have made clear that, consistent with general principles of contract law, any ambiguity in an arbitration agreement must be construed against the drafter of the agreement. *See Howard v. Octagon, Inc.*, 2013 WL 5122191, at *9 (N.D. Cal. Sept. 13, 2013) (construing ambiguity in arbitration provision against drafter); *Revitch v. DirecTV, LLC*, 2018 WL 4030550, at *16 (N.D. Cal. Aug. 23, 2018) (same). This is particularly so where the contract is one of adhesion, such as that between employer and employee. *Daniel v. Ford Motor* Co., 806 F.3d 1217, 1224 (9th Cir. 2015) ("The rule that any ambiguities caused by the draftsman of the contract must be resolved against that party applies with peculiar force in the case of the contract of adhesion."). Moreover, there is a strong federal policy favoring arbitration. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25 ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.").

For these reasons, the Court should find that Cisco's claims against Mr. Williams are subject to arbitration under the Agreement and grant Mr. Williams' motion to compel arbitration.

3. The Court Should Stay This Case Pending the Conclusion of the Arbitration Proceedings

The Court should stay this action pending the resolution of the arbitration proceedings between Cisco and Mr. Williams. The FAA authorizes federal courts to stay proceedings pending arbitration. 9 U.S.C. § 3. "Where some litigants are not parties to the arbitration agreement, the court may nonetheless stay the entire action if 'arbitration of claims against a party to an arbitration agreement is likely to resolve factual questions coextensive with claims against nonparties to that arbitration agreement.'" *Jaffe v. Zamora*, 57 F.Supp.3d 1244, 1248 (C.D. Cal. 2014); *SteppeChange LLC v. VEON Ltd.*, 354 F.Supp.3d 1033, 1045 (N.D. Cal. 2018) (same). In such circumstances, a stay promotes "judicial economy and avoidance of confusion and possible inconsistent results." *SteppeChange*, 354 F.Supp.3d at 1045.

Here, Cisco's claims against Mr. Williams are inextricably intertwined with its claims against the other Defendants. To be sure, its claims against Mr. Puorro involve the exact same factual questions raised by Cisco's claims against Mr. Williams. *E.g.* FAC ¶¶ 127-177, 285-86. Cisco alleges that Mr. Puorro is liable for trades secret misappropriation because he "initiated a scheme whereby he would exchange coaching and advocacy on Mr. Williams' behalf for confidential details about Cisco's competitive business," including "Cisco's Confidential Materials." *Id.* ¶¶ 130, 285, 300-01. In other words, Mr. Puorro can only liable if Mr. Williams is found to have misappropriated Cisco's trade secrets.

Similarly, the trade secrets misappropriation claims against Poly, Mr. He, and Dr. Chung are based, at least in part, on the same allegations asserted against Mr. Puorro and Mr. Williams. Cisco alleges that, like Mr. Williams, Dr. Chung was recruited by Mr. Puorro to join Poly and misappropriate "Cisco's Confidential Materials" for the benefit of Poly. *Id.* ¶ 26. Thereafter, Dr. Chung allegedly "carried out Poly and Mr. Puorro's efforts to entice Cisco's collaboration engineers to join Poly by recruiting his former colleague, Mr. He," and that Mr. He thereafter provided "Cisco's Confidential Materials" to Poly. *Id.* ¶¶ 26, 97-126. Cisco further alleges that each of the individual

Defendants misappropriated "Cisco's Confidential Materials" as part of a scheme that "was endorsed by senior Poly executives and was designed to give Poly access to Cisco's trade secrets and allow Poly to unfairly compete with Cisco." *Id.* ¶¶ 8, 317-322. These allegations raise numerous questions of fact and law that are common to each Defendant, including, among other things, whether "Cisco's Confidential Materials" constitute trade secrets and whether the Defendants did, in fact, misappropriate these materials as part of a scheme to benefit Poly.

In order to avoid unnecessarily litigating claims raising the same questions of fact and law in two separate forums, which could result in inconsistent rulings, the Court should stay the entirety of this action during the pendency of the arbitration proceedings. *See SteppeChange LLC*, 354 F.Supp.3d at 1045 (staying action involving a non-signatory to an arbitration agreement pending the arbitration due to overlapping factual and legal issues); *Jaffe*, 57 F.Supp.3d at 1248 (staying action where arbitration was "likely to resolve significant factual questions at issue in [plaintiff's] claim against [non-signatory to arbitration agreement]").

### B. Alternatively, the Court Should Dismiss the Claims Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Alternatively, the Court should dismiss Cisco's claims under Federal Rule of Civil Procedure 12(b)(6). Claims under both CUTSA and DTSA require a plaintiff to allege that "(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *AlterG*, 388 F.Supp.3d at 1144; *see also WeRide Corp. v. Kun Huang*, 379 F.Supp.3d 834, 845 (N.D. Cal. 2019).

To allege the first element, a plaintiff must "identify the trade secrets and carry the burden of showing that they exist." *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164 (9th Cir. 1998). This requires a plaintiff to "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *AlterG*, 388 F.Supp.3d at 1144 & n.1 (emphasizing that this standard "is applied to both DTSA and CUTSA claims"). A plaintiff must also plead facts demonstrating that the trade secret "derives independent economic value, actual or potential, from not being generally known to, or readily

ascertainable by other people who can obtain economic value from its disclosure or use." *Direct Techs., LLC v. Elec. Arts, Inc.*, 836 F.3d 1059, 1070 (9th Cir. 2016) (citing Cal. Civ. Code § 3426.1(d)); *see also* 18 U.S.C. § 1839(3).

Cisco's First Amended Complaint both fails to identify with sufficient particularity the trade secrets it alleges Mr. Williams misappropriated and fails to allege any facts demonstrating that any such trade secrets derive independent economic value from not being generally known.

1. Cisco Fails to Allege its Purported Trade Secrets with Sufficient Particularity

Cisco's First Amended Complaint vaguely alleges that broad categories of information covering almost every aspect of its business, including information ranging from "market and strategy data" to "organizational changes" and "restructuring," constitute trade secrets that it claims Mr. Williams misappropriated. Courts in this District, however, have made it exceedingly clear that to identify trade secrets with sufficient particularity, it is not enough to describe the subject matter of the trade secret "in broad, categorical terms." *AlterG, Inc.*, 388 F.Supp.3d at 1145; *Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018). For this reason, courts dismiss claims for trade secrets misappropriation that fail to provide "specific descriptions" of the trade secrets purportedly stolen. *AlterG, Inc.*, 388 F.Supp.3d at 1145; *see also Vendavo*, 2018 WL 1456697, at *4 (dismissing complaint for failing to identify trade secrets with sufficient particularity); *Space Data Corporation v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (same).

*AlterG* is instructive. There, the plaintiff broadly alleged that the defendants misappropriated trade secrets consisting of the plaintiff's platform project that "explored market alternatives that included positive and negative learnings" of certain systems, its "technology and negative information and learnings," product information, "marketing and product strategies," "cost strategies," "engineering and structural technology," "customer needs," "material selection and fabrication techniques," and various other categories of information. *AlterG*, 388 F.Supp.3d at 1145. The Northern District dismissed the complaint, explaining that these categories were too "vague" and not tethered to any "specific technology" or other trade secret that could be separated from matters of general knowledge in the trade. *Id.*

Similarly, in *Vendavo*, the Northern District dismissed claims for trade secrets misappropriation where the plaintiff alleged in conclusory form that the trade secrets consisted of its "source codes, customer lists and customer related information, pricing information, vendor lists and related information, marketing plans and strategic business development initiatives," and numerous other categories of information. 2018 WL 1456697, at *3. The court emphasized that the plaintiff had "set out its purported trade secrets in broad, categorical terms, more descriptive of the types of information that generally *may* qualify as protectable trade secrets than as any kind of listing of particular trade secrets [the plaintiff] has a basis to believe actually were misappropriated here." *Id.* at *4.

Likewise, in *Space Data*, the Northern District again dismissed claims for trade secrets misappropriation where the complaint "merely provide[d] a high-level overview of [the plaintiff's] trade secrets, such as data on the environment in the stratosphere and data on the propagation of radio signals." 2017 WL 5013363 at *2. The court reasoned that these allegations were insufficient because "they do not even give the Court or [d]efendants notice of the boundaries of this case." *Id.*

Here, Cisco's allegations are nearly identical to those found insufficient in *AlterG*, *Vendavo*, and *Space Data*. The First Amended Complaint vaguely defines the "Cisco Confidential Materials" that were misappropriated as "highly confidential and proprietary business information [] relating to the design, manufacture, pricing, and market opportunities for both current and unreleased products." FAC ¶ 4. It then broadly alleges that this information constitutes trade secrets because it includes "market and strategy data, partner margins, potential limited restructurings, information concerning Cisco's emerging technologies, competitive focus, sales opportunities and customer lists, product pipelines, and future plans for current products" and "pricing information and strategic business development plans." *Id.* ¶ 258. The additional facts alleged in support are equally vague and merely refer to this information as "financial and business information," information regarding unspecified "organizational changes," "limited restructuring," and "layoffs" at Cisco, and information regarding the "bookings data," "growth rate," "geographic breakdown," and undefined other "details" of Cisco's "global collaboration business." *Id.* ¶¶ 131, 148-49, 153-54, 156-8\58, 159, 162, 164, 167.

Broad categories of information like "sales strategies," "sales forecasts and opportunities," "customer names, commitments and upsides" are not protectable trade secrets. *Id.* ¶¶ 158, 162, 164, 187.

For example, the First Amended Complaint alleges that "Mr. Williams prepared a 'discussion guide' PowerPoint presentation" for an interview at Poly, which purportedly contained "Cisco's product strategy and other financial data." *Id.* ¶ 156. However, it does not allege a single fact explaining how this unspecified "product strategy and other financial data" contains trade secret information. *See Vendavo*, 2018 WL 1456697, at *3 (allegations that company's trade secrets consisted of "pricing information" and "marketing plans and strategic business development initiatives" were insufficient). Similarly, the First Amended Complaint's allegations that Mr. Williams "provided details" about "a potential Limited Restructuring . . . including layoffs in Cisco's Collaboration Business Unit" fail to identify any protectable trade secret with particularity. FAC ¶ 158. To be sure, Cisco provides no basis to conclude that information about its layoffs could possibly constitute a trade secret. *See AlterG*, 388 F.Supp.3d at 1145 (vague references to company's "cost strategies" and "customer needs" were insufficient to allege an identifiable trade secret). And the similarly vague allegations that Mr. Williams informed Poly executives about "Project Liberator" and "Project x," which allegedly contain Cisco's "sale strateg[ies]," equally fail to describe any identifiable trade secret contained in these projects. *Space Data*, 2017 WL 5013363 at *2 (high-level description of trade secrets as "data on the environment in the stratosphere and data on the propagation of radio signals" were insufficient to plead claim for trade secret misappropriation).[3]

At best, these allegations constitute nothing more than a generic list of potentially protectable trade secrets that fall far short of pleading any actual trade secret with sufficient particularity. And

[3] Moreover, based on the vague descriptions of the purported trade secrets in the First Amended Complaint, it appears that a significant amount of the information is likely publicly available. For example, information about Cisco's layoffs and restructuring is available in the public domain, and it is impossible to tell from the First Amended Complaint what additional information about its layoffs it considers a "trade secret." Similarly, there are numerous advertisements for Cisco's "Project Liberator" that are publicly available. The First Amended Complaint contains no allegations identifying what information within these broad categories is actually confidential and protectable as a trade secret. Because it is impossible for Mr. Williams to discern from the First Amended Complaint's vague and overbroad descriptions how the alleged trade secrets are different from publicly available information on the same topics, the First Amended Complaint should be dismissed.

despite Cisco's repeated emphasis on the confidential and proprietary nature of this vast array of subject matter, confidentiality alone is *not* a sufficient basis to identify a trade secret. *See Bladeroom Grp. Ltd. v. Facebook, Inc.*, 2015 WL 8028294, at *3 (N.D. Cal. Dec. 7, 2015) ("Plaintiffs' contention that the information is 'confidential' is an insufficient reason to find that it has pled a trade secret since that contention is a legal conclusion."); *Hilderman v. Enea TekSci, Inc.*, 551 F.Supp.2d 1183, 1199 (S.D. Cal. 2008) ("'[P]roprietary' information . . . is not the same thing as trade secrets."). Thus, merely labeling information as "non-public," "sensitive," or "confidential" is insufficient.

For these reasons, the Court should follow the example of numerous California federal courts and dismiss Cisco's claims against Mr. Williams. *See also Acrisure of Cal., LLC*, 2019 WL 4137618, at *3 (dismissing CUTSA claim where plaintiff alleged that trade secrets included "customer contact lists, prospects or projections, processes, policies [sic] contracts, information regarding accounts and expiration or renewals thereof, account proposals" and other matters, emphasizing that these allegations were "vague and conclusory, consisting only of a generic list of different types of information"); *Bladeroom Grp. Ltd.*, 2015 WL 8028294, at *3 (holding that plaintiff failed to plead the existence of trade secrets where "allegations identifying the purported trade secret are vague and conclusory, and consist of a generic list of categories of various types of information")*; Tours & Travel, Inc. v. Infinitywaves, LLC*, 2014 WL 12597126, at *5 (C.D. Cal. Sept. 8, 2014) (dismissing trade secrets misappropriation claim where plaintiff did not identify or describe the allegedly "confidential information" constituting trade secrets other than listing broad categories of information it claimed were confidential).

2. <u>Cisco Fails to Allege Any Facts Showing that Its Purported Trade Secrets Derive Independent Economic Value</u>

The Court should also dismiss Cisco's claims for the separate and independent reason that Cisco has failed to allege *any* facts demonstrating that its purported trade secrets "derive[] independent economic value . . . from not being generally known." *Direct Techs., LLC*, 836 F.3d at 1070 (quoting Cal. Civ. Code § 3426.1(d)). Courts have made clear that merely reciting this element is insufficient to state a claim for trade secrets misappropriation. *Acrisure of Cal., LLC,* 2019 WL 4137618, at *4 (dismissing plaintiff's trade secret misappropriation claim where complaint did not

allege any facts supporting its conclusory assertion that its trade secrets had economic value from not being generally known); *Perryman v. Dorman,* 2011 WL 379313, at *6 (D. Ariz. Feb. 2, 2011) (dismissing defendants' counterclaim for trade secret misappropriation where defendants did no more than "point to documents marked as confidential, and allege that the information they contain 'has independent economic value because it is not generally known to, and not readily ascertainable by proper means, by other persons who can obtain economic value from their use'").).

The First Amended Complaint's only allegations pertaining to this element consist of conclusory statements that Cisco's "trade secrets derive independent economic value, actual or potential, from not being generally known to, and/or not being readily ascertainable through proper means by, the public or other persons who can obtain economic value from the disclosure or use of the information." *See* FAC ¶ 270; *see also id.* ¶¶ 154, 157, 159, 177 (repeatedly alleging that Cisco's trade secrets "derive[] independent economic value from not being generally known"). At no point does Cisco set forth any facts showing *how* its purported trade secrets derive independent economic value, let alone that such economic value is derived from the confidential nature of the alleged trade secrets. This is plainly inadequate. *See Acrisure of Cal., LLC*, 2019 WL 4137619, at *4; *Epicor Software Corp. v. Alternative Tech. Sols., Inc.*, 2013 WL 12130024, at *3 (C.D. Cal. Dec. 2, 2013) (dismissing complaint alleging that "certain aspects of [plaintiff]'s overall success, growth, and profitability" qualified as a trade secret where the complaint alleged no facts showing how such information "could have independent economic value that confers a competitive advantage"). As such, the Court should find that Cisco has failed to sufficiently allege any trade secret that was misappropriated.

## V. <u>CONCLUSION</u>

For the foregoing reasons, the Court should compel arbitration of Cisco's claims against Mr. Williams pursuant to the Agreement and stay the current proceedings pending arbitration. Alternatively, the Court should dismiss Cisco's claims against Mr. Williams under Federal Rule of Civil Procedure 12(b)(6).

Dated: January 27, 2020

Respectfully submitted,

HUESTON HENNIGAN LLP

By: */s/ Alison L. Plessman*
Alison L. Plessman
Attorneys for Defendant Jedd Williams

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that: I am over the age of eighteen (18) and not a party to the within action. I am employed in the law firm of Hueston Hennigan LLP, 523 West 6th Street, Suite 400, Los Angeles, CA 90014.

On January 27, 2020, I used the Northern District of California's Electronic Case Filing System, with the ECF registered to Alison L. Plessman to file the following document(s):

**DEFENDANT JEDD WILLIAMS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY CASE OR, IN THE ALTERNATIVE, TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**

The ECF system is designed to send an e-mail message to all parties in the case, which constitutes service. The parties served by e-mail in this case are found on the Court's Electronic Mail Notice List.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 27, 2020 at Los Angeles, California.

*/s/ Alison L. Plessman*
ALISON L. PLESSMAN