Daniel J. Muller (SBN #193396)
VENTURA HERSEY & MULLER, LLP
1506 Hamilton Avenue
San Jose, CA  95125
Telephone:  408-512-3025
Fax:  408-512-3023

Attorneys for Defendant Wilson Chung

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CISCO SYSTEMS, INC., a California Corporation, CISCO TECHNOLOGY, INC., a California Corporation<br><br>Plaintiffs,<br><br>vs.<br><br>PLANTRONICS, INC., a Delaware Corporation, WILLSON CHUNG, JAMES HE, JEFF WILLIAMS, AND THOMAS PUORRO individuals,<br><br>Defendants. | Case No. 3:19-CV-07562-PJH<br><br>**DEFENDANT WILSON CHUNG'S NOTICE OF MOTION AND MOTION TO DISMISS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>DATE:        March 19, 2020<br>TIME:        9:00 A.M.<br>COURT:     Courtroom 3 |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT WILSON CHUNG'S MOTION TO DISMISS**

TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................................... 2

II.   FACTS ................................................................................................................................... 2

III.  ARGUMENT .......................................................................................................................... 4

     A.    THE PLEADING REQUIREMENTS TO STATE A CLAIM FOR TRADE SECRET MISAPPROPRIATION UNDER THE DEFEND TRADE SECRETS ACT AND THE CALIFORNIA UNIFORM TRADE SECRET ACT. ................................................................................... 5

     B.    CISCO HAS NOT IDENTIFIED ITS ALLEGED TRADE SECRETS WITH SUFFICIENT PARTICULARITY ................................................................................................... 6

     C.    DR. CHUNG JOINS IN MR. WILLIAM'S *MOTION TO COMPEL ARBITRATION* ....................... 8

TABLE OF AUTHORITIES

**Federal Cases**

*Adams v. Johnson, 355 F.3d 1179, 1183 (9th Cir. 2004)* ........................................................ *4*

*Alta Devices, Inc. v. LG Electronics, Inc. 343 F. Supp. 3d 868, 881 (N.D. Cal. 2018)* ......................... *8*

*Arthur Andersen LLP v. Carlisle, 556 U.S. 624 632 (2009)* ....................................................... *8*

*Autodesk, Inc. v. ZWCAD Software Co., 2015 WL 2265479, at \*5 (N.D. Cal. May 13, 2015)* ........................................................................................................... *5*

*Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)* ....................................................... *4*

*Calendar Research LLC v. StubHub, Inc., 2017 WL 10378336, at \*3* .......................................... *8*

*Emazing Lights LLC v. De Oca, 2016 WL 3658945, \*2 (C. D. Cal., January 7, 2016.)* ...................... *6*

*Fayer v. Vaughn, 649 F.3d 1061, 1064 (9th Cir. 2011)* ........................................................... *4*

*Imax Corp. v. Cineman Technologies, Inc., 152 F.3d 1161, 1164-65 (9th Cir. 1998)* ......................... *5*

*Kramer v. Toyota Motor Corp., 705 F.3d 1122 (9th Cir. 2013)* .................................................. *8*

*Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008)* .......................... *4*

*Pellerin v. Honeywell, 877 F. Supp. 2d 983 (S.D. Cal. 2012)* .................................................... *7*

*Space Data Corp. v. X, No. 16-cv-03260-BLF, 2017 WL 5013363, at \*2 (N.D. Cal. Feb. 16, 2017)* ...................................................................................................... *5*

*Vendavo, Inc. v. Price f(x) AG, No. 17-cv-06930-RS, 2018 WL 1456697, at \*4 (N.D. Cal. Mar. 23, 2018)* .................................................................................................. *5*

**California Cases**

*Boucher v. Alliance Title Co., 127 Cal. App. 4th 262, 271 (2005)* .............................................. *9*

*CytoDyn of New Mexico, Inc. v. Amerimmune Pharm., Inc., 160 Cal. App. 4th 288, 297 (2008)* ...................................................................................................... *5*

*Diodes, Inc. v. Franzen, 260 Cal. App. 2d 244, 252-53 (1968)* .................................................. *5*

*JSM Tuscany, LLC, et al. v. Super. Ct. of L.A. County, 193 Cal. App. 4th 1222, 1237-38 (2011)* ...................................................................................................... *9*

-ii-

**Federal Statutes**

*18 U.S.C. § 1839(5)* ................................................................................................................. *5*

**California Statutes**

*Cal. Bus. & Prof. Code §16600* ............................................................................................... *2*

*Cal. Civ. Code § 3426.1(b).* ..................................................................................................... *5*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT WILSON CHUNG'S MOTION TO DISMISS

## NOTICE OF MOTION AND MOTION TO DISMISS

TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 18, 2020 at 9:00 a.m. in Courtroom 3 of the District Court for the Northern District of California, Oakland Division, located at 1301 Clay Street, Oakland, California 94612, Defendant Wilson Chung ("Dr. Chung"), will, and hereby does, move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Counts I (for alleged violations of the Defend Trade Secrets Act (the "DTSA")) and II (for alleged violations of the California Uniform Trade Secrets Act ("CUTSA")) of Plaintiffs Cisco Systems, Inc.'s and Cisco Technologies, Inc.'s (collectively, "Cisco") First Amended Complaint (the "FAC").

This motion is, and will be, made on the following grounds: the FAC fails to adequately plead the existence of any trade secrets, as required to state claims for violations of the CUTSA or DTSA.

Also, by way of this motion, Dr. Chung hereby joins in Defendant Jeff Williams' *Motion To Compel Arbitration*.  (*See* Doc. No. 41.)

Dr. Chung's motion is, and will be, for an order dismissing Counts I and II of the FAC, which, collectively, comprise the only Counts asserted by Cisco against Dr. Chung. This motion is based upon this notice of motion and motion, the accompanying brief in support of the motion, the *Declaration of Daniel J. Muller*, the pleadings and papers filed in this action, and such other matters as may be presented at or before the hearing in this matter.

Date:  January 27, 2020                    VENTURA HERSEY & MULLER, LLP


By  /s/ _____
      Daniel J. Muller
      Attorneys For Defendant Wilson Chung

1

## I.    INTRODUCTION

Defendant Wilson Chung ("Dr. Chung") hereby requests that the Court dismiss the portions of the First Amended Complaint that pertain to Dr. Chung pursuant to Rule 12(b)(6).  Dr. Chung is entitled to dismissal because the allegations against him fail to identify any trade secret that Dr. Chung supposedly misappropriated from Plaintiffs.  The California Uniform Trade Secrets Act and the Federal Defend Trade Secrets Act both require that a trade secret plaintiff describe its alleged trade secrets with "sufficient particularity" so that a defendant can "ascertain the boundaries within which the secret lies."  Cisco's First Amended Complaint fails this basic requirement because it alleges only a laundry list of supposedly misappropriated confidential materials without ever describing which materials qualify as a trade secret and which of the supposed secrets was allegedly misappropriated by Dr. Chung.  Dr. Chung should therefore be dismissed from this lawsuit.

## II.    FACTS

Cisco's lawsuit against Dr. Chung is a publicity stunt designed to send a message to current Cisco employees which tells them that, in no uncertain terms, if they leave Cisco to work for a competitor, Cisco will make their lives very difficult.  To spread the word to current Cisco employees that they should think twice before looking for a new job, Cisco has published an internal blog authored by its general counsel which publicizes the lawsuit to its own employees: https://blogs.cisco.com/news/why-does-poly-protect-employees-who-took-cisco-info.  In his blog, Cisco's chief legal officer complains that Plantronics, now doing business as Poly (referred to herein as "Poly"), has chosen to continue to employ Dr. Chung, suggesting that what Cisco really wants is to prevent its former employee from working for a competitor even though the state of California provides Dr. Chung with every right to work for whomever he pleases.  *See* Cal. Bus. & Prof. Code §16600.

The First Amended Complaint, especially when read in the light of Cisco's out-of-court publicity campaign, is long on rhetoric but short on the actual allegations needed to pursue a claim for trade secret misappropriation.  Especially galling is the fact that, prior to filing its lawsuit, Cisco demanded and received Dr. Chung's cooperation to ensure the deletion of digital files that remained in his possession after he left Cisco.  Dr. Chung provided Cisco with a full accounting of what he had

-2-

and returned and deleted everything that Cisco asked him to return and delete. The process revealed that—in the eight months after he left Cisco—Dr. Chung had reviewed just a handful of non-confidential, non-trade secret files that have since been returned to Cisco and deleted. Cisco's lawsuit is not about what Dr. Chung has in his possession or what he did after he left Cisco, it is about sending a warning to other Cisco employees who might be considering a career change.

Dr. Chung worked for Cisco from 2007 until February 2019. He began his employment as a Technical Leader and ended it as a Principal Engineer in Cisco's Unified Communications Group. In February 2019, Dr. Chung chose to leave Cisco for a new opportunity at Poly.

As would likely be the case for any employee whose career with an employer spans more than a decade, Dr. Chung possessed a variety of digital files spread across several devices, email accounts, and storage drives. These files were, essentially, the digital clutter left behind during the years in which Dr. Chung worked diligently and loyally for Cisco. When Dr. Chung departed from Cisco, he had no interest in taking Cisco proprietary information with him and he had no intention of using any Cisco proprietary information to perform his new job at Poly. He certainly did not intend to take, nor did he take, anything that amounts to a Cisco trade secret.

Many months after he began working at Poly, in September 2019, Dr. Chung received a letter from Cisco accusing him of having "downloaded over 3,000 files" during the span of his Cisco employment and prior to his departure from the Company. Cisco demanded that he cooperate with its investigation into whether he was still in possession of Cisco materials. Dr. Chung responded to Cisco's letter by immediately providing it with information about any Cisco materials in his possession. Dr. Chung then retained undersigned counsel and fully cooperated with Cisco's extensive requests for a forensic examination of his digital life. Dr. Chung voluntarily provided a forensics investigator (jointly chosen by Poly and Cisco) with his iPhone, his iPad, his MacBook, USB storage drives, and access to his Gmail and iCloud accounts. A comprehensive analysis, which was designed and directed by Cisco and its lawyers, followed.

Presumably to Cisco's dismay, the results were far from Earth-shattering. The review revealed that Dr. Chung accessed a handful of old Cisco-related files during the first eight months of his employment at Poly. The files did not contain confidential information, let alone trade secrets,

-3-

and they were not shared with other Poly employees. In its First Amended Complaint, Cisco identifies the following files that it alleges Dr. Chung accessed while working at Poly: "the EA Document, Webex Vision Document, and a Cisco collaboration roadmap document." (FAC, ¶ 73-74.) Amazingly, given that it is suing Dr. Chung for trade secret misappropriation, Cisco *does not* allege that the files listed contain or constitute trade secrets.

The files identified by Cisco during the review were, of course, removed from Dr. Chung's devices and storage accounts and neither he nor anyone at Poly has access to the files. In addition, Cisco compiled a list of additional files and emails that it wanted Dr. Chung to delete. Dr. Chung immediately agreed to all of the deletions requested by Cisco and the forensic investigator erased the files in question before returning Dr. Chung's devices and accounts.

Having fully cooperated with Cisco and its attorneys and having deleted the requested files without question or debate, Dr. Chung presumed that he could move on with his life. Instead, Cisco sued him. The lawsuit against Dr. Chung is completely unnecessary because Cisco has already investigated what Dr. Chung had in his possession and has already secured its safe return.

## III.   ARGUMENT

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The United States Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When assessing a Rule 12(b)(6) motion, a Court should "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, is not required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

-4-

In the First Amended Complaint, Cisco alleges two counts against Dr. Chung.  The first is for trade secret misappropriation under the Defend Trade Secrets Act ("DTSA") and the second is for trade secret misappropriation under the California Uniform Trade Secrets Act ("CUTSA").  Both counts should be dismissed because Cisco has not sufficiently alleged the existence of a trade secret nor has it sufficiently alleged misappropriation of any trade secret by Dr. Chung.

**A.    The Pleading Requirements to State a Claim for Trade Secret Misappropriation Under the Defend Trade Secrets Act and the California Uniform Trade Secret Act.**

To state a claim for trade secret misappropriation under the DTSA and the CUTSA, a plaintiff must allege that: "(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Space Data Corp. v. X*, No. 16-cv-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (citation omitted); *CytoDyn of New Mexico, Inc. v. Amerimmune Pharm., Inc.*, 160 Cal. App. 4th 288, 297 (2008); *see also* 18 U.S.C. § 1839(5); Cal. Civ. Code § 3426.1(b). "The elements of misappropriation under the DTSA are similar to those under the CUTSA," *Space Data Corp.*, 2017 WL 5013363, at *2.

Courts have held that the DTSA and the CUTSA share the same pleading requirements for the identification of trade secrets. "[A] plaintiff need not 'spell out the details of the trade secret.'" *Autodesk, Inc. v. ZWCAD Software Co.*, 2015 WL 2265479, at *5 (N.D. Cal. May 13, 2015).  A plaintiff, however, must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Imax Corp. v. Cineman Technologies, Inc.,* 152 F.3d 1161, 1164-65 (9th Cir. 1998); *Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018) (citations omitted); *Space Data Corp.*, 2017 WL 5013363, at *2 (same).

To proceed with its lawsuit against Dr. Chung, Cisco must identify the alleged trade secrets with sufficient particularity to give Dr. Chung "reasonable notice of the issues which must be met at the time of trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery." *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 252-53 (1968).  Cisco's allegations must

-5-

give the Court and Dr. Chung "notice of the boundaries of the case." *Space Data Corp.*, 2017 WL 5013363, at *2 (dismissing a trade secret complaint containing allegations which "merely provide a high level overview" of the plaintiff's purported trade secrets."). The allegations in Cisco's First Amended Complaint are not up to these standards.

### B.    Cisco Has Not Identified Its Alleged Trade Secrets with Sufficient Particularity

The two counts alleged in the First Amended Complaint against Dr. Chung should be dismissed because Cisco has not identified its alleged trade secrets with sufficient particularity. In its complaint, Cisco asserts that it owns "highly confidential and proprietary business information," which it labels the "Cisco Confidential Materials." Cisco, however, studiously avoids alleging that all, or any specific subset, of the Cisco Confidential Materials contain or constitute a trade secret. The First Amended Complaint alleges repeatedly that Dr. Chung possessed and used Cisco Confidential Materials, but the actual trade secret allegations are few and far between.

At their best, Cisco's allegations merely provide a laundry list of buzzwords that, according to Cisco, are "included" in the trade secrets about which Cisco is suing Dr. Chung. The non-exhaustive list is said to include "Cisco technical information such as source code, schematics, design details and specifications, user feedback, design documentation, and features relating to Cisco's existing and future products, as well as Cisco business information such as marketing strategy, cost and pricing information, and payment information." (FAC. ¶ 199.) Cisco never identifies which trades secrets are embodied in which of the categories. Nor does Cisco identify a single "existing [or] future product" which makes use of the trade secret. *Emazing Lights LLC v. De Oca, 2016 WL 3658945, *2* (C. D. Cal., January 7, 2016.)

The *Emazing* case in instructive. In that litigation, the Court noted that the plaintiff's alleged trade secret had no limitation and that "any piece of information could potentially be labeled a trade secret by [plaintiff's] definition. *Id.* In its First Amended Complaint, Cisco resorts to similar "for example" and "such as" language with similar effect. (FAC, ¶ 199.) The only plausible reading of Cisco's allegations is that any and all of its supposed Confidential Information might be the trade secret or secrets at issue and Dr. Chung is left to go looking for the proverbial needle in the haystack

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT WILSON CHUNG'S MOTION TO DISMISS

to determine which one is actually at issue and which one he supposedly misappropriated.

In *Pellerin v. Honeywell Intern., Inc.* the Ninth Circuit found that, even though the trade secret claimant in that case identified the product at issue, its allegations were nonetheless insufficient because it "failed to describe the manufacturing process with sufficient particularity to put [the accused party] on notice as to what [the claimant] claims is a trade secret." 877 F. Supp. 2d 983 (S.D. Cal. 2012). Here, Cisco has similarly failed to identify the specific manufacturing process, formula, pattern, compilation, program, device, method, technique, or process that is the subject of its trade secrets. Although Cisco has certainly alleged that it has all of those things, it has not identified which formula, which pattern, or which method constitutes a trade secret, nor has it identified which one of them Dr. Chung allegedly took. Cisco's First Amended Complaint starts outs general and stays that way. It never provides any of the specific allegations that are necessary to plead a trade secret case with the requisite particularity.

For example, Plaintiff fails to identify the "boundaries" of the alleged trade secrets or the subject matter of the broadly described information, other than to merely refer to vaguely stated categories of purported confidential information. (*See* FAC paras. 26, 86, 198-199, 202-206, 209, 215-16.) In many instances, the FAC merely makes improper conclusory reference to alleged "trade secrets" purportedly misappropriated by Dr. Chung. (*See* FAC paras. 198, 203-206, 209, 215-216.) The Complaint also refers to Dr. Chung accessing information, but states no facts regarding how that alleged access demonstrates purported misappropriation of any alleged secrets by Dr. Chung. (*See, e.g.,* FAC para. 26.) Moreover, Cisco repeatedly refers to "confidential information" as if that label transforms the alleged information into a claimed trade secret when it obviously does not. (*See, e.g.,* FAC paras. 86, 209.) Items that Plaintiff mentions in passing without detail have not been described sufficiently to meet the pleading standards for a trade secret claim. (*See, e.g.,* FAC paras. 26 & 86 (vaguely referring to "design specifications," "schematics," "code", "market analyses," "vendor contract[s]," and titles of documents and a Webex).) In a particularly telling instance Cisco refers to material that only "*potentially* included Cisco's confidential" information. (*See, e.g.,* FAC para. 86 (emphasis added).) Plaintiff then merely repeats many of these

insufficient allegations in other parts of the Complaint. (*See, e.g.,* FAC paras. 222-226.) This is plainly insufficient.

Cisco's allegations in the First Amended Complaint are a far cry from the type of allegations that have been ruled sufficient for a trade secret case to proceed. *See Alta Devices, Inc. v. LG Electronics, Inc.* 343 F. Supp. 3d 868, 881 (N.D. Cal. 2018) (ruling that plaintiff's trade secret allegations were sufficient because plaintiff identified "the exact technology" in question.); s*ee also Calendar Research LLC v. StubHub, Inc.,* 2017 WL 10378336, at *3 (C.D. Cal. August 16, 2017) (finding allegations of a trade secret sufficient because plaintiff provided a "detailed description" that included the name of the application at issue and description of the specific functions which allegedly used the trade secrets at issue").

Dr. Chung, therefore, requests that Counts 1 and 2 of Cisco's First Amended Complaint be dismissed.

**C.      Dr. Chung Joins in Mr. William's *Motion To Compel Arbitration***

Dr. Chung has read *Defendant Jedd Williams' Motion To Compel Arbitration And Stay Case Or, In The Alternative, To Dismiss Pursuant To Federal Rule Of Civil Procedure 12(B)(6).* (*See.* Doc. No. 41.). Dr. Chung hereby joins in Mr. William's motion and requests that any claims that remain against him in this case be subject to arbitration as well.

Although Dr. Chung himself does not believe he is subject to an arbitration agreement (he awaits discovery of his personnel file from Cisco to confirm), Cisco's trade secret claims against him are nonetheless subject to arbitration. "The United States Supreme Court has held that a litigant who is a non-signatory to an arbitration agreement may compel arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013) (*citing Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 632 (2009)). Here, Cisco has sued under California law, asserting claims for, among other things, violations of the CUTSA. (FAC ¶¶221-226.) Cisco's Arbitration Agreement with Mr. Williams expressly designates California law as the governing law with regard to any claims or disputes between Cisco and Mr. Williams. (Williams Decl., Ex. A at ¶ 2.) The governing state contract law is therefore

California law.  Dr. Chung's proprietary information agreement with Cisco is likewise governed by California law.  (Muller Decl. ⁋2, Exh. A.)

In *Boucher v. Alliance Title Co.*, 127 Cal. App. 4th 262, 271 (2005), the Court made clear that "under both federal and California decisional authority, a non-signatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the non-signatory are 'intimately founded in and intertwined' with the underlying contract obligations." *Id.* (internal citations omitted.)  The *Boucher* Court explained that this rule is grounded in principles of equitable estoppel:

> By relying on contract terms in a claim against a nonsignatory defendant, even if not exclusively, a plaintiff may be equitably estopped from repudiating the arbitration clause contained in that agreement . . . The fundamental point is that a party may not make use of a contract containing an arbitration clause and then attempt to avoid the duty to arbitrate by defining the forum in which the dispute will be resolved.

*Id.* at 272. *See also JSM Tuscany, LLC, et al. v. Super. Ct. of L.A. County*, 193 Cal. App. 4th 1222, 1237-38 (2011) (when a plaintiff relies "'on contract terms in a claim against a nonsignatory defendant, even if not exclusively' . . . [the] nonsignatory defendant may compel [the] signatory plaintiff to arbitrate under the doctrine of equitable estoppel") (*quoting Boucher, supra,* 127 Cal. App. 4th at 272).

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT WILSON CHUNG'S MOTION TO DISMISS**

The thesis of the FAC, articulated from the complaint's very beginning, is that the alleged trade secret thefts are part of a conspiracy among the Defendants, including Dr. Chung. Cisco itself summarizes its theory of the case as one in which "[i]n sum, Dr. Chung, Mr. He, Mr. Williams, and Mr. Puorro engaged in a scheme that on information and belief was endorsed by senior Poly executives . . . ." (FAC ⁋ 8.) Dr. Chung, of course, disputes these unsubstantiated and recklessly asserted claims; but Cisco's own theory is that the claims against all defendants are inextricably intertwined. Plaintiff is therefore estopped from asserting those claims in this forum and must, instead, arbitrate all the claims pursuant to the arbitration agreement between Cisco and Mr. Williams. Cisco's claims against the remainder of the Defendants should, therefore, be compelled to arbitration.

Date:  January 27, 2020                    VENTURA HERSEY & MULLER, LLP


                                           By  /s/
                                               Daniel J. Muller
                                               Attorneys For Defendant Wilson Chung

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT WILSON CHUNG'S MOTION TO DISMISS