John M. Desmarais (SBN 320875)
jdesmarais@desmaraisllp.com
DESMARAIS LLP
101 California Street
San Francisco, CA 94111
(415) 573-1900

Tamir Packin (SBN 317249)
tpackin@desmaraisllp.com
Carson Olsheski (*admitted pro hac vice*)
colsheski@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
(212) 351-3400

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND**

| | |
|---|---|
| CISCO SYSTEMS, INC., a California Corporation, CISCO TECHNOLOGY, INC., a California Corporation<br><br>Plaintiffs,<br><br>v.<br><br>WILSON CHUNG, JAMES HE, JEDD WILLIAMS, and THOMAS PUORRO, individuals, and PLANTRONICS, INC. dba POLY, a Delaware Corporation<br><br>Defendants. | Case No. 4:19-cv-07562-PJH<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT WILSON CHUNG'S MOTION TO DISMISS AND MOTION TO COMPEL ARBITRATION**<br><br>Date: March 18, 2020<br>Time: 9:00am<br>Judge: Hon. Phyllis J. Hamilton<br>Dept.: Courtroom 3 |

# TABLE OF CONTENTS

**Page**


INTRODUCTION ..... 1

OVERVIEW OF ALLEGATIONS ..... 2

LEGAL STANDARD ..... 3

DR. CHUNG'S MOTION TO DISMISS SHOULD BE DENIED ..... 3

I. Cisco Identified Its Trade Secrets With Sufficient Particularity At This Early Stage Of The Case Through Its Detailed Factual Recitations In The First Amended Complaint. ..... 3

II. Dr. Chung Cannot Compel Cisco To Arbitrate Its Trade Secret Claims Against Him ..... 7

A. Cisco's Existing Arbitration Agreement With Dr. Chung Carves Out Injunctive Relief For Claims Of Misappropriation Of Trade Secrets ..... 7

B. Cisco's Trade Secret Claims Against Dr. Chung Are Wholly Disconnected From The Williams' Mutual Agreement To Arbitrate. ..... 8

CONCLUSION ..... 10

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Alta Devices, Inc. v. LG Elecs., Inc.*,
343 F. Supp. 3d 868 (N.D. Cal. 2018) .......... 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 3

*AT & T Techs., Inc. v. Commc'ns Workers*,
475 U.S. 643 (1986) .......... 7, 8

*Autodesk, Inc. v. ZWCAD Software Co.*,
2015 WL 2265479 (N.D. Cal. May 13, 2015) .......... 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 3

*Boucher v. Alliance Title Co.*,
127 Cal. App. 4th 262 (2005) .......... 9

*Emazing Lights LLC v. De Oca*,
2016 WL 3658945 (C.D. Cal. Jan. 7, 2016) .......... 6

*Goldman v. KPMG, LLP*,
173 Cal. App. 4th 209 (2009) .......... 9

*Imax Corp. v. Cinema Techs., Inc.*,
152 F.3d 1161 (9th Cir. 1998) .......... 6

*JSM Tuscany, LLC v. Superior Court*,
193 Cal. App. 4th 1222 (2011) .......... 9

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 3

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013) .......... 8, 9

*Loop AI Labs Inc. v. Gatti*,
195 F. Supp. 3d 1107 (N.D. Cal. 2016) .......... 4

*Meggitt San Juan Capistrano, Inc. v. Yongzhong*,
575 F. App'x 801 (9th Cir. 2014) .......... 4

*Mundi v. Union Sec. Life Ins. Co.*,
555 F.3d 1042 (9th Cir. 2009) .......... 8

*Nitsch v. DreamWorks Animation SKG Inc.*,
100 F. Supp. 3d 851 (N.D. Cal. 2015) .......... 8

*Pellerin v. Honeywell Int'l, Inc.*,

877 F. Supp. 2d 983 (S.D. Cal. 2012) ........ 6

*Poynt Corp. v. Innowi, Inc.*,
2019 WL 935499 (N.D. Cal. Feb. 26, 2019) ........ 5

*Space Data Corp. v. X*,
2017 WL 3007078 (N.D. Cal. July 14, 2017) ........ 4, 7

*TMX Funding, Inc. v. Impero Techs., Inc.*,
2010 WL 2509979 (N.D. Cal. June 17, 2010) ........ 6

*Top Agent Network, Inc. v. Zillow, Inc.*,
2015 WL 7709655 (N.D. Cal. Apr. 13, 2015) ........ 6

*United States v. Cerna*,
2011 WL 500229 (N.D. Cal. Feb. 9, 2011) ........ 10

*VasoNova Inc. v. Grunwald*,
2012 WL 4119970 (N.D. Cal. Sept. 18, 2012) ........ 6

**STATUTES**

Cal. Civ. Proc. Code § 2019.210 ........ 4

*** All emphasis added unless otherwise noted ***

## INTRODUCTION

Cisco's First Amended Complaint ("FAC") provides comprehensive details of a months-long investigation into Dr. Wilson Chung ("Dr. Chung")—who deliberately and methodically stole Cisco's trade secrets immediately before leaving to join Plantronics, Inc. ("Poly"). Dr. Chung was well aware of "the boundaries within which the secret lie" when he: (1) stole Cisco's trade secrets using the Seagate hard drives that he loaded with design specifications for Cisco's products and, supposedly, "lost"; (2) attempted to wipe the removable USB drives before turning them over to Poly despite having received a preservation notice from Cisco; and (3) refused to return Cisco's MacBook Pro even after multiple demands from Cisco. Dr. Chung's Motion reads like an answer, and attempts to explain his conduct while also casting aspersions on Cisco and its motivations. But Cisco disputes Dr. Chung's recitation of facts; and, for the purposes of this Motion, the Court must accept the factual allegations in the FAC as true. Dr. Chung's substantive arguments as to the sufficiency of the FAC are wholly without merit.

First, the FAC describes the subject matter of the trade secrets at issue in this case with sufficient particularity. Cisco identified categories of information from which Dr. Chung took trade secrets, and then described the subject matter of the trade secrets within those categories. Dr. Chung complains that Cisco has not disclosed in full the trade secrets themselves in its pleading. But in doing so, Dr. Chung has conflated the requirements of a pleading (which give notice of the bounds of the case and permit the Court to craft limits on discovery) with a state statutory requirement to disclose trade secrets under a protective order as discovery begins.

Second, the FAC sufficiently alleges that the trade secrets at issue here have independent economic value. Far from making merely conclusory allegations about the value of its secrets, Cisco explained that its engineers and global sales force rely on the precise trade secrets at issue in this case to develop innovative collaboration products and routes-to-market in a highly competitive sector. Dr. Chung complains about the sufficiency of Cisco's allegations, but rather than address them head on, Dr. Chung ignores the specific factual allegations in the Complaint that support Cisco's claim of independent economic value.

Third, Dr. Chung's joinder to Mr. Williams' motion to compel arbitration must fail. Cisco

has its own arbitration agreement with Dr. Chung, which explicitly carves out the remedy of an injunction for a trade secret misappropriation claim. Arbitration is a matter of contract, and compelling arbitration against Dr. Chung under the Williams Agreement runs counter to the agreement that Dr. Chung himself executed with Cisco. Dr. Chung's equitable arguments must also fail as a matter of law, because his conduct is wholly unrelated to the obligations in the Williams' Agreement. Finally, although unclear in his motion, to the extent Dr. Chung seeks to join Mr. Williams' motion to stay, it too must fail because Dr. Chung provides no legal basis or argument as to why a stay should be implemented.

## OVERVIEW OF ALLEGATIONS

Dr. Chung was a Principal Engineer in Cisco's Unified Communications Technology Group ("UCTG") who, immediately prior to joining Poly, deliberately and methodically copied thousands of technical documents to personal portable hard drives that he retained following his departure from Cisco. The documents he exfiltrated include design specifications of a pre-release video conferencing display prototype, such as artwork prototypes, user experience research, and schematics, as well as design specifications for Cisco's sound bar products, a collaboration "Road Map" document, and a document detailing component selection and differentiators for Cisco's entire collaboration product line. FAC ¶¶ 26, 42, 45, 47, 48, 51, 64, 67, 73, 74, 77, 80. Dr. Chung then used these documents at Poly for his own benefit and for the benefit of Poly by, for example, uploading the document detailing component selection for Cisco's unreleased collaboration products to Poly's internal "Sharepoint" site, and accessing documents related to ***Cisco's*** collaboration product roadmap while working at Poly. *Id.* ¶¶ 73–74, 85.

Even more disturbing, Dr. Chung began employment at Poly before terminating his employment at Cisco, and used this dual access to his and Poly's advantage by bringing Cisco's materials to Poly. *See id.* ¶¶ 4, 68–78, 95. While working in a directly competitive business at Poly, Dr. Chung also retained the Cisco-issued laptop he used while he worked for Cisco as a Principal Engineer, refused to return the laptop to Cisco notwithstanding its multiple demands that he do so, and then wiped the laptop prior to turning it over for a forensic analysis even though he was advised of his obligations not to destroy potentially relevant evidence. *Id.* ¶¶ 31–35, 41, 77,

82–84, 90–91. And, after receiving a preservation notice from Cisco, Dr. Chung immediately and intentionally spoliated evidence of his illegal actives and trade secret misappropriation, including by deleting Cisco confidential materials that included Cisco's trade secrets from his cloud storage backups, MacBook, Sandisk Drive, and Samsung Drive. *Id.* ¶¶ 90–91 (further alleging that, far from being unintentional, Dr. Chung performed an internet search for "how to permanently delete icloud backup" after being notified by Cisco of its concerns). The materials Dr. Chung took included Cisco's trade secrets. *Id.* ¶¶ 26, 36, 41, 42, 51, 64, 65, 73, 74, 78–80, 199. And, because the collaboration field is highly competitive and characterized by rapid innovation, these trade secrets have independent economic value. *Id.* ¶ 12. Cisco invests significant resources in research and development to build its collaboration products, including, for example, by designing and testing prototypes, and the results of these efforts are valuable *because* competitors do not have access to them and because Cisco undertakes significant effort to keep its confidential materials secure. *Id.* ¶¶ 2, 42, 74, 92, 215.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8 requires that a pleading contain "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Twombly*, 550 U.S. at 572. In general, "district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

## DR. CHUNG'S MOTION TO DISMISS SHOULD BE DENIED

### I. Cisco Identified Its Trade Secrets With Sufficient Particularity At This Early Stage Of The Case Through Its Detailed Factual Recitations In The First Amended Complaint.

Cisco has alleged, as required under both the DTSA and CUTSA, that: (1) it is the owner of a trade secret; (2) the defendant misappropriated that trade secret; and (3) it was damaged.

*Autodesk, Inc. v. ZWCAD Software Co.*, 2015 WL 2265479, at *2 (N.D. Cal. May 13, 2015). "Trade secrets need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secrets." *Id.* at *6. Accordingly, at the pleading stage, a plaintiff "need not spell out the details of the trade secret," but "must ***describe the subject matter of the trade secret*** with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 881 (N.D. Cal. 2018). By contrast, it is only "before commencing discovery," and not at the pleading stage, that Cisco must ***disclose its trade secrets*** with reasonable particularity. *See* Cal. Civ. Proc. Code § 2019.210; *Alta Devices, Inc.*, 343 F. Supp. 3d at 882 ("Federal Rule of Civil Procedure 9's heightened pleading standard does not apply to trade secret cases . . . Rule 8 does not have a particularity requirement . . . California Civil Procedure Code § 2019.210 has no place at the pleading stage"). Under the Rule 8 standard, courts in this district look for enough detail to "permit [Defendants] to prepare a defense and for the court to craft limits on discovery." *Space Data Corp. v. X*, 2017 WL 3007078, at *3 (N.D. Cal. July 14, 2017).

Dr. Chung's Motion conflates disclosure of trade secrets—required for CUTSA claims under Cal. Civ. Proc. Code ("CCP") § 2019.210 before commencing discovery but after issuance of a protective order—with describing the subject matter of the trade secrets. *See Alta Devices, Inc.*, 343 F. Supp. 3d at 882 ("California Civil Procedure Code § 2019.210 has no place at the pleading stage."); *Meggitt San Juan Capistrano, Inc. v. Yongzhong*, 575 F. App'x 801, 803 (9th Cir. 2014) (finding no authority to suggest that a party is required to disclose a trade secret with reasonable particularity at the pleading stage). Indeed, Cisco cannot disclose its trade secrets in a public complaint because doing so would result in public disclosure of the trade secrets. *Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1112 (N.D. Cal. 2016) ("As a preliminary matter, the fact that Plaintiff publicly filed its trade secret disclosure belies the proposition that it contains information specific enough to be considered 'confidential' trade secrets."). Even if Cisco's proffer at the pleading stage were deficient—which it is not—the CCP § 2019.210 process will

add additional clarity before discovery begins. *Poynt Corp. v. Innowi, Inc.*, 2019 WL 935499, at *3 (N.D. Cal. Feb. 26, 2019) ("Plaintiff's trade secret claims may be deficient as pled, but . . . the discovery process will provide sufficient notice as to these allegations. . . . As required by state law, the party alleging the misappropriation shall identify the trade secrets with reasonable particularity before commencing discovery.").

At the pleading stage, Cisco needs only to describe the subject matter of the trade secrets at issue in this case to allow Dr. Chung to assert a defense and to allow the Court to craft limits on discovery. Cisco has done so. The FAC identifies distinct categories of information from which Dr. Chung misappropriated trade secrets. Dr. Chung misappropriated "source code, schematics, design details and specifications, user feedback, design documentation, and features relating to Cisco's existing and future products, as well as Cisco business information such as marketing strategy, cost and pricing information, and payment information" that he had access to as Principal Engineer in Cisco's UCTG. FAC ¶¶ 26, 199. The UCTG builds products, including "video endpoints, telepresence units, all-in-one video collaboration systems, integrated room systems, VoIP and video phones, microphones, cameras, speakers, and headsets." *Id.* ¶ 2. The numerous categories of information alleged reflects Dr. Chung's organized and methodical efforts to exfiltrate thousands of documents from Cisco in the weeks preceding his departure. *See id.* ¶¶ 36–76. Beyond categories of information, Cisco alleges with particularity the technical subject matter of specific trade secrets that Dr. Chung took, including, for example, Cisco's market opportunities in the developing field of 5G networks (*id.* ¶ 36), design specifications of a pre-release video conferencing display prototype (*id.* ¶ 36), source code for debugging a user interface (*id.* ¶ 41), artwork prototypes, user experience design documentation, user interview feedback, and schematics for the above-mentioned pre-release video conferencing display prototype (*id.* ¶ 42), design details and specifications for Cisco's sound bar products (*id.* ¶ 45), and the "EA document" describing component specifications and competitive differentiators for Cisco's current and not yet released hardware products. *See also id.* ¶¶ 30, 51, 64, 65, 74, 30, 86.

Courts in the Ninth Circuit routinely find trade secrets of the type alleged here sufficiently alleged at the pleading stage. Cisco alleges far more than "a laundry list of buzzwords." *See* Dkt.

43 at 6. Cisco has identified information misappropriated by Dr. Chung that goes to the heart of the design, operation, and functionality of its collaboration products. *See VasoNova Inc. v. Grunwald*, 2012 WL 4119970, at *3 (N.D. Cal. Sept. 18, 2012) ("the software and operation of the [Plaintiff's] product and implementation information such as the devices, algorithms, and processes useful for catheter guidance . . . identifies the misappropriated trade secrets with enough particularity to put [Defendant] on notice of [Plaintiff's] claims at this initial pleading stage"); *TMX Funding, Inc. v. Impero Techs., Inc.*, 2010 WL 2509979, at *3–4 (N.D. Cal. June 17, 2010) (finding allegations the defendants misappropriated "software, source codes, data, formulas, and other technical information developed as proprietary and confidential products and services . . . sufficient to permit Defendants to at least ascertain the boundaries within which the secrets lie"). The FAC alleges just these types of trade secrets. *See, e.g.*, FAC ¶¶ 36, 42, 51, 64, 74, 78, 80, 102, 103, 106, 109, 112 (data and other technical information developed as proprietary and confidential products and services); *id.* ¶¶ 41, 123 (software, source code).

The cases Dr. Chung cites to support dismissal are readily distinguishable. Cisco's detailed allegations contain far more detail than those at issue in *Pellerin*, which concerned conclusory allegations that a party "had access to and acquired Honeywell's trade secret information, which had independent economic value because it was not generally known or readily ascertainable by persons outside of Sperian or Honeywell." *See Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988–89 (S.D. Cal. 2012); *Cf. Top Agent Network, Inc. v. Zillow, Inc.*, 2015 WL 7709655, at *4 n.3 (N.D. Cal. Apr. 13, 2015) (finding trade secrets, including "unique features and business model" not pled with sufficient specificity). The *Imax* case is irrelevant because it concerned identification of trade secrets at the summary judgment stage. *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1165 (9th Cir. 1998). *Emazing* is similarly inapplicable, because there, the Plaintiffs cast a wide net and identified as trade secrets "any . . . information not publically and widely known," which did not permit meaningful limits for discovery. *See Emazing Lights LLC v. De Oca*, 2016 WL 3658945, at *2 (C.D. Cal. Jan. 7, 2016). Cisco's FAC, by contrast, describes categories of information, and identifies the specific subject matter of trade secrets within those categories. *Compare* FAC ¶ 26 ("design specifications"), *with id.* ¶ 42 ("pre-release video

conferencing display," documents including "user experience design documentation, user interview feedback, artwork prototypes, and schematics"). Indeed, the description of the subject matter of trade secrets within these categories provides Dr. Chung with "reasonable detail—enough to permit [Dr. Chung] to prepare a defense and for the court to craft limits on discovery." *Space Data*, 2017 WL 3007078 at *3. Dr. Chung describes a "particularly telling instance" of vague allegations by Cisco, but the "quoted" language does not appear anywhere in paragraph 86 or the rest of the FAC. Dkt. 43 at 7.

## II. Dr. Chung Cannot Compel Cisco To Arbitrate Its Trade Secret Claims Against Him

Dr. Chung's Motion To Compel Arbitration against him must be denied because: (1) Dr. Chung has his own arbitration agreement that carves out allegations of trade secret misappropriation; and (2) the allegations concerning Dr. Chung are wholly disconnected from Mr. Williams' Mutual Agreement to Arbitrate. Compelling arbitration here would thwart the existing agreement between these parties and undermine Cisco's interests in litigating the theft of its trade secrets in District Court. *See AT & T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 648 (1986) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.").

### A. Cisco's Existing Arbitration Agreement With Dr. Chung Carves Out Injunctive Relief For Claims Of Misappropriation Of Trade Secrets.

Dr. Chung's efforts to compel arbitration should be denied because, as a threshold matter, Dr. Chung signed an arbitration agreement which expressly states that injunctive relief for trade secret misappropriation would not be limited to arbitration. Dr. Chung's arbitration agreement reflects Cisco's and Dr. Chung's agreements with respect to arbitration, and explicitly carves out the remedy Cisco seeks against Dr. Chung:

> We understand and agree that nothing in this Agreement shall prevent either party from seeking from a court the remedy of an injunction for a claimed misappropriation of a trade secret, patent right, copyright, trademark, or any other intellectual or confidential property.

Olsheski Decl., Ex. A, ¶ 9.

There is no presumption in favor of arbitration when "contractual language is plain that arbitration

of a particular controversy is not within the scope of the arbitration provision." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044–45 (9th Cir. 2009). That Cisco has a different arbitration agreement with Dr. Chung reflects the intent of the parties that may not be usurped by importing clauses from one separate agreement into the other. *See AT & T* Techs, 475 U.S. at 648. Dr. Chung's existing arbitration agreement should stand as the final word on the arbitrability of the current dispute between Cisco and Dr. Chung.

### B. Cisco's Trade Secret Claims Against Dr. Chung Are Wholly Disconnected From The Williams' Mutual Agreement To Arbitrate.

The doctrine of equitable estoppel only permits a nonsignatory (here, Dr. Chung) to enforce an arbitration agreement in two limited circumstances: (1) when a signatory (here, Cisco) must rely on the terms of the written agreement (here, the Williams Agreement) in asserting its claims against the nonsignatory or the claims are "intimately founded in and intertwined with" the ***underlying contract***; or (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and "the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the ***underlying agreement***." *Nitsch v. DreamWorks Animation SKG Inc.*, 100 F. Supp. 3d 851, 865 (N.D. Cal. 2015); *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128–29 (9th Cir. 2013). Notwithstanding Dr. Chung's own arbitration agreement, Dr. Chung's motion to compel arbitration must be denied because Cisco's claims against Dr. Chung have no connection whatsoever, much less any intimate connection, to the Williams Agreement and thus do not fit into either limited circumstance that would permit a nonsignatory to compel arbitration.

Cisco's FAC does not allege breach of the Williams Agreement by Dr. Chung, or anyone else. Nor does the Williams Agreement impose obligations with respect to trade secrets on Dr. Chung, Mr. Williams, or any other defendant. The Williams Agreement is limited to dispute resolution procedures between Cisco and Mr. Williams.

The first limited circumstance that would permit Dr. Chung to compel arbitration is inapplicable here because Cisco does not rely on the terms of the Williams Agreement to impose

liability on Dr. Chung. *See Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 231 (2009) (explaining "the underlying principle [for application of the first set of circumstances], stated in all cases: actual reliance on the terms of the agreement to impose liability on the nonsignatory"). Cisco's trade secret claims against Dr. Chung also are not based on the violation of any terms of Williams Agreement on dispute resolution.

The second limited circumstance is similarly inapplicable, because even to the extent that Mr. Williams' and Dr. Chung's conduct is alleged to be intertwined, that conduct is not "intimately connected" with the obligations of the Williams Agreement. *See Kramer*, 705 F.3d at 1132–1133 ("California state contract law does not allow a nonsignatory to enforce an arbitration agreement based upon a mere allegation of collusion or interdependent misconduct between a signatory and nonsignatory."). Dr. Chung's reliance on *Boucher v. Alliance Title Co.*, 127 Cal. App. 4th 262, 271 (2005) is misguided, because here Cisco does not rely on Mr. Williams' contractual terms to assert a cause of action against a nonsignatory. *See JSM Tuscany, LLC v. Superior Court*, 193 Cal. App. 4th 1222, 1237 (2011). This case is more like *Kramer*, where the court rejected a similar equitable estoppel argument because the "allegations are not connected to the Purchase Agreements. Rather, like the other allegations in the FAC, the allegations of collusion are not inextricably bound up with the obligations imposed by the agreement containing the arbitration clause." *Kramer*, 705 F.3d at 1133.

Finally, Dr. Chung's motion attempts to use *Kramer* to say Dr. Chung, as a non-signatory to Mr. Williams' arbitration agreement, may compel arbitration because California law would govern the claims before the Court, interpretation of Dr. Chung's PIIA, and Mr. Williams' arbitration. Dkt. No. 43 at 8. This is both the wrong interpretation of the law for all the reasons stated above and manifestly incorrect. Mr. Williams' Mutual Agreement to Arbitrate states "the Arbitrator will apply the substantive law of the State in which I work or worked," which, for Mr. Williams, would be Texas. *See* FAC ¶ 15. Mandatory resolution of Cisco's trade secret claims against Dr. Chung in arbitration under Texas law would actually run counter to the arbitration agreement Cisco ***did*** sign with Dr. Chung, which requires application of California law. *See* Olsheski Decl., Ex. A, ¶ 15. For the foregoing reasons, the Court should deny Dr. Chung's motion

to compel arbitration.

To the extent that Dr. Chung seeks to join Mr. Williams' motion to stay, it must fail, because Dr. Chung provides no explanation of how that aspect of Mr. Williams' motion applies to him. *See United States v. Cerna*, 2011 WL 500229, at *11 (N.D. Cal. Feb. 9, 2011) (finding motion to join codefendants' motion "woefully inadequate" because it offered no explanation as to how the motions sought to be joined applied to him). Should the Court consider Dr. Chung's effort to join in Mr. Williams' motion to stay adequate, Cisco incorporates its substantive response from the Williams' Opposition herein by reference.

## **CONCLUSION**

For the reasons set forth above, Cisco respectfully requests that Dr. Chung's motion to dismiss and motion to compel arbitration be DENIED in its entirety.

Respectfully submitted,

Dated: February 10, 2020

DESMARAIS LLP

By: *_/s/ John M. Desmarais_*

John M. Desmarais (SBN 320875)
jdesmarais@desmaraisllp.com
DESMARAIS LLP
101 California Street
San Francisco, CA 94111
(415) 573-1900

Tamir Packin (SBN 317249)
tpackin@desmaraisllp.com
Carson Olsheski (*admitted pro hac vice*)
colsheski@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
(212) 351-3400

*Attorneys for Plaintiffs*