McDERMOTT WILL & EMERY LLP
RUSSELL HAYMAN (SBN 110643)
rhayman@mwe.com
JON DEAN (SBN 184972)
jdean@mwe.com
JASON D. STRABO (SBN 246426)
jstrabo@mwe.com
MICHELLE LOWERY (SBN 302882)
mslowery@mwe.com
2049 Century Park East, Suite 3200
Los Angeles, CA  90067-3206
Telephone:     +1 310 277 4110
Facsimile:     +1 310 277 4730

Attorneys for Defendants
PLANTRONICS, INC. AND
THOMAS PUORRO

**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| CISCO SYSTEMS, INC., a California Corporation, CISCO TECHNOLOGY, INC., a California Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>WILSON CHUNG, JAMES HE, JEDD WILLIAMS, and THOMAS PUORRO, individuals, and PLANTRONICS, INC. dba POLY,<br><br>Defendants. | Case No. 4:19-cv-07562-PJH<br><br>**DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, STRIKE PORTIONS OF PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>August 5, 2020<br>9:00 a.m.<br>Courtroom 3<br><br>**Hon. Phyllis J. Hamilton** |

## TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................................3

II. FACTUAL BACKGROUND ................................................................................................4

    A. Poly and Thomas Puorro.........................................................................................4

    B. The First Amended Complaint................................................................................5

        1. Allegations Against Dr. Chung....................................................................5

        2. Allegations Against Mr. He .........................................................................5

        3. Claims of Intentional Interference with Contract Claim..............................6

    C. The Motion to Dismiss and This Court's Order ......................................................6

    D. Cisco's Flawed Amendments ..................................................................................7

III. LEGAL STANDARD............................................................................................................8

IV. ARGUMENT .........................................................................................................................9

A. Cisco Fails to Adequately Plead Independent Economic Value as to Claims Involving Dr. Chung and Mr. He................................................................................................................9

B. Cisco Improperly Included Allegations Relating to its Intentional Interference with a Contractual Relationship Claim against Poly and Mr. Puorro that the Court Previously Dismissed..............................................................................................................................13

V. CONCLUSION....................................................................................................................15

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

DM_US 169627824-11.074958.0018     - i -     DEFTS' M/DISMISS OR, ALTERNATIVELY STRIKE PORTIONS OF 2ND AMENDED COMPLAINT
CASE NO. C-19-07562 PJH

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AlterG, Inc. v. Boost Treadmills LLC*
  388 F. Supp. 3d 1133 (N.D. Cal. 2019) .................................................................................12

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ................................................................................................................8

*Barnes v. AT&T Pension Ben. Plan-Nonbargained Program*
  718 F. Supp. 2d 1167 (N.D. Cal. 2010) ...................................................................................9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................8

*BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*
  780 F. Supp. 2d 1061 (D. Haw. 2011) ...................................................................................12

*Direct Techs., LLC, v. Elec. Arts, Inc.*
  836 F.3d 1059 (9th Cir. 2016) ...............................................................................................10

*Epicor Software Corp. v. Alternative Tech. Sols., Inc.*
  2015 WL 12724073 (C.D. Cal. Apr. 2, 2015) ................................................................13, 14

*Fantasy, Inc. v. Fogerty*
  984 F.2d 1524 (9th Cir. 1993) .................................................................................................9

*Harrison v. Perea*
  168 U.S. 311 (1897) ................................................................................................................9

*Imax Corp. v. Cinema Techs., Inc.*
  152 F.3d 1161 (9th Cir. 1998) ...............................................................................................10

*Lee v. Hertz Corp.*
  330 F.R.D. 557 (N.D. Cal. 2019) ............................................................................................9

*MAI Sys. Corp. v. Peak Computer, Inc.*
  991 F.2d 511 (9th Cir. 1993) .................................................................................................11

*Meggitt San Juan Capistrano, Inc. v. Yongzhong*
  575 F. App'x 801 (9th Cir. 2014) ..........................................................................................10

*Pellerin v. Honeywell Int'l, Inc.*
  877 F. Supp. 2d 983 (S.D. Cal. 2012) .....................................................................................9

*Rees v. PNC Bank, N.A.*
  308 F.R.D. 266 (N.D. Cal. 2015) ............................................................................................9

*SunPower Corp. v. SolarCity Corp.*
  2012 WL 6160472 (N.D. Cal. Dec. 11, 2012) ......................................................................13

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

DM_US 169627824-11.074958.0018

- ii -

**DEFTS' M/DISMISS OR, ALTERNATIVELY STRIKE PORTIONS OF 2ND AMENDED COMPLAINT**
**CASE NO. C-19-07562 PJH**

*Wilkerson v. Butler*
   229 F.R.D. 166 (E.D. Cal. 2005) ........................................................................................9

*Zep Solar Inc. v. Westinghouse Solar Inc.*
   No. C 11-06493 JSW, 2012 WL 1293873 (N.D. Cal. Apr. 16, 2012) ............................9

**Statutes**

Cal. Civ. Code § 3426.1(d) .....................................................................................................10

**Rules**

Fed. R. Civ. P. 10(b) ........................................................................................................11, 12

Fed. R. Civ. P. 12(b)(6) .............................................................................................................8

Fed. R. Civ. P. 12(f) ...................................................................................................................9

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

DM_US 169627824-11.074958.0018 — - iii -

**DEFTS' M/DISMISS OR, ALTERNATIVELY STRIKE PORTIONS OF 2ND AMENDED COMPLAINT**
**CASE NO. C-19-07562 PJH**

# NOTICE OF MOTION AND MOTION TO DISMISS

TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 5, 2020 at 9:00 a.m. in Courtroom 3 of the District Court for the Northern District of California, Oakland Division, located at 1301 Clay Street, Oakland, California 94612, Defendants Plantronics, Inc. d/b/a Poly ("Poly") and Thomas Pourro ("Mr. Pourro"), will, and hereby do, move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Counts VII, VIII, IX, X, XI, and XII of Cisco's Second Amended Complaint ("SAC") and to strike Paragraphs 27-137, 179-183, 212-270, 298-359, and those portions of the Second Amended Complaint that reference any claims of intentional interference with a contractual relationship, including but not limited to Paragraphs 7 and 18.

This motion is, and will be, made on the following grounds: Plaintiffs fail to adequately plead facts to support the assertion that any of the claimed "trade secrets" allegedly misappropriated by defendants Dr. Wilson Chung ("Dr. Chung") and James He ("Mr. He") have independent economic value, as required to state a claim under the California Uniform Trade Secrets Act (the "CUTSA") or the Defendant Trade Secrets Act (the "DTSA"). Specifically, in an effort to plead such independent economic value, Plaintiffs have added Paragraphs 98-102 and 133-137 to the SAC. Those Paragraphs, which are the only Paragraphs in the SAC in which Cisco purports to describe any alleged independent economic value of the purported trade secrets that it contends Dr. Chung and Mr. He misappropriated, fail to properly allege cognizable independent economic value.

Because independent economic value is an essential element of any claim under the CUTSA and DTSA, the failure to adequately plead independent economic value renders the remainder of the allegations against Dr. Chung and Mr. He insufficient to state a claim, and the allegations offered in support of such claims therefore legally irrelevant. Further, because Counts VII, VIII, X, and XI, which constitute the claims against Poly and Mr. Pourro for alleged violations of the CUTSA and DTSA, are in fact three separate claims, each predicated on three separate sets of conduct, but artificially pled as single counts in contravention of Federal Rule of Civil Procedure 10(b), those claims should be dismissed to the extent predicated upon the alleged misappropriation of trade secrets by Dr. Chung and Mr. He.

Further, Cisco has failed to adequately allege facts to support its claims of intentional interference with a contractual relationship against either Poly or Mr. Puorro. The Court previously dismissed Cisco's intentional interference claims because Cisco failed to articulate a basis for those claims that were distinct from its trade secret misappropriation claims. Notwithstanding, and in disregard of the Court's Order, Cisco's SAC asserts intentional interference with contract claims that largely restate the legal and factual theory that this Court has already concluded is barred by the CUTSA. Moreover, the purportedly new material Cisco has added is not actually new material but, rather, merely provides another specific example of the type of activity that the Court specifically held in its May 26, 2020, Order could not constitute a cognizable basis for a legally viable intentional interference claim. Accordingly, the Court should dismiss Counts IX and XII of the SAC, and strike, from the SAC, Paragraphs 179-183, 322-328, 357-359, and those portions of the SAC that reference any claims of intentional interference with a contractual relationship, including but not limited to Paragraphs 7 and 18.

This motion is based upon this notice of motion and motion, the following memorandum of points and authorities, the pleadings and papers filed in this action, and such other matters as may be presented at or before the hearing in this matter.

McDERMOTT WILL & EMERY LLP

DATED:   June 26, 2020            By:       */s/ Jon Dean*
                                          Jon Dean

                                          *Attorneys for Defendants*

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Cisco's Second Amended Complaint (the "Complaint" or "SAC") filed on June 12, 2020, fails to cure the deficiencies from Cisco's First Amended Complaint ("FAC"). In this Court's May 26, 2020, Order (the "Order" or "May 26 Order"), ECF No. 97, the Court held that: (1) Cisco failed to adequately allege that the trade secrets purportedly misappropriated by Dr. Wilson Chung ("Dr. Chung") and James He ("Mr. He") had independent economic value as required by the California Uniform Trade Secrets Act ("CUTSA") and the Defend Trade Secrets Act ("DTSA"); and (2) Cisco failed to articulate an independent basis for its intentional interference with contract claims that is legally distinct from that proffered in support of its trade secret misappropriation claims. Cisco's SAC fails to cure either of these deficiencies and, instead, largely seeks to subvert the Court's Order.

In the Order, the Court specifically noted that Cisco's claims against Dr. Chung and Mr. He failed because Cisco had failed to allege any "coherent nexus" between the trade secrets allegedly misappropriated and any purported independent economic value that Cisco contends those purported trade secrets contain. The SAC merely includes additional vaguely asserted allegations regarding the purported independent economic value of the claimed trade secrets. The SAC utterly lacks even high level allegations connecting the alleged value of the claimed trade secrets to the purported trade secrets at issue here.

Plainly, the additional allegations are vague, non-specific, and provide no nexus between the vaguely asserted value of the purported information and the information that was supposedly misappropriated by Dr. Chung and Mr. He. Instead, the vast majority of the SAC consists of expansive and generalized references to broad groups of files, without any way to determine which (if any) of the materials contained within those broad groups actually fall within the scope of the categories of alleged independent economic value that Cisco has added to the SAC in Paragraphs 98-102 and 133-137. And, in many instances, what little description Cisco does provide affirmatively suggests that the documents described do not fall within any of the alleged trade secret groups. Because Cisco still does not allege a nexus between any alleged independent economic value and any specifically identifiable confidential materials, Cisco provides no basis upon which to conclude

that any given alleged trade secret actually meets the threshold requirements for the existence of a trade secret. Cisco's ongoing failure seems designed to improperly "widen the net" of the case and cause the parties to defend against harassing and costly discovery fishing expeditions.

Cisco likewise attempts to perform an end run around of the Court's Order with respect to its intentional interference with contract claims, attempting to back door into the SAC the very theory that the Court previously rejected. In its Order, the Court concluded that any claims by Cisco for inducing breaches of contract were barred by the CUTSA to the extent that such claims were premised upon the alleged misappropriation of trade secrets. In its SAC, Cisco purports to address this issue by tacking on a handful of new paragraphs regarding what amounts to a small claims court claim, but fails to excise from the SAC the language relating to its intentional interference claims that are based on the purported misappropriation of trade secrets. There can be no doubt that failure was intentional — the plain language of Cisco's SAC makes clear that Cisco is pleading the new small claims act theory of intentional interference and its prior theory based upon alleged misappropriation of trade secrets as separate and alternative bases for this claim. Cisco's attempt to subvert the Court's prior Order in the guise of a small claims court claim should be rejected. Further, what new allegations Cisco does add, a handful of communications with a Poly consultant relating to a Cisco customer are, in reality, nothing more than a more specific example of the categories of alleged violations that the Court concluded in its Order could not support a claim for intentional interference with contract.

Cisco should be allowed to proceed only on those items on which it can actually state a cause of action.

## II. FACTUAL BACKGROUND

### A. Poly and Thomas Puorro

Poly is the combination of two storied companies, Plantronics, Inc. and Polycom, Inc. (*See, e.g.,* https://www.polycom.com/better-together.html.) Founded in the 1950s, Plantronics, Inc. created the first lightweight commercial headset for use in commercial flights, the MS50, which was used by commercial airline pilots around the world for nearly 50 years. (*Id.*) In the 1960s, Plantronics, Inc.'s headsets were used by astronauts in the Mercury missions, and in the first walk on

the moon. (*Id.*) Since its inception, Plantronics, Inc. has been the premier provider of headsets for use in commercial and consumer settings around the world. (*Id.*)

Founded in 1990, Polycom, Inc. is a major manufacturer of office phones and collaboration devices. (*Id.*) Polycom began manufacturing audio conferencing speakerphones and has, for many years sold content sharing, video conferencing, and video network and bridging products. (*Id.*) On March 28, 2018, Plantronics, Inc. announced that it was acquiring Polycom, Inc. (*Id.*) On March 18, 2019, the products of both Plantronics, Inc. and Polycom, Inc. were rebranded under the "Poly" name. (*Id.*) The combined Poly produces a range of business and consumer products, including headsets, videoconferencing, and voice collaboration devices. (*Id.*) Thomas Pourro ("Mr. Pourro") is Poly's Executive Vice President and General Manager.

### B.     The First Amended Complaint

#### 1.     Allegations Against Dr. Chung

On November 18, 2019, Cisco filed suit against three former Poly employees, Dr. Chung, Mr. He and Jedd Williams ("Mr. Williams"). ECF No. 1. On December 17, 2019, Cisco amended its complaint through the filing of a First Amended Complaint (the "FAC"). ECF No. 25. In the FAC, Cisco alleged that on February 26, 2019, Dr. Chung joined Poly. FAC ¶ 69. On a series of dates prior to February 26, 2019, and while still an employee of Cisco, Cisco contends that Dr. Chung "exfiltrated" broad and undescribed categories of documents, including the unidentified contents of the "First Seagate Drive," the "Second Seagate Drive," "files from the MacBook," and unidentified files from a "Samsung Drive." FAC ¶¶ 38-43.

#### 2.     Allegations Against Mr. He

Cisco alleged that Mr. He joined Poly on June 24, 2019, and was terminated on August 2, 2019. FAC ¶¶ 117, 124. Cisco asserts that on a series of dates before Mr. He joined Poly, Mr. He allegedly accessed and copied certain "Cisco Confidential Materials." FAC ¶¶ 102-115. Cisco claimed that Mr. He "took photographs" of largely undescribed "Cisco Confidential Materials," copies of unstated quantities of "Cisco Confidential Materials" copied from a laptop, copies of "over 100 documents." FAC ¶¶ 109, 112-115. From June 24, 2019 through August 2, 2019, Mr. He was employed by Poly for a total of 42 days. FAC ¶¶ 117, 124.

### 3. Claims of Intentional Interference with Contract Claim

In the FAC, Cisco also purported to state claims against Mr. Pourro and Poly for intentional interference with contractual relations. As support for its claims, Cisco cited only to a handful of allegations that repeatedly made clear that its intentional interference claims were predicated entirely upon the same alleged misappropriation of trade secrets that underpinned its trade secret claims. *See, e.g.,* FAC ¶¶ 310 ("Mr. Pourro engaged in conduct that prevented and/or hindered performance of the Williams PIAA, for example, by inducing Mr. Williams to reveal Cisco's proprietary information and trade secrets to Mr. Pourro and other Poly executives"), 311 ("Mr. Pourro intended for Mr. Williams to reveal Cisco's proprietary information and trade secrets or knew it was likely"), 312 ("Mr. Pourro's intentional interference with the Williams PIIA threatens to damage the value of Cisco's trade secret technology . . . .").

### C. The Motion to Dismiss and This Court's Order

On January 27, 2020, Poly filed a Motion to Dismiss Cisco's FAC because, among other things, Cisco failed to state any facts demonstrating that the purported trade secrets misappropriated by Dr. Chung and Mr. He derived independent economic value from not being generally known. ECF No. 40 at 21. The FAC's only allegations relating to the alleged value of those trade secrets consisted of conclusory statements that merely repeated the legal requirement. *See, e.g.*, FAC ¶ 270 ("Cisco trade secrets derive independent economic value, actual or potential, from not being generally known to, and/or not being readily ascertainable through proper means by, the public or other persons who can obtain economic value from the disclosure or use of the information.").

The Court, in its Order, agreed. More specifically, the Court held that Cisco failed to support its position that the information misappropriated by Dr. Chung and Mr. He is economically viable for three reasons: (1) The FAC said "nothing about the economic value of the categories of information purportedly misappropriated by [Dr.] Chung or [Mr.] He that concern the handful of subject matter that plaintiff alleged with sufficient particularity."; (2) Cisco's reliance on allegations that Dr. Chung and Mr. He signed a PIIA, while supporting the inference that information reviewed by them is valuable, said nothing about the economic value of the particular information at issue; and (3) Cisco's allegations failed to have "any coherent nexus" linking the alleged risks to the information allegedly

misappropriated. ECF No. 97 at 35-36.

Poly also moved to dismiss the claims for intentional interference with contract, on the grounds that Cisco had failed to allege viable claims for intentional interference with contract that were not duplicative of their claims for trade secret misappropriation. In its Order, the Court likewise agreed. The Court stated that Cisco "failed to allege an intentional interference claim with contract claim that arises out of a set of operative facts distinct from those relied upon to support its trade secret misappropriation claims." ECF No. 97 at 44. The Court went on to explain that "[w]hile plaintiff cites certain communications by Williams concerning potential employees available for recruitment, upcoming layoffs, *and existing clients potentially available for poaching,* specifically in support of its intentional interference claim, plaintiff relies upon the exact same sort of communications just a few pages earlier in its opposition to substantiate its trade secrets misappropriation claims. *Plaintiff may not have it both ways*." *Id.* at 44-45 (internal citations omitted) (emphasis added). The Court's Order was clear that Cisco would be given one opportunity to "allege a basis for its intentional interference with contract claims that is *legally distinct* from that proffered in support of its trade secrets misappropriation claims." *Id.* p. 46 (emphasis added).

### D. Cisco's Flawed Amendments

On June 12, 2020, Cisco filed a SAC in which it purported to address these flaws identified in the Order. ECF No. 108. In a misguided effort to address the lack of any discernible independent economic value as to Dr. Chung and Mr. He, Cisco adds Paragraphs 99 and 134. SAC ¶¶ 99, 134. The paragraphs purport to describe several categories of independent economic value in broad terms, including: (1) "design specifications and schematics for Cisco's pre-release video conferencing prototype"; (2) "design details and specifications for Cisco's sound bar products"; (3) "artwork prototypes, user experience design documentation, and user interview feedback"; and (4) "source code." *See, e.g.*, SAC ¶ 99. But, Cisco fails to provide any information whatsoever from which to identify the categories, if any, to which specific documents or information relate.

Likewise, in a flawed effort to sustain their intentional interference claims against Mr. Pourro and Poly, Cisco tacks on a handful of paragraphs selectively describing an incident in which Mr. Williams, prior to his employment with Poly, allegedly advanced Poly's interests with a prospective

customer, Room Ready.  SAC ¶¶ 179-183.  As a result of this alleged conduct Cisco allegedly spent a total of approximately $1,700, comprised of $916.19 for hotel, rental car, and flights, and $875.63 in other expenses.  *Id.* ¶ 181.  Cisco then tacks on a clause referencing this alleged incident to its claim for intentional interference with contract against Mr. Pourro.  *Id.* ¶ 325.

It is utterly clear, however, that in adding this new de minimis claim, Cisco is still attempting to proceed based upon its prior rejected theory.  *See id.* ¶¶ 325 ("Mr. Pourro engaged in conduct that prevented and/or hindered performance of the Williams PIAA, for example, by inducing Mr. Williams to reveal Cisco's proprietary information and trade secrets to Mr. Puorro and other Poly executives . . . ."), 326 ("Mr. Pourro intended for Mr. Williams to reveal Cisco's proprietary information and trade secrets or knew it was likely."), 327 ("Mr. Pourro's intentional interference with the Williams PIIA threatens to damage the value of Cisco's trade secret technology . . . .").

Despite Cisco's efforts, its allegations in the SAC are flawed, and Counts VII, VIII, IX, X, XI, and XII should be dismissed, and its flawed allegations should be stricken from the SAC as discussed in more detail below.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint or cause of action for failure to state a claim upon which relief can be granted.  To survive a motion to dismiss under Rule 12(b)(6), Cisco's Complaint must plead enough factual matter that, when taken as true, it "state[s] a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint that merely pleads facts that are consistent with a defendant's liability "stops short of the line between possibility and plausibility."  *Twombly*, 550 U.S. at 546.  Furthermore, although non-speculative factual allegations are to be accepted as true, the Court is not required to accept as true legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678; *see also id.* at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  Claims that do not plead facts that "plausibly give rise to an entitlement to relief" are subject to dismissal.  *Id.*

Federal Rule of Civil Procedure 12(f) permits this Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The purpose behind Rule 12(f) is to "avoid spending time and money litigating spurious issues." *Barnes v. AT&T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010). Generally, "[a] motion to strike should be granted if it will eliminate serious risks of prejudice to the moving party, delay, or confusion of issues." *Lee v. Hertz Corp.*, 330 F.R.D. 557, 560 (N.D. Cal. 2019). Courts may also "properly grant motions to srike [sic] when a defense or a claim is insufficient as a matter of law." *Zep Solar Inc. v. Westinghouse Solar Inc.*, No. C 11-06493 JSW, 2012 WL 1293873, at *1 (N.D. Cal. Apr. 16, 2012).

A matter is immaterial when it "has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (quotations and citations omitted) rev'd on other grounds. Whereas redundant matter "consists of allegations that constitute a needless repetition of other averments or which are foreign to the issue to be denied." *Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2005). On the other hand, "[t]he best test to ascertain whether matter be impertinent is to try whether the subject of the allegation be put in issue in the matter in dispute between the parties. All matter not material to the suit is regarded as impertinent." *Harrison v. Perea*, 168 U.S. 311, 319 (1897) (quotations and citations omitted). Ultimately, the decision "to grant a motion to strike lies within the sound discretion of the district court." *Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 271 (N.D. Cal. 2015).

## IV. ARGUMENT

### A. Cisco Fails to Adequately Plead Independent Economic Value as to Claims Involving Dr. Chung and Mr. He

Cisco's burden under Rule 8 of the Federal Rules of Civil Procedure is to sufficiently plead enough facts so that Poly can identify what information Cisco alleges is a trade secret and prepare a defense, *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012); *accord Imax*

*Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164-65 (9th Cir. 1998).[1]  Included among the requirements for properly stating a trade secret is the requirement that a complaint state facts sufficient to establish that the trade secret "derives independent economic value . . . from not being generally known . . . ." *Direct Techs., LLC, v. Elec. Arts, Inc.,* 836 F.3d 1059, 1070 (9th Cir. 2016) (quoting Cal. Civ. Code § 3426.1(d)).

The claims in Cisco's SAC fail to "pass muster" with regard to both Dr. Chung and Mr. He.  Although Cisco has now added to the SAC a handful of additional allegations that purport to constitute that independent economic value, in reality it remains entirely impossible to determine whether any given piece of information (or none at all) falls within the alleged categories of independent economic value.  To the extent that Cisco does purport to provide any allegations of independent economic value with regard to the materials allegedly misappropriated by Dr. Chung, those allegations are confined to five categories of materials, as pleaded in Paragraph 99: (1) "Design specifications and schematics for Cisco's pre-release video conferencing prototype"; (2) "Design details and specifications for Cisco's sound bar products"; (3) "Artwork prototypes, user experience design documentation, and user interview feedback"; (4) "Source code"; and (5) "The EA document."  SAC ¶ 99.

Because Cisco largely avoids identifying any specific information, it is impossible to discern whether any given piece of information alleged in the SAC actually falls within these five claimed categories of value stated above.[2]  The majority of the SAC consists of broad references to entire swaths of documents, thereby preventing defendants from discerning any possible "nexus" between an alleged trade secret and the categories of alleged independent economic value.  *See, e.g.*, SAC ¶¶

---

[1] Cisco claims that "no authority suggest[s] that a party is required to disclose a trade secret with reasonable particularity at the pleading stage," (ECF No. 51 at 11) and cites to an unpublished Ninth Circuit memorandum disposition, *Meggitt San Juan Capistrano, Inc. v. Yongzhong*, 575 F. App'x 801 (9th Cir. 2014), in support.  Cisco's reliance on *Meggitt* is misplaced.  There, the Ninth Circuit, merely stated that an appellant had cited cases about the reasonable particularity requirement as it applies to discovery and no cases that applied to the pleading stage and, further, that its opinion in that case was "not appropriate for publication and [] not precedent[ial]."

[2] Indeed, the only item of trade secret alleged anywhere in the SAC that can be discernibly tied to any of the categories that Cisco alleges is "The EA Document," which has its own category.  But Cisco avoids stating anywhere in the SAC that the EA Document is actually a trade secret – merely that it is a "Cisco Confidential Document."

1    37 ("[o]n February 3, 2019, Dr. Chung downloaded over 3,000 files from Cisco's internal document
2    repositories."), 42 ("[o]n February 3, 2019, Dr. Chung uploaded files from the MacBook to his
3    personal iCloud account . . . ."). These vague allegations fail to meet basic pleading requirements.
4    *See MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1993) ("[A] plaintiff who
5    seeks relief for misappropriation of trade secrets must identify the trade secrets and carry the burden
6    of showing that they exist.").

7    Further, to the extent that Cisco does identify any specific documents or pieces of
8    information, there is nothing in the SAC stating that any of these documents fall within the categories
9    newly added by Cisco. The list of alleged trade secrets referenced in the SAC that were purportedly
10   misappropriated by Dr. Chung includes, for example, a "Webex Vision Document," "a Cisco
11   collaboration roadmap document," "iCloud backups," a document entitled "Cisco UCaaS Market
12   Position," "details about a vendor contract, which also included payment terms," and "minutes from
13   a Cisco meeting." SAC, ¶¶ 65, 66, 68, 73, 81, 86. The SAC is devoid of any indication that any of
14   these documents or files contain or constitute, for example, "[d]esign details and specifications,"
15   "[a]rtwork prototypes," or "[s]ource code."[3]

16   In addition, what little information Cisco does plead with regard to the handful of documents
17   that it references actually compels the conclusion that those documents do not fall within the
18   categories of alleged "independent economic value" cited in Paragraph 99 of the SAC. For example,
19   Cisco describes its alleged "UCaaS Market Position" document as "relat[ing] to Cisco's prospective
20   market positioning in the collaboration space," a topic that falls nowhere within any of the five
21   categories of alleged independent economic value. *Id.* ¶ 65. Similarly, vendor "payment terms"
22   cannot be encompassed in any of those five categories, but are specifically identified as a
23   misappropriated document. *Id.* ¶ 76.

---

[3] Paragraph 99 should also be struck because it violates Federal Rule of Civil Procedure Rule 10(b), which requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Paragraph 99 is not limited to a single set of circumstances, but, rather, includes five separate alleged categories of independent economic value, each separated by bullet points with formless blocks of text, one of which is comprised of over 20 lines of text.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

The allegations with regard to Mr. He, who only worked at Poly for little over a month, suffer from similar defects. Indeed, Cisco largely avoids referencing any particular documents or information regarding Mr. He, thereby making it impossible for Poly to determine whether the supposed independent economic value of what he allegedly misappropriated relates to any given alleged trade secret. Even when Cisco does reference a particular document, however, it fails to fall into one of the five enumerated categories[4] of alleged independent economic value found in Paragraph 134.[5] For example, Cisco specifically alleges that Mr. He took a photograph of a financial presentation that contained confidential information, including Cisco's financial highlights and revenue. *Id.* ¶ 108.

The SAC, like the FAC, remains entirely devoid of any "nexus" between the claimed trade secrets and their alleged independent value. Despite Cisco's best efforts, these additions not only fail to ameliorate Cisco's deficiencies, but also create an additional issue relating to the sufficient identification of trade secrets. In trade secret misappropriation claims, plaintiffs are required to identify their alleged trade secrets with sufficient particularity and "Courts generally require sufficient pleading such that the other party is on notice of what it is alleged to have misappropriated." *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, 780 F. Supp. 2d 1061, 1078 (D. Haw. 2011). Cisco's additions in Paragraphs 99 and 134 provide vague descriptions of a variety of alleged trade secrets in impermissibly broad categories that fail to meet the appropriate threshold. *See AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1147 (N.D. Cal. 2019) ("broad categories are insufficient to put Defendants on notice of the scope of the trade secrets that are the subject of [a Plaintiff's] DTSA claim."). On that independent and alternative basis, Cisco's additions should also be stricken.

---

[4] Cisco lists five categories of documents that have independent economic value because it allegedly invested significant resources in the creation of them: (1) Architectural design documents and hardware diagrams for headset prototypes; (2) Design details and schematics for an unreleased IP telephone project; (3) Cisco's emerging business opportunities in the collaboration space; (4) Vendor product roadmaps; and (5) Full engineering specifications. *Id.* ¶ 134.

[5] Paragraph 134 should also be stricken because it violates FRCP Rule 10(b), which requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Paragraph 134 is not limited to a single set of circumstances, but, rather, includes five separate alleged categories of independent economic value, each separated by bullet points with formless blocks of text, one of which is comprised of over 20 lines of text.

Furthermore, Cisco has elected, in violation of Federal Rule of Civil Procedure's 10(b)'s requirement that it "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances," to artificially plead what are, in actuality, multiple separate sets of facts and circumstances as single causes of action. Specifically, Cisco pleads against Poly and Mr. Pourro a single cause of action each for alleged violations of the CUTSA and DTSA, based upon the alleged misappropriation by Dr. Chung, Mr. He, and Mr. Williams when, under Rule 10(b), those claims should have been pleaded as separate causes of action. These Counts —VII, VIII, X, and XI — should therefore be dismissed to the extent predicated on the alleged conduct of Dr. Chung and Mr. He, and the Paragraphs underlying Cisco's artificially conflated claims, Paragraphs 27-137, 212-270, and the claims themselves, Paragraphs 298-321 and 329-356, should be stricken.

### B. Cisco Improperly Included Allegations Relating to iIs Intentional Interference with a Contractual Relationship Claim Against Poly and Mr. Puorro that the Court Previously Dismissed

Counts IX and XII of Cisco's SAC are for an alleged intentional interference with a contractual relationship by Mr. Pourro and Poly, respectively. SAC at ¶¶ 307-313. These claims, however, remain barred by the CUTSA. In its May 26 Order, the Court concluded, consistent with this principle, that Cisco "failed to allege an intentional interference with contract claim that arises out of a set of operative facts distinct from those relied upon to support its trade secret misappropriation claims." ECF No. 97 at 44.

This conclusion was for good cause — "[t]he purpose of CUTSA was to sweep away the 'states' bewildering web of rules and rationales' and replace it with 'unitary definitions of trade secret and trade secret misappropriation." *Epicor Software Corp. v. Alternative Tech. Sols., Inc.*, 2015 WL 12724073, at *2 (C.D. Cal. Apr. 2, 2015) (citations omitted). "As such, CUTSA 'occupies the field' of common law claims based on trade secret misappropriation . . . and provides 'the exclusive civil remedy' under California law for conduct that falls within its purview." *Id.* (citations omitted). A state law claim is superseded by CUTSA if it is "based on the same nucleus of facts as trade secret misappropriation." *Id.* (*quoting SunPower Corp. v. SolarCity Corp.*, 2012 WL 6160472, at *3 (N.D. Cal. Dec. 11, 2012)). Further, "[a]lthough CUTSA contains a statutory definition for 'trade secret,' courts have held that CUTSA serves to preempt all claims premised on the wrongful taking and use

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

of confidential business and proprietary information, even if that information does not meet the statutory definition of a trade secret." *Id.* (citations omitted).

Cisco's SAC flouts the Court's prior ruling, and this principle of law. It is utterly clear that Cisco is still attempting to proceed based upon its prior rejected theory. Indeed, the overwhelming majority of Cisco's new intentional interference with contract claim simply repeats verbatim Cisco's prior rejected allegations. There can be no question that through those allegations, Cisco again purports to bring suit for intentional interference with contract based upon Mr. Williams's alleged misappropriation of trade secrets. *See* SAC ¶¶ 325 ("Mr. Pourro engaged in conduct that prevented and/or hindered performance of the Williams PIAA, for example, by inducing Mr. Williams to reveal Cisco's proprietary information and trade secrets to Mr. Pourro and other Poly executives . . . ."), 326 ("Mr. Pourro intended for Mr. Williams to reveal Cisco's proprietary information and trade secrets or knew it was likely."), 327 ("Mr. Pourro's intentional interference with the Williams PIIA threatens to damage the value of Cisco's trade secret technology . . . .").

Further, the handful of new allegations that Cisco has added regarding events relating to Room Ready are, in reality, nothing more than a more specific example of the categories of information that this Court already held could not support an intentional interference claim. Specifically, the Court went on to explain that "[w]hile plaintiff cites certain communications by Williams concerning potential employees available for recruitment, upcoming layoffs, ***and existing clients potentially available for poaching,*** specifically in support of its intentional interference claim, plaintiff relies upon the exact same sort of communications just a few pages earlier in its opposition to substantiate its trade secrets misappropriation claims. ***Plaintiff may not have it both ways***." *Id.* at 44-45 (internal citations omitted) (emphasis added).

Here, Cisco's handful of new paragraphs do little more than provide additional detail regarding "existing clients potentially available for poaching," one of the same categories of communications that the Court already held were mere restatements of its trade secret claims. *Id.* Cisco "cannot have it both ways." *Id.* Its intentional interference claims should be dismissed or, alternatively, stricken from the SAC. Cisco's handful of allegedly new allegations regarding Room

Ready are collectively, nothing more than a more detailed description of a specific incident of alleged communications regarding "existing clients potentially available for poaching."

As the Court has previously stated, "Plaintiff may not have it both ways."  ECF No. 97 at 45.  Because Cisco's intentional interference claims are barred by the CUTSA, its allegations purporting to assert claims on exactly that basis are legally irrelevant.  Those allegations, as they relate to Cisco's claim for intentional interference, should be stricken from the SAC.  Since those allegations are the only allegations supporting Cisco's claims for intentional interference, those claims, as alleged against Poly and Mr. Puorro, should be dismissed with prejudice.  *See id.* at 46 (Court permitting Cisco to amend its intentional interference claims, but only allowing Cisco "one opportunity to do so.").

## V. CONCLUSION

For the following reasons, the Court should grant Poly's Motion to Strike and strike, from the SAC, Paragraphs 27-137, 179-183, 212-270, 298-359, and those portions of the Second Amended Complaint that reference any claims of intentional interference with a contractual relationship, including but not limited to Paragraphs 7 and 18.  Furthermore, for the following reasons, the Court should grant Poly's Motion to Dismiss and dismiss Counts VII, VIII, IX, X, XI, and XII of the SAC.

|  |  |  |
|---|---|---|
|  | McDERMOTT WILL & EMERY LLP | |
| DATED: June 26, 2020 | By: */s/ Jon Dean* | |
|  | Jon Dean | |
|  | *Attorneys for Defendants* | |