Daniel J. Muller (SBN #193396)
dmuller@venturahersey.com
VENTURA HERSEY & MULLER, LLP
1506 Hamilton Avenue
San Jose, CA  95125
Telephone:  408-512-3025
Fax:  408-512-3023

Attorneys for Defendant Wilson Chung

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CISCO SYSTEMS, INC., a California Corporation, CISCO TECHNOLOGY, INC., a California Corporation<br><br>        Plaintiffs,<br><br>    vs.<br><br>PLANTRONICS, INC., a Delaware Corporation, WILSON CHUNG, JAMES HE, JEDD WILLIAMS, AND THOMAS PUORRO individuals,<br><br>        Defendants. | Case No. 4:19-CV-07562-PJH<br><br>**DEFENDANT WILSON CHUNG'S COUNTERCLAIMS** |

## Counterclaims

Defendant and Counter-Plaintiff Dr. Wilson Chung alleges the following counterclaims against Defendant Cisco Systems, Inc. and Defendant Cisco Technology, Inc. as follows:

## Introduction

1.    Defendant and Counter-Plaintiff Dr. Wilson Chung ("Dr. Chung") counterclaims against Plaintiff and Counter-Defendant Cisco Systems, Inc., a California Corporation, and Cisco Technology, Inc., a California Corporation (collectively "Cisco"), on the grounds that Cisco has engaged in a retaliatory campaign against Dr. Chung because he decided to leave his employment with Cisco and work, instead, for Cisco's competitor Plantronics, Inc. ("Poly").  To support its campaign against Dr. Chung, Cisco has invoked unlawful and unenforceable provisions of a *de facto* non-compete agreement.

1    2.    The broad claims asserted by Cisco against Dr. Chung are based on Cisco's insistence

2    that Dr. Chung took information covered by the Proprietary Information and Inventions Agreement

3    between Dr. Chung and Cisco dated February 9, 2007 ("PIIA").  The PIIA contains unlawful

4    provisions.  Indeed, the PIIA is so expansive that it purports to cover and "protect" normal,

5    unprotectable ideas and information that are not normally thought of as confidential.

6    3.    Dr. Chung brings his counterclaims because he requires a declaration that certain

7    provisions in the PIIA are unenforceable.  He likewise seeks an injunction prohibiting Cisco from

8    seeking to enforce certain aspects of the PIIA against him or others similarly situated because such

9    provisions violate California law.

10    **Jurisdiction and Venue**

11    4.    Dr. Chung asserts this Counterclaim under Rule 13 of the Federal Rules of Civil

12    Procedure.  Cisco has its principal place of business in this district and has further consented to

13    jurisdiction and venue by filing suit against Dr. Chung in this Court.  Accordingly, Cisco is subject to

14    personal jurisdiction in this district.

15    5.    This Court has supplemental subject matter jurisdiction over these state law

16    counterclaims pursuant to 28 U.S.C. § 1367 because they arise out of the same occurrence that is the

17    basis for Cisco's Defend Trade Secrets Act ("DTSA") claims and form part of the same case or

18    controversy.

19    6.    Venue is proper within this District under 25 U.S.C. § 1391(b) because a substantial

20    part of the events or omissions giving rise to these counterclaims occurred within this District.

21    **The Parties**

22    7.    Dr. Chung is a software and hardware engineer at Poly.  Dr. Chung was employed at

23    Cisco for nearly twelve years as a principal engineer and senior technology lead.  Upon his departure

24    from Cisco in February 2019, Dr. Chung began working at Poly.

25    8.    Cisco Systems, Inc. is a California corporation with its principal place of business

26    located at 170 West Tasman Drive San Jose, California 95234.

27    9.    Cisco Technology, Inc. is a California corporation with its principal place of business

28    located at 170 West Tasman Drive San Jose, California 95234.

-2-

**DEFENDANT WILSON CHUNG'S COUNTERCLAIMS**

**General Allegations**

10.     Dr. Chung and Cisco entered into the PIIA on or about February 9, 2007 at the commencement of Dr. Chung's employment with Cisco.  Cisco required that Dr. Chung sign the PIIA as a condition of his employment.  The only consideration Dr. Chung received for signing the PIIA was his continued employment at Cisco.  As alleged herein, the PIIA contains unlawful and unenforceable provisions.

11.     On information and belief, Cisco is aware that the PIIA contains unlawful and unenforceable provisions but it has nonetheless asserted—and continues to assert—that the agreement was and is enforceable as to Dr. Chung as a way to unlawfully prevent and/or discourage Dr. Chung from working for a Cisco competitor.  Specifically, Cisco has used, and is using, the PIIA (and the threat of litigation pursuant to it) in an attempt to deter Dr. Chung from continuing his employment at Poly.  Dr. Chung seeks a declaration regarding the invalidity of certain provisions of the PIIA so that he can continue to work for Poly without the threat of new and additional claims from Cisco.

12.     The PIIA defines "Proprietary Information" as "(i) information that was or will be developed, created, or discovered by or on behalf of the Company, or which became or will become known by, or was or is conveyed to the Company, which has commercial value in the Company's business; **or** (ii) any other information that the Company does not want publicly disclosed."  PIIA at ¶ A2 (emphasis added).  The PIIA further expands the definition of Proprietary Information as follows:

> "Proprietary Information" includes, but is not limited to information about software programs and subroutines, source and object code, algorithms, trade secrets, designs, technology, **know-how**, processes, data, **ideas**, techniques, inventions (whether patentable or not), works of authorship, formulas, business and product development plans, customer lists, **terms of compensation** and performance levels of Company employees, and other information concerning the Company's actual or anticipated business, research or development, or which is received in confidence by or for the Company from any other source or any document that is marked as "confidential."

**DEFENDANT WILSON CHUNG'S COUNTERCLAIMS**

PIIA at ¶ A2 (emphasis added).

13.     Having provided the foregoing expansive and essentially unlimited definition of Proprietary Information, the PIIA prohibits Dr. Chung from using any of the Proprietary Information without Cisco's permission.  Specifically, it provides as follows:

> [At] all times, both during my employment by the Company and after its termination, I will keep in confidence and trust and will not use or disclose any Proprietary Information or anything relating to it without the prior written consent of an officer of the Company, except as may be necessary in the ordinary course of performing my duties to the Company.

PIIA at ¶B.  In other words, per the terms of the PIIA, Dr. Chung is not allowed to use his own "know how" or "ideas" after leaving Cisco unless an officer at Cisco permits him to do so in writing. Similarly, Dr. Chung is not allowed to share the terms of his compensation at Cisco without the written permission of a Cisco officer.

14.     The PIIA also prohibits the solicitation of Cisco employees.  Specifically, at Paragraph F, the PIIA provides as follows:

> During the term of my employment and for one year thereafter, I will not encourage or solicit any employee of the Company to leave the Company for any reason or to accept employment with any other company.  As part of this restriction, I will no interview or provide any input to any third party regarding any such person during the period in question.  However, this obligation shall not affect any responsibility I may have as an employee of the Company with respect to the bona fide hiring and firing of Company personnel.

15.     The foregoing provisions of the PIIA are unlawful and have the effect of restraining Dr. Chung from engaging in his choice of lawful profession, trade, or business and are, therefore, void pursuant to California Busines and Professions Code section 16600.  By classifying Dr. Chung's "know how," his "ideas," and **any** information concerning Cisco's "actual or anticipated business" as "proprietary" Cisco is attempting to achieve by contract what the law specifically disallows.  Cisco cannot claim "ownership" over Dr. Chung's know how and ideas and then assert that alleged ownership to prevent Dr. Chung from working for Poly.

-4-

**DEFENDANT WILSON CHUNG'S COUNTERCLAIMS**

16.     Through the PIIA, Cisco seeks to gain ownership over Dr. Chung's personal ideas and personal work solutions.  Cisco also seeks to prevent Dr. Chung from directly or indirectly benefitting from his own ideas and know-how to obtain better employment opportunities and/or engage in his own business pursuits.

17.     Lest there be any doubt, Cisco has made its motivations strikingly clear.  As it alleges at Paragraph 97 of its Second Amended Complaint, it asserted the PIIA as a basis to insist that Poly suspend Dr. Chung from his employment at Poly.  Poly complied so that it could conduct an investigation.  When it determined that Dr. Chung was not using any Cisco information in his employment at Poly, it reinstated Dr. Chung's employment.  In Cisco's words, when "Poly inexplicably brought Dr. Chung back to work on November 14, 2019," Cisco had ". . . no choice but to file this action to protect its trade secrets."  (SAC, ¶ 94.)  Cisco then immediately filed this action against Dr. Chung in an effort to prevent him from continuing to work for Poly.

18.     The PIIA's prohibition on Dr. Chung revealing his Cisco compensation information likewise amounts to a violation of California law (*see* California Labor Code § 232) and constitutes a unfair business practice pursuant to California Business and Professions Code § 17200.

19.     The non-solicitation provision similarly attempts to restrict Dr. Chung and his fellow Cisco employees from pursuing their careers as they see fit.  In this lawsuit, Cisco has accused Dr. Chung of breaching the non-solicitation provision.  (*See* Second Amended Complaint a ¶82)

20.     On information and belief, Cisco insisted that Dr. Chung agree to the provisions of the PIIA so that it could then use the PIIA to attempt to prevent Dr. Chung from obtaining employment with a competitor and, failing that, to attempt to get any such competitor to separate Dr. Chung from his employment.  Cisco's lawsuit against Dr. Chung is a manifestation of its strategy to prevent employee movement.

21.     On information and belief, Cisco requires all (or nearly all) of its employees in California to sign agreements that are similar, if not identical, in substance to the PIIA.

22.     Dr. Chung requires a declaration from this Court regarding the enforceability of the PIIA provisions cited herein.  He requires such a declaration because Cisco has, through its threats to Dr. Chung and his employer (via letters sent to him by counsel for Cisco on September 19, 2019 and

October 11, 2019) and the allegations of violations of the PIIA in the Second Amended Complaint (Paragraphs 94-95) attempted to prevent him from working for Poly and / or any subsequent employer.  Absent a declaration, Dr. Chung will not be certain as to his right to work for a Cisco competitor.

**FIRST CAUSE OF ACTION**

**(Declaratory Relief)**

23.     Dr. Chung incorporates all the paragraphs above as though fully set forth herein.

24.     An actual controversy has arisen regarding the validity of certain provisions of the Proprietary Information and Inventions Agreement between Cisco and Dr. Chung.

25.     Specifically, Cisco has asserted that Dr. Chung has violated the PIAA and demanded that Poly not employ him as a result.  It has also alleged that Dr. Chung's supposed violations of the PIAA support the claims asserted by Cisco in this lawsuit.

26.     Dr. Chung, on the other hand, believes that he is entitled to his "ideas" and "know how" and that he is, therefore, free to use his ideas and know-how without the open threat from Cisco that it will sue him for breach of the PIIA.  Similarly, Dr. Chung requires a declaration that he is entitled to share his compensation information despite the fact that the PIIA, on its face, prohibits him from doing so.

27.     Declaratory relief is necessary and proper so that Dr. Chung can resolve his rights and duties relating to the PIIA.

**SECOND CAUSE OF ACTION**

**(Violation of Cal. Bus. & Prof. Code § 17200 *et seq.*)**

28.     Dr. Chung incorporates all the paragraphs above as though fully set forth herein.

29.     Cisco's use of its PIIA as a *de facto* non-compete agreement, as alleged herein, violates California Business & Professions Code § 16600 and constitutes unfair competition in violation of the Unfair Competition Law.  *See* California Business & Professions Code § 17200 *et seq.*

-6-

**DEFENDANT WILSON CHUNG'S COUNTERCLAIMS**

30.     Cisco's unfair competition has injured and will continue to injure employees, like Dr. Chung, who have a desire to leave their employment at Cisco and work for one of Cisco's competitors or in a field in which Cisco competes.

31.     Upon information and belief, even though the non-compete provisions in the PIIA are unenforceable, Cisco has utilized them, and continues to utilize them, in an attempt to restrict Dr. Chung's mobility as an employee.  On information and belief, Cisco maintains similar non-competition provisions as a scheme and device to restrain the employment opportunities of its employees within the State of California.  Cisco also utilizes the non-competition provisions to prevent competing companies or employers from hiring Cisco's former employees to work in the State of California, and from lawfully soliciting and transacting business in competition with Cisco within the State of California.

32.     The foregoing acts of Cisco as alleged herein produce an unfair competitive advantage and economic profits and other benefits to Cisco at the expense of Dr. Chung and Cisco's employees, former employees, and other competing companies or employers such as Poly and the People of California.

33.     The unfair practices described herein are, by their very nature, fraudulent and self-concealing and as such, the persons or entities affected either do not discover that they have been victimized or, by the nature of the Cisco's actions, are deterred from taking action on their own behalf.

34.     Unless enjoined by this Court, Cisco will continue to engage in the foregoing unfair business practices.  Dr. Chung, therefore, requests an order enjoining Cisco from engaging in the unfair business practices described herein.

35.     Dr. Chung brings this cause of action on behalf of the general public of the State of California including, but not limited to, Cisco's current and former California employees, and those competitors of Cisco who do business within the State of California.

## PRAYER FOR RELIEF

WHEREFORE, Dr. Chung respectfully requests that this Court enter judgment against Cisco as follow:

**DEFENDANT WILSON CHUNG'S COUNTERCLAIMS**

A. A declaration that the provisions of the Proprietary Information and Inventions Agreement cited herein are unenforceable and void;

B. Enjoins Cisco from enforcing the provisions of the PIIA which violate California law;

C. Attorneys' fees, costs, and expenses in this action; and

D. An award of such and further relief as the Court deems just and proper.

Date:  August 19, 2020                                        VENTURA HERSEY & MULLER, LLP


                                                             By  /s/_____
                                                                 Daniel J. Muller
                                                                 Attorneys For Defendant Wilson Chung

-8-

**DEFENDANT WILSON CHUNG'S COUNTERCLAIMS**