UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CISCO SYSTEMS, INC., et al.,

           Plaintiffs,

    v.

WILSON CHUNG, et al.,

           Defendants.

Case No.  19-cv-07562-PJH

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE PORTIONS OF TRADE SECRET DISCLOSURE, DENYING MOTION FOR A PROTECTIVE ORDER, AND GRANTING IN PART AND DENYING IN PART MOTIONS TO SEAL**

Re: Dkt. Nos. 136, 137, 141, 149, 154, 156, 158, 160

Before the court are defendants Plantronics Inc.'s ("Plantronics") and Thomas Puorro's ("Puorro") motion to strike and challenge the sufficiency of plaintiff Cisco Systems, Inc.'s California Code of Civil Procedure § 2019.210 trade secret designation. Dkt. 136 (the "motion to strike").[1]  Also before the court is Plantronics' motion for a protective order from pending discovery served by plaintiff.  Dkt. 137 (the "motion for a protective order").  Defendants James He ("He") filed a joinder to both motions.  Dkt. 146. Lastly, also before the court are various requests by plaintiff to seal portions of its trade secrets designation, the parties' briefing in connection with the motion to strike, and numerous exhibits filed with such briefs.  Dkts. 141, 149, 160.

Having read the parties' papers and carefully considered their argument and the relevant legal authority, and good cause appearing, the court hereby **GRANTS IN PART** and **DENIES IN PART** the motion to strike, **DENIES** the motion for a protective order,

---

[1] To simplify, the court will refer only to "Plantronics" when discussing both its and Puorro's combined briefing on the above motions.

1   and **GRANTS IN PART** and **DENIES IN PART** the requests to seal.

2                                   **BACKGROUND**

3            Plaintiff sued defendants for purportedly misappropriating its trade secrets.  On

4   May 26, 2020 and August 5, 2020, the court issued two orders deciding numerous

5   motions, including two motions to dismiss the then-operative pleading in this action.  Dkt.

6   97 (the "May 26 order"); Dkt. 126 (the "August 5 order").  The court's decision on the

7   instant motion to strike depends in part on the holdings in both those orders.  The court

8   will detail its prior orders as necessary in its analysis.

9            Now for the events giving rise to the parties' most recent dispute.  On August 11,

10  2020, plaintiff served Plantronics with its initial trade secrets disclosure pursuant to

11  California Code of Civil Procedure § 2019.210.  The next day, after correcting for an

12  apparent numbering mistake, plaintiff re-served that same disclosure, recaptioned as

13  plaintiff's "First Amended Trade Secret Identification Pursuant to CCP § 2019.210."  This

14  version of the disclosure is at the heart of Plantronics' motion to strike.  In this order, the

15  court will refer to it as the "disclosure" and cite to its pages and lines directly rather than

16  its ECF docket number.[2]

17          The disclosure comprises seven different sections discussing the purported trade

18  secrets allegedly taken by defendants.  The sections at issue include the following:

19       •    The Project Sunkist Trade Secrets (Section II, Discl. 3-22).

20       •    The Project Polaris Trade Secrets (Section III, Discl. 22-49).

21       •    The Project Vecchio Trade Secrets (Section V, Discl. 60-65).

22       •    The EA Document (Section VI, Discl. 68).

23       •    The Project Rialto Trade Secrets (Sections VII, Discl. 68-69).

24       •    The Business Information Trade Secrets (Section VIII, Discl. 69-76).

25  _____

26  [2] To further complicate matters, Plantronics refiled the disclosure under seal in a
    declaration at both Docket 136-5 and Docket 138.  It appears that Plantronics did so
27  because of a corrupted PDF file affecting the declaration itself filed at Docket 136-5.
    Based on the court's review, the disclosure contained at Docket 138 (pages 5-83) is
28  identical to that contained at Docket 136-5 (pages 5-83).  The court will refer to the
    original disclosure filed at Docket 136-5.

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Project Sunkist is plaintiff's codename for one of its headsets.  Project Polaris and Vecchio are plaintiffs' codenames for its video-conferencing devices.  The EA Document, previously discussed in this court's prior order, is a particular document purportedly misappropriated by defendant Wilson Chung ("Chung").  It supposedly contains an amalgamation of information for various plaintiff devices.  Project Rialto is plaintiff's codename for a next generation device that the court need not detail.  The Business Information refers to various sorts of plaintiff's business strategies and plans that prior employee, defendant Jed Williams ("Williams"), and Puorro purportedly misappropriated.

In its motion to strike, Plantronics contends that 23 trade secrets designated in the above sections of the disclosure fall outside the scope of this court's prior orders, which determined the purported trade secret information that plaintiff both sufficiently described in its pleadings and adequately alleged to maintain independent economic value.  As part of that motion, Plantronics adds an ancillary attack about the lack of particularity in detail of various other designated trade secrets.

On August 11, 2020, the same day that plaintiff served the first version of its disclosure, plaintiff served defendants with various written discovery requests.  Dkt. 137-2 at 4.  These requests were the exact same requests served on or around April 15, 2020, *i.e.*, before the court issued its prior orders.  Dkt. 137-2 at 5 (plaintiff's counsel's email stating "In addition, please find attached the discovery requests that have already been served in this matter"); Dkt. 137-3 (April 15, 2020 signature date); Dkt. 137-4 (April 15, 2020 signature date).

Several weeks later, on September 4, 2020, Plantronics emailed plaintiff seeking to meet and confer about these requests and challenging plaintiff's "Highly Confidential – Attorneys' Eyes Only" confidentiality designation in the disclosure.  Id. at 3.  Days later, on September 8, 2020, plaintiff responded stating that it would be "happy to schedule a meet and confer" provided that Plantronics inform plaintiff of the basis of that request as well as the challenge to the highly confidential designation.  Id.

Plantronics responded that same day.  Plantronics indicated that it sought to

1    discuss the discovery request issues previously briefed in its May 20, 2020 motion to stay

2    discovery, the impact of the court's August 5 order on the re-served discovery requests,

3    and some of its basis for challenging the designations.  Id. at 2.  Plantronics followed-up

4    the next day.  Id.  On September 10, 2020, Plantronics filed the instant motions.

### DISCUSSION

**I.    Motion to Strike the Disclosure**

    **A.    Legal Standard**

      Federal Rule of Civil Procedure 12(f) provides that the court "may strike from a

pleading any insufficient defense or any redundant, immaterial, impertinent, or

scandalous matter."  Fed. R. Civ. P. 12(f).  "The function of a [Rule] 12(f) motion to strike

is to avoid the expenditure of time and money that must arise from litigating spurious

issues by dispensing with those issues prior to trial."  Whittlestone, Inc. v. Handi-Craft

Co., 618 F.3d 970, 973 (9th Cir. 2010).

      Motions to strike are not favored and "should not be granted unless it is clear that

the matter to be stricken could have no possible bearing on the subject matter of the

litigation."  Colaprico v. Sun Microsystem, Inc., 758 F. Supp. 1335, 1339 (N.D. Cal. 1991).

When a court considers a motion to strike, it "must view the pleadings in light most

favorable to the pleading party."  Uniloc v. Apple, Inc., 2018 WL 1640267, at *1 (N.D. Cal.

Apr. 5, 2018).  A court must deny the motion to strike if there is any doubt whether the

allegations in the pleadings might be at issue in the action.  In re 2TheMart.com, Inc.,

Sec. Litig., 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000).  Ultimately, the decision "to grant

a motion to strike lies within the sound discretion of the district court."  Rees v. PNC Bank,

N.A., 308 F.R.D. 266, 271 (N.D. Cal. 2015).

    **B.    Analysis**

      As previously stated, Plantronics challenges the disclosure on two grounds.[3]  First,

---

[3] Plantronics also challenged the disclosure on grounds that plaintiff unreasonably
designated the entirety of the 80-page disclosure as Attorney's Eyes Only.  Dkt. 136-3 at
29-30.  Following that challenge, plaintiff served another amended disclosure revising
only those confidentiality designations.  Dkt. 149-4 at 29.  Plantronics then withdrew its

4

1   it argues that the disclosure seeks to designate trade secrets outside the scope of that

2   information determined actionable by the court in its prior orders.  Dkt. 146-3 at 14-19.

3   Second, it argues that the disclosure fails to describe the trade secrets with the

4   reasonable particularity.  Id. at 20-29.

5       Plaintiff disagrees.  As a threshold matter, plaintiff asserts that the motion to strike

6   is premature because Plantronics failed to meet and confer under Local Rule 37-1. Dkt.

7   149-4 at 7-11.  Plaintiff also suggests that this motion is procedurally improper because

8   Plantronics failed to articulate a legal basis to strike the subject disclosure portions.  Id. at

9   20.  Lastly, plaintiff contests both of Plantronics' substantive challenges on the merits.  Id.

10  at 11-29.  The court will analyze each dispute in turn.

11              **1.      Local Rule 37-1 Does Not Render the Motion to Strike Premature**

12      Civil Local Rule 37-1 provides that "[t]he court will not entertain a request or a

13  motion to resolve a disclosure or discovery dispute unless, pursuant to Fed. R. Civ. P. 37,

14  counsel have previously conferred for the purpose of attempting to resolve all disputed

15  issues."  Civ. L.R. 37-1(a).  As used in this local rule, the term "disclosure" is undefined.

16      However, when analyzed in the context of Federal Rule of Civil Procedure 37

17  (which the local rule refers to), it is apparent that the the term "disclosure" means the

18  mandatory disclosures contemplated by Federal Rule of Civil Procedure 26. Fed. R. Civ.

19  Pro. 37(a)(3) ("If a party fails to make a disclosure required by Rule 26(a), any other party

20  may move to compel disclosure and for appropriate sanctions.").  A mandatory disclosure

21  under Rule 26(a) include "initial disclosures," Fed. R. Civ. Pro. 26(a)(1) (requiring

22  disclosure of basic information to begin discovery), "disclosure of expert testimony," Fed.

23  R. Civ. Pro. 26(a)(2) (requiring disclosure of an expert's identity, topic of testimony, and

24  opinion), and "pretrial disclosures," Fed. R. Civ. Pro. 26(a)(3) (requiring disclosure of

25  expected trial witnesses).

26      Plaintiff is incorrect that a California Code of Civil Procedure § 2019.210

27

28  _____

challenge to those designations.  Dkt. 158-4 at 17-19.  Thus, only two challenges remain.

United States District Court
Northern District of California

1  disclosure—which is uniquely required under California state law—falls within any of the

2  categories of disclosures contemplated in the Federal Rules of Civil Procedure.  Thus,

3  Plantronics was not required to meet and confer before filing the motion to strike.

4  **2.     Plaintiff's Motion to Strike Is Procedurally Permissible**

5  Plaintiff argues that Plantronics "failed to articulate any rule or legal standard that

6  governs" its motion to strike.  Dkt. 149-4 at 20.  On that basis, plaintiff asserts that the

7  court should dismiss the instant motion.  Id.  The court disagrees.

8  It is well-established that a district court maintains "inherent authority to manage

9  their dockets and courtrooms with a view toward the efficient and expedient resolution of

10  cases." Dietz v. Bouldin, 136 S. Ct. 1885, 1892 (2016).  Such authority includes the

11  court's ability to enforce its prior orders. Yusov v. Yusuf, 892 F.2d 784, 787 (9th Cir.

12  1989) ("We cannot say that the trial court abused its discretion in this case. The Yusovs

13  and their attorney consistently and willfully failed to obey court orders and follow the rules

14  of procedure, resulting in great delay. . . . The district court has an obligation to manage

15  its docket[] and may use sanctions against a party when necessary.").

16  Here, there is no reasonable dispute that Plantronics' must have some procedural

17  vehicle to challenge plaintiff's supposed over-designation of the actionable trade secrets

18  in this case.  That conclusion is particularly true where, as argued here, such designation

19  purportedly occurs in violation of this court's prior orders.  While the court agrees that a

20  motion to strike is generally aimed at a pleading such as a complaint or answer, it does

21  not see any reason to abstain from using it to cure an overreach in an important

22  document meant to guide this litigation.  Indeed, plaintiff does not proffer any authority

23  barring such use.  Accordingly, the court will turn to the merits of the motion to strike.

24  **3.     The Designated Information at Issue Falls Within and Outside**

25  **the Scope of the Court's Prior Orders**

26  Plantronics' first challenge focuses on the scope of information designated as

27  purportedly misappropriated by He and Chung.  The court will analyze the subject

28  information as it pertains to each defendant in turn.

### a.   He

In its August 5 order, the court concluded that plaintiff adequately alleged that He misappropriated the following two sorts of trade secret information: (1) design documents for plaintiff's headset prototypes and (2) hardware diagrams for such prototypes.  Dkt. 126 at 16.  The court specifically held that only these two sorts of information may serve as the basis for plaintiffs' trade secrets claim against He.  Id.

In its opening brief, Plantronics argues that the court should strike various trade secrets purportedly misappropriated by He that are designated in the disclosure.  To support that argument, Plantronics reasons that the designated information does not qualify as a "design document" or "hardware diagram."  Dkt. 136-3 at 14-16.

Below, the court summarizes the nine He-related trade secrets that remain at issue.  Based on its review of the disclosure, the court concludes that seven of them fall within the scope of the its prior order while two of them do not.

### i.   Designated Information Within the Scope of the Prior Order

**Development Process** – This diagram outlines the stages in the Sunkist headset's prototyping process.  Discl. at 11.  It also generally lists the sorts of tasks associated with each development stage.  Id.

**How Cisco Allocated Responsibility** – This chart shows how plaintiff allocated responsibility for Sunkist's development between itself and its manufacturers.  Discl. at 12-13.  It also refers to the Sunkist's parts.  Id.

**Competitive Analysis** – These spreadsheet excerpts detail aspects of Sunkist's design, including its weight, microphone type, and battery performance.  Discl. at 20. They also compare Sunkist's capabilities against competing products.  Id.[4]

**Feature Comparison** – This chart lists multiple aspects of Sunkist's design,

---

[4] As plaintiff points out in its opposition, the "vendor proposal tab" referred to in the disclosure is a citation, ***not*** a designated trade secret.  Discl. at 19-20.  Accordingly, the court need not consider Plantronics' mistaken challenge regarding that citation.

United States District Court
Northern District of California

1   including its microphone and charging capabilities.  Discl. at 13.  It also compares the

2   headset against competing products.  <u>Id.</u>

3       **Specifications for the Sunkist Mobile Application** – This diagram shows

4   feature-related details for a mobile phone application apparently intended for use with the

5   Sunkist.  Discl. at 16-17.  It also reflects Sunkist's settings and audio capabilities.  <u>Id.</u>

6       **Plastic Materials** – This chart lists the numerous plastic parts used to

7   manufacture Sunkist.  Discl. at 21.  It details the finishes and the relative costs for each

8   part.  <u>Id.</u>

9       **Supplier Related Information** – These charts principally outline general

10  categories of Sunkist's costs.  Discl. at 20-21.  When doing so, they also list the various

11  sorts of Sunkist's component parts, including its battery, plastic parts, and printed circuit

12  board assembly ("PCBA").  <u>Id.</u>

13      Here, Plantronics might, as a factual matter, be correct that the above seven trade

14  secrets do not qualify as a "design document" or "hardware diagram."  Dkt. 136-3 at 15-

15  16.  However, "motions to strike should not be granted unless it is clear that the matter to

16  be stricken could have ***no possible bearing*** on the subject matter of the litigation."

17  <u>Colaprico</u>, 758 F. Supp. at 1339.

18      Based on the specificity of the technical information in the above-referenced

19  charts, diagrams, and spreadsheet excerpts, the court cannot, at this juncture in the

20  litigation, conclude that such information does not derive from or reflect the conclusions in

21  a design document.  Thus, for purposes of this motion, the court finds that the above

22  seven trade secrets may well fall within the scope of its prior order.  Given that, the court

23  denies the motion to strike those trade secrets.[5]

24      That said, to the extent plaintiff designates the Plastic Materials or Supplier

25  Related Information as trade secrets for purposes of their cost-related information, such

26

27  [5] In its opposition, plaintiff acknowledges that the Specific Cisco Product Information
    trade secret concerns Chung, ***not*** He.  Dkt. 149-4 at 24.  That acknowledgment moots
28  Plantronics' contention that plaintiff's designation of this trade secret with respect to He
    falls outside the court's prior order.

1  use is improper and may not form a basis for discovery.  The court will not permit plaintiff

2  to backdoor non-actionable information by including it with actionable information.

3         ii.         **Designated Information Outside the Scope of the**

4                    **Prior Order**

5         **Internal Revenue Targets for Project Sunkist** – This chart details Sunkist's

6  revenue targets for 2020 through 2022.  Discl. at 21-22.  Such targets include gross

7  sales, profit margins, and number of units sold.  Id.  It does not refer to Sunkist's design

8  or hardware.  In its opposition, plaintiff argues that this information is within the scope of

9  the court's prior order because it is included in a purported design document named

10  "Sunkist Business Commit."  Dkt. 149-4 at 21-22.

11         Plaintiff's argument rests on a gross simplification of this court's prior order.  When

12  the court held that "plaintiff adequately alleged that the design documents and hardware

13  diagrams for its headset prototypes" may serve as a basis for its trade secrets claims,

14  Dkt. 126 at 16, it did so in reference to plaintiff's independent economic value allegations

15  at paragraph 134 of its second amended complaint ("SAC").  Id. at 12-16.  That

16  paragraph defines "architectural design documents and hardware diagrams" as a subset

17  of "design specifications," which "allow production of the system at scale without requiring

18  the manufacturer to repeat Cisco's iterative design process."  SAC ¶ 134.  It further

19  explains "[t]hese specifications are the end result of Cisco's orchestrated and labor-

20  intensive design process" and reflect a product's "component selection and layout."  Id.

21         In light of the above, the court finds that the only reasonable construction of

22  paragraph 134's use of the term "design documents" is that it means technical,

23  engineering-like documents.  It does not mean, as plaintiff seems to argue, that any

24  document merely discussing a product's design qualifies as a "design document."

25         The court reviewed the ***selected*** portions of the Sunkist Business Commit

26  document filed by plaintiff in support of its opposition.  Dkt. 156-1.  Belied by its name,

27  that document appears to be a business presentation that discusses Sunkist's features,

28  not a specification that an engineer would use to determine Sunkist's "component

9

1   selection and layout" or a manufacturer would use to produce Sunkist at scale.  Indeed,

2   the third slide in that presentation justifies Sunkist's business case, stating:

3           *Why Sunkist* . . . Sunkist will be our premium platform . . .
        Platform will provide multiple variations of headsets . . . *These*
4       *will drive overall headset revenue* . . . This is *an opportunity*
        *to leap the competition* . . . Sunkist headsets will be built as
5       companions to our next gen desktop devices . . . Professional
        Headsets growing at 11%, Premium Headset like Jabra Evolve
6       75 @ 20+%.  Dkt. 156-1 at 3 (emphasis added).

7           The court has settled the pleadings.  Plaintiff may not now import non-technical

8   information concerning Sunkist by an expansive use of the term "design document."

9   Given the above, the court strikes the disclosure at pages 21:15 through 22:13.

10          **Project Sunkist Business Commit** – These diagrams refer to various sorts of

11  marketing information relating to Sunkist and competitor headsets.  Discl. at 11-12.  The

12  first diagram includes five pictures of headsets on a 2019 timeline with vague

13  descriptions of their intended users and three bullet-points speculating about Sunkist's

14  next generation.  Id. at 12.  The second diagram is a graph with X and Y axes comparing

15  Sunkist to competing headsets in terms of features and price.  Id.  Neither diagram refers

16  to Sunkist's particular design or hardware and, like the "Internal Revenue Targets" chart

17  analyzed above, both are excerpts from the Sunkist Business Commit document.

18          Plaintiff again argues that marketing information qualifies as a trade secret

19  because it is part of that so-called "design document."  Dkt. 149-4 at 21.  For the same

20  reasons provided above, the court rejects that argument.  Accordingly, the court strikes

21  the disclosure at pages 11:27 through 12:21.

22                          **b.      Chung**

23          In its August 5 order, the court concluded that plaintiff adequately alleged that

24  Chung misappropriated the following four sorts of trade secret information: (1) design

25  specifications and schematics of its pre-release video conferencing prototype; (2) design

26  specification and schematics of its sound bar products; (3) the EA document; and (4)

27  information concerning its emerging business opportunities in the collaboration space.

28  Dkt. 126 at 12.

United States District Court
Northern District of California

1   In its opening brief, Plantronics argues that various trade secrets designated in the

2   disclosure as information purportedly misappropriated by Chung do not fall within the

3   scope of the court's August 5 order.  Dkt. 136-3 at 16-19.

4   Below, the court summarizes the 14 Chung-related trade secrets that remain at

5   issue.  Based on its review of the disclosure, the court concludes that seven of them fall

6   within the scope of the its prior order while the remaining seven do not.

### i.      Designated Information Within the Scope of the Prior Order

**A Detailed Build Strategy** – This chart describes the hardware and PCBA specifications for the Polaris video conferencing prototype at its various stages.  Discl. at 35-36.

**Spreadsheet Including Pricing Commitments** – This spreadsheet excerpt describes pricing commitments by a Cisco supplier for its manufacturing of the Vecchio video conferencing device.  Discl. at 66-67.  As part of that description, the spreadsheet lists various hardware requirements for Vecchio.  Id. at 67.

**Project Polaris Survey Results** – These charts outline the features that users find most valuable in Polaris and list particular companies and industries that would serve as Polaris's expected "key" customers.  Discl. at 36-37.

**Existing Bookings Data** – This pie chart shows the percentage of plaintiff's desktop products purchasers by industry segment.  Discl. at 37-38.

**Sales Forecast for Project Polaris and DX80** – This chart forecasts the number of Polaris and DX80 devices that plaintiff will sell between 2019 and 2021.  Discl. at 38.

**Historic Sales Data** – This slide outlines quarterly sales for plaintiff's desktop devices between 2011 and 2018.  Discl. at 39.

**Project Sunkist's Competitive Differentiators** – This table compares Sunkist's features to competing products.  Discl. at 13-14.  It is an excerpt from the EA document. Dkt.149-4 at 25.

Again, Plantronics might, as a factual matter, be correct that the Detailed Build

United States District Court
Northern District of California

1  Strategy and Spreadsheet Including Pricing Commitment trade secrets do not qualify as

2  a "design specification" or "design schematic."  Dkt. 136-3 at 19.  However, given the

3  specificity of the technical information in their respective chart and spreadsheet, the court

4  cannot conclude that this information does not derive from or otherwise reflect the

5  conclusions in either such document.

6      Separately, with respect to the Project Polaris Survey Results, Existing Bookings

7  Data, Sales Forecasts for Project Polaris and DX80, and Historic Sales Data trade

8  secrets, the court cannot conclude that the information in their charts and slides does not

9  qualify as concerning plaintiff's emerging business opportunities in the collaboration

10  space.  Again, on the instant motion, a court must "view the pleadings in a light most

11  favorable to the pleading party."  Uniloc., 2018 WL 1640267, at *1.

12      Lastly, as decided in the court's August 5 order, the EA document itself forms a

13  basis for the trade secrets claims against Chung.  Thus, any information in it—and **only**

14  such information—comes within the scope of the court's prior order.  As previously held

15  by the court, plaintiff may not, beyond the EA document, base its trade secrets claims

16  against Chung on competitive differentiators.  Dkt. 126 at 10 ("plaintiff failed to

17  adequately allege the independent economic value of any category of information

18  concerning the remaining subject matters—namely, its . . . component specification and

19  competitive differentiators for its other unspecified products **(outside of the EA**

20  **document)**."  Dkt. 126 at 10 (emphasis added).

21      In short, the court finds that the above seven trade secrets arguably fall within the

22  scope of its prior order.  Thus, the court denies the motion to strike those trade secrets.

23          **ii.      Designated Information Outside the Scope of the**

24                    **Prior Order**

25      In its prior order, the court concluded that "plaintiff failed to adequately allege the

26  independent economic value of any category of information concerning the remaining

27  subject matters," which, among others, include plaintiff's "communications product

28  portfolio [and] strategy and costs for the pre-release video conferencing display product."

Dkt. 126 at 10.  Given that conclusion, the court expressly held that information pertaining to the remaining subject matters may not serve as a basis for the trade secrets claims.

Despite the clarity of that holding, plaintiff designates the following as purported trade secrets in its disclosure:

- Cisco Video Products Portfolio.  Discl. at 34.
- Project Polaris Internal Strategy.  Id. at 33-34.
- Project Polaris Sales Strategy.  Id. at 34-35.
- Project Polaris Pricing Strategy.  Id. at 37.
- Project Vecchio Pricing Strategy.  Id. at 66.
- Early Commit to Project Vecchio.  Id. at 62-63.
- Cisco's End-to-End Cost Model.  Id. at 39.

In its opposition, plaintiff defends the actionability of this designated information on two grounds.  First, it reflects emerging opportunities in the collaboration space.  Dkt. 149-4 at 25-28.  Second, it is included in documents that also describe "design specifications" for Polaris and Vecchio.  Id.   The court rejects both justifications.

Plaintiff's first argument is disingenuous.  In its prior order, the court methodically analyzed which sorts of sufficiently described trade secret information plaintiff adequately alleged as maintaining independent economic value.  Dkt. 126 at 5-12.  The court expressly held that information concerning the above-bulleted subject matters were not among them.  Plaintiff may not sidestep the court's prior holding by an ex post recharacterization of such matters under the vaguer emerging business opportunities subject matter.  Stated differently, plaintiff may not rely on a permissible but general subject matter to advance a subset of information under a more specific but previously excluded subject matter.

Plaintiff's second argument misses the point.  The fact that a document contains both (1) details reflecting plaintiff's video-conferencing devices' design specifications and (2) other information concerning such devices does not mean that the latter portions of such a document qualify as an actionable trade secret.  When the court concluded that

13

United States District Court
Northern District of California

1   "plaintiff adequately alleged that the design specifications and schematics of its pre-

2   release video conferencing prototype," Dkt. 126 at 12, it, again, did so in reference to the

3   SAC's use of the term "design specifications and schematics," id. at 7-8.

4       In its SAC, plaintiff itself describes those categories of information as "technical,"

5   SAC ¶ 214, and reflecting a device's "component selection and layout," id. ¶ 99.   By

6   plaintiff's own argument, however, the subject information concerns "emerging business

7   opportunities."  Dkt. 149-4 at 25-28.  It is not technical.  Thus, the second argument does

8   not make the above-bulleted information actionable.

9       That then leaves only plaintiff's catch-all argument that the court should not strike

10  information that does not "cleanly fit into the categories identified in [the court's] previous

11  order" because such information provides "relevant factual context of Cisco's

12  misappropriated trade secrets."  Dkt. 149-4 at 28-29.  To support this position, plaintiff

13  cites a parenthetical to Magistrate Judge Beeler's decision in Crawford v. Kaiser

14  Foundation Health Plan, 395 F.Supp.3d 1279 (N.D. Cal. 2019), which, in turn, relies on

15  Judge Wilken's decision in Cayo v. Valor Fighting & Management LLC, 2009 WL

16  1626586 (N.D. Cal. June 8, 2009).  Id.

17      These decisions are inapplicable.  Both concern motions to strike a complaint.

18  Crawford, 395 F.Supp.3d at 1293-94; Cayo, 2009 WL 1626586, at *5.  However, as the

19  court will further explain below, the purpose of a California Code of Civil Procedure §

20  2019.210 disclosure is "to require the trade secret claimant to identify the alleged trade

21  secret with adequate detail to allow the defendant to investigate how it might differ from

22  matters already known and to allow the court to craft relevant discovery."  Brescia v.

23  Angelin, 172 Cal. App. 4th 133, 147 (2009).  The court finds that including information

24  that falls outside the scope of the court's prior order does not promote these interests.  To

25  the contrary, such inclusion generates unnecessary confusion about the actionable

26  information at issue.

27      In short, given that the above seven trade secrets fall outside the scope of the

28  court's prior order, the court grants the motion to strike the disclosure at pages 34:13

14

1   through 34:27, 33:26 through 34:12, 34:27 through 35:13, 37:14 through 37:27, 39:15

2   through 40:1, 62:15 through 63:14, and 66:12 through 66:26.

3           **4.**       **Plaintiff's Trade Secret Information Satisfies CCP § 2019.210's**

4                  **Reasonable Particularity Requirement**

5         A plaintiff alleging trade secrets misappropriation under California law must identify

6   the trade secrets at issue with reasonable particularity prior to commencing discovery.

7   Cal. Civ. Pro. § 2019.210.  The term "reasonable particularity" requires that a plaintiff

8   "make some showing that is reasonable," which, in effect, means "fair, proper, just, and

9   rational, under all of the circumstances to identify its alleged trade secret in a manner that

10  will allow the trial court to control the scope of subsequent discovery, protect all parties'

11  proprietary information, and allow them a fair opportunity to prepare and present their

12  best case or defense at a trial on the merits." Advanced Modular Sputtering, Inc. v.

13  Superior Court, 132 Cal. App. 4th 826, 835 (2005).

14        The reasonable particularity requirement does not demand that a plaintiff "define

15  every minute detail of its claimed trade secret at the outset of litigation" or that a trial court

16  "conduct a miniature trial on the merits of a misappropriation claim before discovery

17  commences." Id. at 835-36.  Instead, to satisfy it, a plaintiff must "identify the alleged

18  trade secret with adequate detail to allow the defendant to investigate how it might differ

19  from matters already known and to allow the court to craft relevant discovery." Brescia,

20  172 Cal. App. 4th at 147.  Lastly, California state courts have instructed that "the

21  designation should be liberally construed, and reasonable doubts about its sufficiency

22  resolved in favor of allowing discovery to go forward." Id. at 149.

23        Plantronics challenges the particularity of the disclosure on two grounds.  First, it

24  argues that the disclosure fails to identify which defendant allegedly misappropriated

25  which trade secret.  Dkt. 136-3 at 19-21.  Second, it argues that the disclosure fails to

26  describe its trade secrets with the requisite specificity.  Id. at 21-29.

27  / / /

28  / / /

United States District Court
Northern District of California

### a.     Failure to Identify Which Defendant Misappropriated the Subject Information

Based on the parties' briefing, it appears that they have resolved two of the specific concerns underlying defendant's first challenge.  First, with respect to the Sunkist Trade Secrets (Discl. at 3-22), plaintiff has clarified that "at least Dr. Chung misappropriated Project Sunkist trade secrets contained in the EA Document . . . and that Mr. He misappropriated the trade secrets contained."  Dkt. 149-4 at 13-14.  Consistent with this court's holding in Section I.B.2.b.i. above that any Sunkist information pertaining to Chung be limited to that contained in the EA document, the court orders plaintiff to revise its disclosure to clarify and expressly limit Chung's alleged misappropriation of the Sunkist information to that in the EA document.

Second, with respect to the Business Information Trade Secrets (Discl. at 69-76), plaintiff agreed to withdraw "the He Business Information Trade Secrets" designated in the disclosure at pages 70:9 through 70:17.  Dkt. 149-4 at 21 n.6.  That designated trade secret appears to be the only information in this section purportedly misappropriated by He.  For clarity, plaintiff must remove any reference to He in the revised disclosure's Business Information Trade Secrets section.

The only remaining question with respect to this challenge is whether plaintiff must identify which particular business information was misappropriated by Williams and which was misappropriated by Puorro.  In its May 26 order, the court found that plaintiff alleged a series of detailed communications between these defendants suggesting that the actionable information purportedly misappropriated by Williams was coextensively misappropriated by Puorro.  Dkt. 97 at 40 ("The court concludes that the above allegations show that Puorro received the information relating to the various subject matter that Williams purportedly misappropriated.").  The court reasoned that Puorro's and Williams' "attempts at secrecy support a reasonable inference that Puorro knew or should have known that the allegedly shared information was being passed along by Williams in violation of his [Proprietary Information and Inventions Agreement]."  Id.

16

1   Given that reasoning, the court concludes that, at this juncture in the litigation, plaintiff

2   need not specify which particular purported trade secret described in the Business

3   Information Trade Secrets section was, in fact, misappropriated by which of these

4   defendants to permit an adequate investigation and defense of the claims against them.

5           **b.      Failure to Describe the Designated Information with the**

6                      **Requisite Specificity**

7           Plantronics argues that the plaintiff fails to adequately describe its trade secrets as

8   they pertain to the following sorts of information: (1) Project X and Project Liberator; (2)

9   plaintiff's limited restructurings; (3) other miscellaneous business information; and (4)

10  Project Rialto.  Dkt. 136-3 at 21-29.  The court considers each category in turn.

11                      **i.      Project X and Project Liberator**

12          Plantronics principally argues that the disclosure's description of Project X and

13  Project Liberator detail nothing more than "general business concepts" concerning

14  plaintiff's marketing plans and sales strategies.  Dkt. 136-3 at 21-24.

15          The court disagrees with that characterization.  Project X is a multi-prong business

16  expansion plan that Williams developed when working for plaintiff.  Discl. at 74.  Project

17  Liberator is a multi-step sales strategy aimed at capturing the market share held by

18  plaintiff's competitors for certain sorts of products.  Id. at 75.  In its disclosure, plaintiff

19  cites various specific documents produced to defendants that elaborate on these

20  projects.  Id. at 74-75.  This information provides Williams, Puorro, and Plantronics

21  sufficient detail about these projects to investigate the claims against them as they

22  pertain to that information.

23          Plantronics' remaining argument that this information is not, in fact, a trade secret,

24  Dkt. 158-4 at 9-10, does not alter this conclusion.  On the merits, Plantronics might be

25  correct.  However, to satisfy California Code of Civil Procedure § 2019.210's reasonable

26  particularity requirement, plaintiff need not prove that fact.  Advanced Modular Sputtering,

27  Inc., 132 Cal. App. 4th at 835-36 ("'Nor does [§ 2019.210] require a discovery referee or

28  trial court to conduct a miniature trial on the merits of a misappropriation claim before

United States District Court
Northern District of California

discovery may commence.").  Thus, the court denies the request to strike the Project X and Project Liberator information designated in the disclosure.

### ii.        Limited Restructurings

Plantronics argues that information pertaining to plaintiff's then-impending employee layoffs may not qualify as a trade secret.  Dkt. 136-3 at 24-25.  Again, while Plantronics might be correct on this point, the instant motion is not the proper procedural vehicle to challenge the actionability of this information.  Given that Plantronics failed to identify any material deficiency in the disclosure's description of this purported trade secret information, the court denies the request to strike this information.

### iii.       Other Sorts of Business Information

Plantronics argues that various other sorts of information should be stricken because they are publicly available.  Dkt. 136-3 at 25-27.  Such information pertains to plaintiff's (1) partner margins and (2) growth by geographic segment, as well as (3) a competitor's (Avaya) bankruptcy.  Id.[6]

Again, this argument mistakenly goes to the merits of plaintiff's claim.  In terms of satisfying California Code of Civil Procedure § 2019.210, the court finds that the disclosure provides Williams, Puorro, and Plantronics enough detail to investigate and defend the claims against them as they pertain to the above information.  Importantly, the disclosure details the typical range in plaintiff's partner margins.  Discl. at 75.  It also provides a percentage growth rate for various segments and sectors in the world economy.  Id. at 70.  Lastly, the disclosure's references to Avaya's 2017 bankruptcy relate to Project Liberator.  Id. at 75.  They do not themselves serve as an independent basis for plaintiff's claims.  Thus, the court denies the request to strike this information.

### iv.       Project Rialto

Project Rialto refers to the second-generation of a product that plaintiff had, at the time of its purported misappropriation by Williams and Puorro, developed but not yet

---

[6] Plaintiff withdrew its designation of the 2019 revenue information previously at issue. Dkt. 149-4 at 17 n.4 (withdrawing designation at pages 70:9 through 70:17).

United States District Court
Northern District of California

United States District Court
Northern District of California

1   released.  Discl. at 68-69.  Plantronics challenges the disclosure's designation of

2   information pertaining to it on two grounds.  First, plaintiff's inclusion of Rialto's technical

3   information is outside the scope of this court's May 26, 2020 order.  Dkt. 136-3 at 27-28.

4   Second, the fact that plaintiff had been developing such product but withholding its

5   release does not qualify as a trade secret.  Id.

6         Plantronics' first argument appears to rest on a false premise.  Contrary to

7   Plantronics' suggestions, plaintiff does not designate Rialto's technical information as a

8   trade secret misappropriated by Williams or Puorro.  Instead, plaintiff designates

9   Williams' supposed disclosure of Rialto's existence to Puorro as the purported trade

10   secret.   While the court has its doubts about whether such fact itself qualifies as a trade

11   secret, the instant motion is not the proper procedural vehicle to make that merits-based

12   determination.  Thus, the court denies the request to strike this information.

13         In light of the above, the court orders plaintiff to revise its disclosure consistent

14   with this order, including by removing all stricken or withdrawn designations and making

15   all clarifications noted above.  Then, plaintiff must re-serve this third-amended disclosure

16   on defendants.  Given the substantial resources that the court and the parties have

17   invested in analyzing the disclosure, plaintiff may not further amend it without leave of

18   court or consent of defendants.

19   **II.**    **Motions to Seal**

20         "There is a general principle in favor of public access to federal court records.

21   Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978). "The proponent of sealing

22   bears the burden with respect to sealing.  A failure to meet that burden means that the

23   default posture of public access prevails."  Kamakana v. City & City of Honolulu, 447 F.3d

24   1172, 1182 (9th Cir. 2006).

25         The Ninth Circuit has recognized that two different standards may apply when a

26   request to seal a document is made in connection with a motion—namely the "compelling

27   reasons" standard or the "good cause" standard. Ctr. For Auto Safety v. Chrysler Grp.,

28   LLC, 809 F.3d 1092, 1096-97 (9th Cir. 2016).  The compelling reasons standard applies

to any sealing request made in connection with a motion that is "more than tangentially related to the merits of a case." Id. at 1101.

Under that standard, a court may seal a record only if it finds a "compelling reason" to support such treatment and articulates "the factual basis for its ruling, without relying on hypothesis or conjecture." Id. at 1096-97. If it has made such finding, the court "must then conscientiously balance the competing interests of the public and the party who seeks to keep certain judicial records secret." Id. at 1097. Factors relevant to that balancing test include the public interest "in understanding the judicial process," Pintos v. Pac. Creditors Ass'n, 605 F.3d 665, 679 n.6 (9th Cir. 2010), as well as the volume of material sought to be sealed, Algarin v. Maybelline, LLC, 2014 WL 690410, at *3 (S.D. Cal. Feb. 21, 2014).

The Ninth Circuit has expressly acknowledged that "[w]hat constitutes a 'compelling reason' is best left to the sound discretion of the trial court." Ctr. for Auto Safety, 809 F.3d at 1097. "Examples include when a court record might be used to gratify private spite or promote public scandal, to circulate 'libelous' statements, or 'as sources of business information that might harm a litigant's competitive standing.'" Id.

Plaintiff seeks to seal portions of the following three sets of documents: (1) Plantronics' opening brief in support of its motion to strike the disclosure and that brief's associated exhibits, Dkt. 141 (declaration filed in support of Plantronics' administrative motion to seal (Dkt. 136)); (2) plaintiff's opposition to the motion to strike and its associated exhibits, Dkt. 149; Dkt. 156 (refiling Docket 149's exhibits with confidentiality designations); and (3) Plantronics' reply in support of the motion to strike, Dkt. 160 (declaration filed in support of Plantronics' administrative motion to seal (Dkt. 158)).

Plaintiff asserts that the good cause standard governs these requests. Plaintiff fails to cite any authority in support of that assertion. Plainly, plaintiff's purported trade secrets are at the heart of this action. They are also the focus of Plantronics' motion to strike. Thus, this motion is "more than tangentially related to the merits of the case." Ctr. For Auto Safety, 809 F.3d at 1096-97. Given that, the court will apply the compelling

20

1   reasons standard to plaintiff's requests.

**A.    The Opening Brief Materials**

Plaintiff asks that the court seal portions of three filings in connection with the

motion to strike: (1) the disclosure filed by Plantronics with its opening brief; (2) the

opening brief itself; and (3) two other exhibits filed in support of Plantronics' opening brief.

Dkt. 141.

**1.    Disclosure Portions**

Plaintiff seeks to seal approximately 111 portions of its disclosures.  Id. at 4-12.  It

argues that the court should seal these portions for three reasons.  First, they contain

plaintiff's "highly confidential" information and "explicitly identify or reflect Cisco's trade

secrets."  Dkt. 141 at 12-13.  Second, California Code of Civil Procedure § 2019.210

permits courts to make any order appropriate under California Civil Code § 3426.5, which

requires courts to "preserve the secrecy of an alleged trade secret by reasonable

means," including by "sealing the records of the action."  Id. at 13.  Third, if unsealed, the

information would harm plaintiff's competitive standing.  Id. at 13-14.

The court finds compelling reasons to seal some but not all of the subject portions

in the disclosure.  Plaintiff accurately asserts that California Code of Civil Procedure §

2019.210 permits the court to make "any order that may be appropriate under Section

3426.5 of the Civil Code" in connection with a disclosure made under its provision.

California Civil Code § 3426.5, in turn, provides that:

> In an action under this title, a court ***shall*** preserve the secrecy
> of an alleged trade secret by reasonable means, which may
> include granting protective orders in connection with discovery
> proceedings, holding in-camera hearings, ***sealing the records***
> ***of the action***, and ordering any person involved in the litigation
> not to disclose an alleged trade secret without prior court
> approval.  Cal. Civ. Code § 3426.5 (emphasis added).

All 111 portions of the information at issue in this request are contained in

plaintiff's disclosure.  Subject to the court's order on the motion to strike, the disclosure

purports to describe the trade secrets at issue in this action. Thus, except for those

portions of the disclosure ordered stricken, the court finds a compelling reason to seal all

United States District Court
Northern District of California

1    requested portions of the disclosure on the basis of California Civil Code § 3426.5's

2    mandatory instruction that it preserve the secrecy of an alleged trade secret.

3        However, because the stricken information does not come within the scope of the

4    alleged trade secrets at issue in this action, California Civil Code § 3426.5 does not

5    provide such blanket protection for that information.  That then leaves only plaintiff's first

6    and third arguments.

7        The first argument is unavailing.  As this court has recently held, the compelling

8    reasons standard demands more than a general assertion by a company or its lawyer

9    that it treats information as "confidential" to justify sealing.  IntegrityMessageBoards.com

10   v. Facebook, Inc., 2020 WL 6544411, at *9 (N.D. Cal. Nov. 6, 2020) (rejecting

11   Facebook's request to seal "commercially sensitive R&D details" under that standard).

12       The third argument concerning the risk of competitive harm to plaintiff does not

13   fare any better.  To support it, plaintiff proffers the declaration of two of its employees,

14   Faisal Haq ("Haq"), Dkt. 141-1, and Brian Stout ("Stout"), Dkt. 141-2,[7] as well as outside

15   counsel, Carson Olsheki ("Olsheki").  Haq is a manager of Hardware Engineering in

16   plaintiff's Unified Communications Technology Group ("UCTG").  Dkt. 141-1 ¶ 1.  His

17   responsibilities include overseeing the development of plaintiff's collaboration software.

18   Id.  In his declaration, Haq addresses the information in the disclosure concerning various

19   projects at issue, including Sunkist, Polaris, and Vecchio.  Dkt. 141-1 ¶¶ 4-10.

20       When discussing competitive harm that would result if the information pertaining to

21   these projects were unsealed, Haq focuses his attention on the effect of disclosing these

22   projects' *technical* details.  Dkt. 141-1 ¶ 5 (competitive harm that plaintiff would suffer if

23   "[d]ocuments reflecting Sunkist's design" were revealed); id. ¶ 6 (competitive harm that

24   plaintiff would suffer if documents "reflecting the Polaris hardware design" or its "design

25   plans or proprietary features" were disclosed); id. ¶ 8 (generally stating that "[i]f a

26

27   _____

28   [7] Plaintiff filed these declarations as scanned documents, preventing the court from easily transferring their information into this order.  Going forward, plaintiff should provide workable documents as part of their filings (scanned signature pages are acceptable).

United States District Court
Northern District of California

competitor has access to information regarding unreleased Cisco products before it becomes publicly available [apparently in reference to Vecchio], they can use Cisco's research and development efforts to build a competing product at a lower cost.").

However, the information stricken from the disclosure concerns the ***non***-technical, i.e., business and sales, information pertaining to these projects.  In particular, such information includes:

- Sunkist's revenue goals for 2020 through 2022.  Discl. at 21:15-22:13 (Sunkist's Internal Revenue Targets).

- Sunkist's marketing information with a 2019 timeline with descriptions of the product's intended users and a X-Y graph comparing its features and price to competing headsets.  Id. at 11:27-12:21 (Sunkist's Business Commit).

- Polaris's expected placement in the market for video products for 2018 through 2021.  Id. at 34:13-27 (Cisco Video Products Portfolio).

- Polaris's revenue goals and a potential major customer for the product.  Id. at 33:26-34:12 (Project Polaris Internal Strategy).

- Polaris's sales priorities organized according to use case and sales tactics.  Id. at 34:27-35:13 (Project Polaris Sales Strategy).

- Polaris's projected market price, costs compared to other plaintiff products, and price demand elasticity. Id. at 37:14-27 (Project Polaris Pricing Strategy).

- Polaris's various categories of costs, from production to transportation to product warranty.  Id. at 39:15-40:1 (Cisco's End-to-End Cost Model).

- Vecchio's projected price, costs, and profit margins.  Id. at 66:12-26 (Project Vecchio Pricing Strategy).

- Vecchio's business justifications and its potential financial benefits.  Id. at 62:15-63:14 (Early Commit to Project Vecchio).

The only reference by Haq that even touches on the effect of disclosing the above sort of business-like information is cabined in a penultimate, catch-all paragraph to his declaration.  In it, he states that the information requested for sealing:

United States District Court
Northern District of California

1

2

3

> Reflect highly confidential financial and customer data, which, if disclosed publicly, would cause competitive harm at least by providing information about markets and customers that Cisco is pursuing to competitors, thereby depriving Cisco of a first-mover advantage.  Dkt. 141-1 ¶ 12

4    For at least two reasons, this statement is insufficient to justify finding that plaintiff

5  would suffer competitive harm in the event the various sorts of business, sales, or

6  strategy information pertaining to these projects were unsealed.  First, Haq fails to tie this

7  statement to any particular piece of the non-technical aspects of the Sunkist, Polaris, or

8  Vecchio information stricken from the disclosure.  Second, even if he had, this single

9  statement fails to explain either how the subject information provides plaintiff some "first-

10  mover advantage" in the first place or why a competitor's acquisition of the subject

11  information would create a non-speculative risk that it would lose such purported

12  advantage.

13    Stout's declaration does not provide any additional support for a finding of

14  competitive harm.  Stout is a director for plaintiff's America Collaboration Sales division.

15  Dkt. 141-2 ¶ 1.  He opines on the competitive disadvantage that plaintiff would suffer if its

16  business information were disclosed.  Id. ¶¶ 5-6, 8.  However, Stout expressly limits his

17  opinion to the "Business Information Trade Secrets" detailed at the disclosure's Section

18  VIII (Discl. at 69-76).  Id. ¶ 3 ("I have reviewed Section VIII of the Trade Secret

19  Identification . . .  as well as Carson Olsheski's declaration relating to that portion (which I

20  understand will be submitted concurrently).  *I have no opinions on the other*

21  *sections*.") (emphasis added).  The business information concerning Sunkist, Polaris,

22  and Vecchio, however, are not detailed in that seven-page section.

23    That leaves only Olsheki's declaration.  In it, Olsheki adds that disclosing plaintiff's

24  "highly confidential internal sales and partner strategies" would "harm Cisco's competitive

25  standing by providing competitors the ability to use those strategies against Cisco."  Dkt.

26  141 at 14.

27    As an initial matter, the court is hesitant to rely on the declaration of outside

28  counsel as a credible factual basis for attesting to the competitive harm that a company

United States District Court
Northern District of California

24

would suffer if something about its business were revealed.  Regardless, even if the court were to accept Olsheki's statement, it suffers from the same shortcomings identified in the Haq declaration—namely, (1) Olsheki fails to tie it to any particular piece of the information stricken from the disclosure; and (2) this single sentence statement fails to explain how a competitor's mere understanding of the subject information would create a non-speculative risk that such competitors could then use it against plaintiff.  Given that plaintiff failed to proffer any evidence that it would suffer competitive harm in the event the stricken non-technical information concerning Sunkist, Polaris, and Vecchio were disclosed, plaintiff failed to show a compelling reason to seal it.  On this basis alone, plaintiff's request to seal the stricken portions of its disclosure fails.

Still, even if plaintiff had shown a compelling reason to seal such stricken information, its request fails for other reasons.  Critically, plaintiff does not show how or why the competing public interest in accessing the stricken information to understand the (increasingly nuanced) contours of this litigation is outweighed by its private interest in keeping such material secret.  While plaintiff correctly asserts that "preventing the release of trade secrets is a 'compelling reason sufficient to outweigh the public's interest in disclosure and justify sealing court records,'" Dkt. 141 at 14 (citing Kamakana v. City & Cty. Of Honolulu, 447 F.3d 1172, 1179 (9th Cir. 2006)), that assertion assumes that the stricken disclosure portions come within the scope of the purported trade secret information previously determined to be at issue in this action.  As explained above, it does not.  Moreover, plaintiff altogether fails to address the weight of the public's interest in understanding what is (and is not) at issue in this action.

For these various reasons, the court denies plaintiff's request to seal any portion of the disclosure within the range of the nine stricken parts of the disclosure listed immediately above.  Otherwise, the court grants plaintiff's request to seal any and all of the remaining 111 portions of the disclosure sought for sealing.[8]

---

[8] The court understands that pages 42:22 through 42:24 of the disclosure also includes some Polaris design-related details.  The court will consider the three blocks of texts

United States District Court
Northern District of California

## 2.    Opening Brief Portions

Plaintiff seeks to seal approximately 45 lines in Plantronics opening brief in support of its motion to strike.  Dkt. 141 at 2-4.  To support sealing this information, plaintiff relies on the same three arguments advanced in support of sealing the disclosure portions.  Id. at 12-14.

For various reasons, the court will seal some but not all of the requested portions. First, to the extent Plantronics' opening brief reflects information in the disclosure that the court determined is subject to sealing, such opening brief portions must also be sealed. Those parallel portions include the following ranges of Docket 136-3:

- Page 15:13 through 15:14 (concerning Sunkist's development process and timeline).

- Page 16:6 through 16:7 (concerning Sunkist's competitive differentiators).

- Page 19:3 through 19:4 (concerning Polaris's survey results).

- Page 19:6-7 (concerning booking data by segment and industry).

- Page 19:13 (identifying supplier for Vecchio).

- Page 25:18 and 25:19 (concerning partner margins).

- Page 27:9 through 27:11 (concerning Avaya bankruptcy).

- Page 27:20 through 27:22 (concerning Rialto).

- Pages 27:26 through 28:1 (concerning Rialto).

- Page 136-3 at 28:11 (concerning Rialto).

Second, given that Project X and Project Liberator fall within the non-stricken portion of plaintiff's disclosure, Discl. at 74-75, the court finds a compelling reason to seal the opening brief's references to those projects.  Such portions include the following ranges of Docket 136-3:

- Page 22:2 through 22:4.

- Page 22:6 through 22:8.

underneath the pictures at the above referenced lines as protectable under California Civil Code § 3426.5 and, thus, sealable.

26

- Page at 22:20 through 22:23.
- Page 22:25 through 22:26.
- Page 23:7 through 23:8.
- Page 23:14 through 23:15.
- Page 136-3 at 27:4 through 27:5.

Given the specificity of the above page and line designation proffered by plaintiff, the court also finds that its request to seal the above-bulleted information is narrowly tailored. Accordingly, the court grants plaintiff's request to seal the two above-bulleted portions of Plantronics' opening brief.

That said, to the extent the opening brief reflects information in the disclosure that the court determined is not subject to sealing, such opening brief portions also may not be sealed. Those parallel portions include the following ranges of Docket 136-3:

- Page 15:9 through 15:10 (concerning Sunkist's internal revenue targets).
- Page 18:9 through 18:10 (concerning Polaris's internal strategy).
- Page 18:11 through 18:12 (concerning Polaris's sales strategy).
- Page 18:14 through 18:15 (concerning Polaris's pricing strategy).

As discussed above, the above-listed information falls outside of the scope of the trade secrets at issue in this action. None of the declarations proffered in support of sealing this material establish that plaintiff would suffer competitive harm if this information were disclosed. Accordingly, the court denies plaintiff's request to seal these portions of Plantronics' opening brief.

### 3.     The Remaining Documents

Plaintiff requests that the court seal two other documents filed by Plantronics in support of its motion to strike. The first document is an email from Williams to Plantronics' former chief executive officer, Joe Burton ("Burton"), concerning Project X. Dkt. 136-5 at 85-86. Plaintiff requests that the court seal three portions of that email, namely "What is Project X," "Project X Makeup," and "Measuring Project X." Dkt. 141 ¶ 6. The second document is an internal Cisco PowerPoint presentation concerning

1   Project Liberator.  Dkt. 136-5 at 88-106.  Plaintiff requests that the court seal this entire

2   document.  Dkt. 141 ¶ 7.

3         The court finds a compelling reason to seal the above referenced materials.  As

4   explained above, both Project X and Project Liberator fall within the scope of the trade

5   secrets at issue in this action.  Plaintiff's sealing requests are also narrowly tailored.

6   Accordingly, the courts seals Docket 136-5 at page 85 (starting after "What is Project

7   X?") until the word "Creation" at page 86 (but not including the paragraphs that follow).

8   The court also seals Docket 136-5 at pages 88 through 106 in its entirety.

9        **B.**     **The Opposition Materials**

10         Plaintiff asks that the court seal the following: (1) portions of plaintiff's opposition to

11   the motion to strike; and (2) ten documents purportedly reflecting plaintiff's "highly

12   confidential" information.  Dkt. 149.

13        **1.**     **Opposition Brief Portions**

14         Plaintiff seeks to seal approximately 19 lines in its opposition to the motion to

15   strike.  Id. at 2-4.  To support sealing this information, plaintiff relies on the same three

16   arguments advanced in support of sealing the disclosure portions.  Dkt. 149-1 at 4-5.

17         With one exception, the court will seal all requested portions.  First, given that the

18   opposition reflects information in the disclosure that the court determined is subject to

19   sealing, such opposition portions must also be sealed.  Those parallel opposition portions

20   include the following ranges of Docket 149-4:

21        •    Page 14:21 through 14:25 (Project X).

22        •    Page 15:3 through 15:6 (Project Liberator).

23        •    Page 18:27 (Project Rialto).

24        •    Page 25:12 through 25:15 (Project Vecchio hardware).

25        •    Page 27:2 through 27:4 (Project Vecchio design).

26         That said, because the opposition also reflects information in the disclosure that

27   the court determined is not subject to sealing, namely at Docket 149-4 at 21:19 through

28   21:20, such portion may not be sealed.

*United States District Court*
*Northern District of California*

Given the specificity of the above-bulleted designations, the court also finds that these requests are narrowly tailored. Accordingly, the court grants in part and denies in part the request to seal the subject opposition portions.

### 2.    The Remaining Documents

Plaintiff seeks to seal ten exhibits filed in support of its opposition to Plantronics' motion to strike. Dkt. 149 at 2-4. Plaintiff excerpts and refers to portions of these documents in its disclosure. See generally Discl.[9]

To support sealing these exhibits, plaintiff relies on the same three arguments advanced in support of sealing the disclosure portions. Dkt. 149-1 at 4-5. Again, when making these arguments, plaintiff mistakenly relies on the lower good-cause standard to seal these materials. Id. Plaintiff also fails to proffer any non-attorney declaration to justify sealing the subject documents  Fortunate for plaintiff, the court's order on the motion to strike refers to only one exhibit (the Sunkist Business Commit presentation) and the court need not consider the remaining exhibits to decide the motion to strike. Accordingly, the court terminates plaintiff's request to seal Docket 156-2 through Docket 156-10 as moot. The materials filed as part of this request shall remain restricted.

That leaves only the Sunkist Business Commit presentation filed at Docket 156-1. As explained at Section I.B.2.a.ii., plaintiff included excerpts of this presentation in the non-technical stricken portions of its disclosure. As indicated above, plaintiff failed to show a compelling reason to seal such stricken portions. Given that, the court denies the request to the extent it seeks to seal diagrams stricken from the disclosure. Those slides are at Docket 156-1 at 4 (Headset Roadmap) and 8 (Internal Revenue Targets).

However, because other slides at Docket 156-1 include Sunkist design-related information that the court determined is within the scope of its prior order (e.g., Dkt. 156-1 at 10), the court finds a compelling reason to seal those slides, as well as other slides

---

[9] Plaintiff initially filed these exhibits as attachments at Docket 149 on October 1, 2020. On October 13, 2020, plaintiff re-filed these exhibits with a confidentiality footer. Dkt. 156 at 2. Given such replacement, the court terminates the request to seal these ten exhibits (Docket 149-5 through Docket 149-14).

that appear to contain similar information.  Thus, the court will seal Docket 156-1 at 5, 7, and 9-11.  Given the absence of any such technical information on the remaining slides, the court denies the request with respect to Docket 156-1 at 2,3, and 6.

One final point related to this sealing request.  On October 12, 2020, Plantronics filed an opposition to plaintiff's motion to seal the opposition to the motion to strike and that brief's associated exhibits.  Dkt. 154.  As part of its October 12 filing, and in an apparent attempt to comply with the terms of the parties' stipulated protective order, Plantronics filed an administrative motion to seal portions of its opposition to plaintiff's motion to seal.  Dkt. 154-4.  The redacted portions cursorily reference the exhibits filed by plaintiff as part of its opposition to the motion to strike.  Id.  Pursuant to Local Rule 79-5(e)(1), plaintiff had four days to file a declaration in support of sealing the portions marked for sealing by Plantronics.  Plaintiff failed to do so.  Accordingly, the court denies the motion to seal (Dkt. 154) in its entirety.

## C.    The Reply Materials

Plaintiff seeks to seal approximately 19 lines in Plantronics' reply in support of its motion to strike.  Dkt. 160 at 2-4.  As the basis for this request, plaintiff asserts that the information sought for sealing in those lines contains "highly confidential" information from its disclosure concerning Project X, Project Liberator, Project Sunkist, the EA document, and Project Vecchio.  Id.

The court finds compelling reasons to seal portions of the reply that concern or directly quote from non-stricken information in the disclosure.  Dkt. 158-4 at 5:23-25 (Project X); Id. at 7:15-17 (same); Id. at 9:9-12 (same); Id. at 9:23-16 (Project Liberator); Id. at 16:9-11 (EA Document); Id. at 158-4 at 16:22-23 (Vecchio).  Given the specificity of these designations, the court also finds that these requests are narrowly tailored.

That said, the court denies plaintiff's request to seal the Sunkist internal revenue target information.  As decided above, the court has ordered such information stricken from the disclosure and plaintiff failed to proffer a factual basis for its assertion that it would suffer competitive harm if such information were unsealed.  Olsheki's most recent

United States District Court
Northern District of California

declaration filed in support of this request does not change that finding.  In it, Olsheki

adds that:

> If revealed to a competitor, this information would cause competitive harm at least by providing information about markets that Cisco is pursuing to competitors, thereby depriving Cisco of its ability to control information about its product lifecycles. Dkt. 160 at 4.

This single-sentence addition fails to explain how the fact that Sunkist has a three-

year revenue target (from 2020-22) would impart plaintiff's competitors with information

about the market that plaintiff is pursuing.  The court also does not see any coherent

connection between that fact and plaintiff's perceived risk of harm.  Accordingly, the court

denies plaintiff's request to seal Docket 158-4 at 13:26.

### III.     Motion for a Protective Order

"Unless otherwise limited by court order," Rule 26 provides that "[p]arties may

obtain discovery regarding any nonprivileged matter that is relevant to any party's claim

or defense and proportional to the needs of the case, considering the importance of the

issues at stake in the action, the amount in controversy, the parties' relative access to

relevant information, the parties' resources, the importance of the discovery in resolving

the issues, and whether the burden or expense of the proposed discovery outweighs its

likely benefit."  Fed. R. Civ. Pro. 26(b)(1).

A party may move the court for an order protecting it from having to respond to a

pending discovery request.  Fed. R. Civ. Pro. 26(c).  To do so, the movant must certify

that the movant has, in good faith, conferred or attempted to confer with other affected

parties in an effort to resolve the dispute without court action.  Id.

The court denies the motion for a protective order.  Some aspects of the motion

are now moot in light of the court's rulings above and the parties should figure out in the

first instance what is deserving of protection.  Critically, as the emails detailing the events

leading to the instant motions show, the parties failed to meaningfully meet and confer

about the supposed deficiencies in plaintiff's requests before Plantronics filed this motion.

It is quite obvious that at least some of Plantronics' concerns, including, for example,

United States District Court
Northern District of California

timeframe, could have been resolved without court intervention.  As part of the meet and confer process, the parties ***must*** speak orally (including by telephone or zoom) before filing any discovery motion.  If, after meaningfully attempting this process, the parties still cannot resolve their disputes concerning the discovery at issue, they may file a joint letter detailing their concerns for resolution by the court.

## CONCLUSION

For the above reasons, the court **GRANTS IN PART** and **DENIES IN PART** Plantronics' motion to strike the disclosure.  Dkt. 136.  Within 14 days of this order, plaintiff must serve defendants with a third-amended disclosure accounting for all rulings in this order.  In the event plaintiff again attempts to expand the scope of its disclosure in violation of this court's prior orders, the court may issue sanctions.

The court also **DENIES** Plantronics' motion for a protective order without prejudice.  Dkt. 137.  The parties must meet and confer by telephone or video conference in good faith to attempt to resolve any dispute before renewing this motion.

Lastly, as specified in this order, the court **GRANTS IN PART** and **DENIES IN PART** plaintiff's requests to seal the disclosure, the motion to strike briefing, and such briefing's supporting documents.  Dkts. 141, 149, 160.  Because plaintiff has requested the subject sealing, the court orders it to prepare a redacted copy of the disclosure, defendant's opening brief, and defendant's reply.  Plaintiff must provide defendant with those copies within ten days of this order.  Within 14 days of this order, defendant must file that material, as well as an unredacted version of Docket 154-4, on the public docket.  At that same time, plaintiff must file a redacted version of its opposition and Docket 156-1 on the public docket.

**IT IS SO ORDERED.**

Dated: December 21, 2020

/s/ Phyllis J. Hamilton

PHYLLIS J. HAMILTON
United States District Judge