1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    CISCO SYSTEMS, INC., et al.,

8                     Plaintiffs,                    Case No.  19-cv-07562-PJH

9           v.
                                                     **ORDER GRANTING MOTIONS TO**
10   WILSON CHUNG, et al.,                           **COMPEL COUNTERCLAIMS TO**
                                                     **ARBITRATION AND GRANTING**
11                    Defendants.                    **MOTIONS TO STRIKE**

12                                                   Re: Dkt. Nos. 134, 135

13          Before the court are plaintiff counter-defendant Cisco Systems, Inc., ("Cisco")

14   motion to compel arbitration or, in the alternative, dismiss the counterclaims of counter-

15   plaintiff and defendant Wilson Chung ("Chung") and motion to strike Chung's affirmative

16   defenses.  Dkt. 134.  Also before the court are materially similar motions against counter-

17   plaintiff and defendant James He ("He") (jointly with Chung, "defendants").  Dkt. 135.

18          Having read the parties' papers and carefully considered their argument and the

19   relevant legal authority, and good cause appearing, the court hereby **GRANTS** Cisco's

20   motion to compel arbitration of Chung's counterclaims, **GRANTS** Cisco's motion to

21   compel arbitration of He's counterclaims, **DENIES** as moot Cisco's alternative motion to

22   dismiss both Chung's and He's counterclaims, **GRANTS** Cisco's motion to strike Chung's

23   affirmative defenses, and **GRANTS** Cisco's motion to strike He's affirmative defenses.

24                                       **BACKGROUND**

25          On August 5, 2020, the court issued its order on defendants' various motions to

26   dismiss Cisco's operative Second Amended Complaint ("SAC").  Dkt. 126.  In that order,

27   the court denied Chung's and He's respective motions.  Id. at 28.  On August 19, 2020,

28   Chung and He respectively filed their answer and counterclaims.  Dkt. 128 (Chung

Answer); Dkt. 129 (Chung Counterclaims); Dkt. 130 (He Answer and Counterclaims).  In their pleadings, both Chung and He allege two counterclaims for the following:

- Declaratory relief.  Dkt. 129 ¶¶ 23-27; Dkt. 130 at 34, ¶¶ 20-24.
- Violation of California Business & Professions Code § 17200.  Dkt. 129 ¶¶ 28-35; Dkt. 130 at 34-36, ¶¶ 25-32.

Chung and He advance materially similar theories of liability in support of each counterclaim.  Stated simply, each defendant seeks a declaration that the Proprietary Information and Inventions Agreement ("PIIA") that he entered into with Cisco contains provisions that are unenforceable under California law.  Each defendant principally challenges his PIIA's definition of the term "Proprietary Information" as unlawfully broad.  Dkt. 129 ¶ 13; Dkt. 130 at 32, ¶ 12.  According to them, that overbreadth turns each PIIA into a "de facto non-compete agreement."  Dkt. 129 ¶ 29; Dkt. 130 at 31 ¶ 10.  Given that, defendants allege that the PIIA is a void contract under California Business & Professions Code § 16600 and, because Cisco uses this sort of agreement with its employees, it is engaged in unfair business practices under § 17200.  Dkt. 129 ¶ 29; Dkt. 130 at 35 ¶ 26.

On September 9, 2020, Cisco filed the instant motions to compel arbitration or, in the alternative, dismiss defendants' counterclaims.  Dkt. 134; Dkt. 135.  To support its principal request with respect to the Chung counterclaims, Cisco relies on a standalone arbitration agreement entered into by it and Chung on January 29, 2007.  Dkt. 134-2 (the "Chung Arbitration Agreement").  The court previously construed this agreement in its May 26, 2020 order.  Dkt. 97 at 10-14.  To support its principal request with respect to the He counterclaims, Cisco relies on arbitration provisions entered into by it and He as part of He's March 8, 1999 PIIA.  Dkt. 135-2 at 6, ¶ 6 (the "He Arbitration Provisions").  The court will detail these agreements in its analysis.

Lastly, in both motions, Cisco requests that the court strike a handful of affirmative defenses alleged by each defendant.  The court will also detail those defenses below.

2

**DISCUSSION**

**A.    Legal Standard**

     **1.    Motion to Compel Arbitration**

     Any party bound to an arbitration agreement that falls within the scope of the Federal Arbitration Act ("FAA"), Title 9 U.S.C. §§ 1, *et. seq.*, may bring a motion to compel arbitration and stay the proceeding pending resolution of the arbitration. 9 U.S.C. §§ 3-4; Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1012 (9th Cir. 2004). The FAA requires the court to compel arbitration of issues covered by the arbitration agreement. Dean Witter Reynolds, Inc., v. Byrd, 470 U.S. 213, 218 (1985).

     In ruling on a motion to compel arbitration under the FAA, the district court's role is typically limited to determining whether (i) an agreement exists between the parties to arbitrate; (ii) the claims at issue fall within the scope of the agreement; and (iii) the agreement is valid and enforceable. Lifescan, 363 F.3d at 1012; Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). If the answers are yes, the court must enforce the agreement. Lifescan, 363 F.3d at 1012.

     Regarding whether an agreement exists to arbitrate, the "first principle" that underscores the U.S. Supreme Court's arbitration decisions is that "[a]rbitration is strictly a matter of consent, and thus is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration." Granite Rock Co. v. Int'l B'hd of Teamsters, 561 U.S. 287, 299 (2010); First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995). Thus, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute.*" Granite Rock, 561 U.S. at 297 (emphasis in the original).

     Regarding the validity of the agreement, the FAA provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, state contract defenses may be applied to invalidate arbitration clauses if those defenses apply to contracts generally. Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996); Circuit City

United States District Court
Northern District of California

1    <u>Stores, Inc. v. Adams</u>, 279 F.3d 889, 892 (9th Cir. 2002).

2            Regarding the scope of the agreement, "any doubts concerning the scope of

3    arbitrable issues should be resolved in favor of arbitration." <u>Moses H. Cone Mem'l Hosp.</u>

4    <u>v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24–25 (1983). Nevertheless, a motion to compel

5    arbitration should be denied if "it may be said with positive assurance that the arbitration

6    clause is not susceptible of an interpretation that covers the asserted dispute." <u>AT&T</u>

7    <u>Techs., Inc. v. Commc'n Workers</u>, 475 U.S. 643, 650 (1986).

8            **2.      Motion to Strike**

9            Federal Rule of Civil Procedure 12(f) provides that the court "may strike from a

10   pleading any insufficient defense or any redundant, immaterial, impertinent, or

11   scandalous matter." Fed. R. Civ. P. 12(f). "The function of a [Rule] 12(f) motion to strike is

12   to avoid the expenditure of time and money that must arise from litigating spurious issues

13   by dispensing with those issues prior to trial." <u>Whittlestone, Inc. v. Handi-Craft</u> <u>Co.</u>, 618

14   F.3d 970, 973 (9th Cir. 2010).

15           Motions to strike are not favored and "should not be granted unless it is clear that

16   the matter to be stricken could have no possible bearing on the subject matter of the

17   litigation." <u>Colaprico v. Sun Microsystem, Inc.</u>, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991).

18   When a court considers a motion to strike, it "must view the pleadings in light most

19   favorable to the pleading party." <u>Uniloc v. Apple, Inc.</u>, 2018 WL 1640267, at *1 (N.D. Cal.

20   Apr. 5, 2018). A court must deny the motion to strike if there is any doubt whether the

21   allegations in the pleadings might be at issue in the action. <u>In re 2TheMart.com, Inc.</u>, <u>Sec.</u>

22   <u>Litig.</u>, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000). However, a motion to strike is proper

23   when a defense is insufficient as a matter of law. <u>Chiron Corp. v. Abbot Labs.</u>, 156 F.R.D.

24   219, 220 (N.D. Cal. 1994). Ultimately, the decision "to grant a motion to strike lies within

25   the sound discretion of the district court." <u>Rees v. PNC Bank, N.A.</u>, 308 F.R.D.

26   266, 271 (N.D. Cal. 2015).

27

28

United States District Court<br>Northern District of California

4

**B.      Motions to Compel Arbitration**

**1.      Chung's Counterclaims Are Subject to Arbitration**

The Chung Arbitration Agreement states the following in relevant part:

> We agree to arbitrate before a neutral arbitrator any and all disputes or claims arising from or relating to Employee's recruitment to or employment with Cisco, or the termination of that employment, including claims against any current or former agent or employee of Cisco, whether the disputes or claims arise in tort, contract, or pursuant to a statute, regulation, or ordinance now in existence or which may in the future be enacted . . . including, but not limited to . . .:
>
> • claims for . . . violation of public policy . . . [or] unfair business practices, and any other tort or tort-like causes of action relating to or arising from the employment relationship or the formation or termination thereof;
>
> . . .
>
> We understand and agree that arbitration of the disputes and claims covered by this Agreement shall be the sole and exclusive method of resolving any and all existing and future disputes or claims arising out of Employee's recruitment to or employment with Cisco or the termination thereof.  Dkt. 134-2 at 2.
>
> . . .
>
> We understand and agree that nothing in this Agreement shall prevent either party from seeking from a court the remedy of an injunction for a claimed misappropriation of a trade secret, patent right, copyright, trademark, or any other intellectual or confidential property." Id. at 3.

In its May 26, 2020 order, the court referred to the first two above-cited paragraphs as the "general arbitration agreement provision" and the third paragraph as the "injunctive relief carveout."  Dkt. 97 at 11.  The court construed these provisions to:

> generally require the parties to arbitrate any and all claims (general arbitration agreement provision), except those seeking an injunction for allegedly misappropriated intellectual property (intellectual property injunctive relief carveout). For that latter set of claims, either party may (general arbitration agreement [provision]) but need not (intellectual property injunctive relief carveout) pursue such claims in arbitration." Id. at 13-14.

Based on that construction, the court rejected Chung's attempt to compel Cisco's trade secrets claims to arbitration.  Id. at 14.  Now the tables have turned.

5

In his opposition, Chung does not dispute that the general arbitration agreement provision applies to his counterclaims.  Instead, he argues that his counterclaims fall within the intellectual property injunctive relief carveout. Dkt. 143 at 5.  To substantiate that argument, Chung asserts that his counterclaims "relate to" or "pertain to" Cisco's misappropriation of his "intellectual or confidential property."  Id. at 6 ("Each of Dr. Chung's claims against Cisco qualifies for the 'injunction exception' because each seeks an injunction *related to* the misappropriation by Cisco of Dr. Chung's 'intellectual or confidential property.'") (emphasis added); Id. at 7 ("As this court has previously ruled, injunction claims *pertaining to* confidential and intellectual property need not be submitted to arbitration. Either party has the option of asserting such claims in court. . . . Dr. Chung now exercises that option . . . ") (emphasis added).

Chung's explanation for that assertion is not obvious.  Chung says that his PIIA's definition of Proprietary Information includes his "know-how," "ideas," knowledge about the terms of his prior compensation, and knowledge about the "talent and skills of his former coworkers."  Id. at 7.  Chung takes the position that he—not Cisco—is "entitled" to such information.  Id.  Thus, Chung reasons, "by way of the PIIA, Cisco has misappropriated information that is properly [his]."  Id.

Cisco proffers three rebuttals.  First, Cisco argues that Chung's counterclaims pertain to only unfair business practices, *not* the misappropriation of intellectual property or confidential information.  Dkt. 147 at 6.

Second, Cisco asserts that, even if Chung sought to allege a claim for misappropriation of protected information, his allegations fall short.  Id. at 7.  Cisco points out that Chung omits any legal basis (e.g., a statute) under which he may seek relief for its purported misappropriation of his information.  Id.  Cisco further points out that Chung fails to allege how his so-called "know-how and ideas" qualify as protectable confidential property and that, in fact, Cisco "succeeded in gaining ownership" over such property.  Id.

Third, Cisco asserts that the general arbitration agreement provision's "specific language" concerning claims for "unfair business practices" controls the "more general"

language included in the intellectual property injunctive relief carveout.  Id. at 8.  Cisco reasons that, because the general arbitration agreement provision "plainly requires that unfair business practices shall be arbitrated" and Chung "has specifically pled such a claim, he cannot invoke the intellectual property exception to arbitration based on a claim with the ***exact same operative facts***."  Id. (emphasis in the original).

The court concludes that Chung's counterclaims do not fall within the intellectual property injunctive relief carveout.  First, Chung overstates the court's prior construction of the scope of the intellectual property injunctive relief carveout.  Critically, a claim that "pertains to" or "relates to" some property (Chung's position) is not necessarily a claim *for* misappropriation of such property (the court's prior construction).

Second, the gravamen of both counterclaims is that the PIIA is unenforceable and that Cisco uses it to prevent employment mobility.  That theory is shown by the following allegations in Chung's countercomplaint:

- "To support its campaign against Dr. Chung, Cisco has invoked unlawful and unenforceable provisions of a de facto non-compete agreement." Dkt. 129 ¶ 1.
- "Having provided the foregoing expansive and essentially unlimited definition of Proprietary Information, the PIIA prohibits Dr. Chung from using any of the Proprietary Information without Cisco's permission." Id. ¶ 13.
- "Cisco has used, and is using, the PIIA (and the threat of litigation pursuant to it) in an attempt to deter Dr. Chung from continuing his employment at Poly." Id. ¶ 11.
- "An actual controversy has arisen regarding the validity of certain provisions of the [PIIA] between Cisco and Dr. Chung."  Id. ¶ 24.
- "Upon information and belief, even though the non-compete provisions in the PIIA are unenforceable, Cisco has utilized them, and continues to utilize them, in an attempt to restrict Dr. Chung's mobility as an employee." Id. ¶ 31.
- "Cisco's use of its PIIA as a de facto non-compete agreement, as alleged herein, [§ 16600] and constitutes unfair competition in violation of the Unfair

1    Competition Law." Id. ¶ 29.

2    The above six allegations largely reflect the substance of the remaining 25 factual

3 allegations in Chung's countercomplaint.  None of these allegations assert that Cisco

4 misappropriated Chung's information.  Indeed, to remove any doubt about the harm on

5 which Chung bases his theory of liability, the court need only look to his primary prayer

6 for relief.  In it, Chung seeks a "declaration that the provisions of the [PIIA] cited [in the

7 counterclaims] are unenforceable and void." Id. Prayer for Relief A.

8    That said, the court understands Chung's allegation at paragraph 16 that:

9        Through the PIIA, Cisco seeks to gain ownership over Dr.
         Chung's personal ideas and personal work solutions.  Id. ¶ 16.
10

11    This allegation, however, does not alter the gravamen of Chung's counterclaims.

12 Critically, Chung fails to explain how or why a contract term that he voluntarily accepted

13 may qualify as a legally cognizable theory of misappropriation.  In any event, this lone

14 assertion, without more, is simply insufficient to convert an obvious challenge to the

15 PIIA's enforceability into a claim for misappropriation of protected information.

16    Third, Chung also fails to allege any non-conclusory facts detailing how or why his

17 supposed "know-how," "ideas," knowledge about his terms of compensation, or

18 knowledge about the talent of his coworkers qualify as legally protectable information.

19 Indeed, at least in his countercomplaint, Chung himself suggests they are not. Id. ¶ 2

20 ("[T]he PIIA is so expansive that it purports to cover and 'protect' normal, unprotectable

21 ideas and information that are not normally thought of as confidential.").

22    In short, the court finds that Chung's counterclaims do not qualify as claims for

23 misappropriation of protectable information.  Given that, the court concludes that they do

24 not fall within the intellectual property injunctive relief carveout.  Accordingly, the court

25 grants Cisco's motion with respect to Chung and orders his counterclaims to arbitration.

26    **2.    He's Counterclaims Are Subject to Arbitration**

27    The He Arbitration Provisions state the following in relevant part:

28        I agree that any and all disputes that I have with the Company,

8

or any of its employees, which arise out of my employment or under the terms of my employment, shall be resolved through final and binding arbitration, as specified herein. ***This shall include*** . . . ***disputes relating to this Agreement, my employment by the Company or the termination thereof***, claims for breach of contract or breach of the covenant of good faith and fair dealing, and any claims of discrimination or other claims under [various civil rights statutes not at issue here] (the "general arbitration provision")

. . .

The only disputes not covered by this Agreement are the following: (i) claims for benefits under the unemployment insurance or workers' compensation laws, and (ii) ***claims concerning the validity, infringement or enforceability of any trade secret, patent right, copyright, trademark or any other intellectual property held or sought by the Company or which the Company could otherwise seek***; in each of these instances such disputes or claims shall not be subject to arbitration, but rather, will be resolved pursuant to applicable law. Dkt. 135-2 at 6-7, ¶ 6 (emphasis added) (the "intellectual property claim carveout").

In his opposition, He recites materially similar arguments to those advanced by Chung. Compare Dkt. 144 at 6-10 (copying and pasting portions of Chung's opposition with minor edits). Aside from those arguments, He adds that his counterclaims are not subject to arbitration because they seek relief "related to the misappropriation claims asserted by plaintiff." Id. at 8. According to He, "[b]y seeking relief related to holding the PIIA void and unenforceable and an unfair competition by Plaintiff as an unlawful non-compete," He's counterclaims "attack the basis of the very trade secret and intellectual property claims Plaintiff itself has chosen to bring before the Court." Id. Thus, He says, his counterclaims "sound in clarifying" his and Cisco's relative rights to the purported trade secrets at issue in this action. Id.

In its reply, Cisco proffers two rebuttals. First, Cisco argues that neither counterclaim "mentions anything about the validity, infringement, or enforceability of any type of intellectual property." Dkt. 148 at 6-7. Rather, both counterclaims "dispute provisions of and seek relief from the PIIA." Id. Cisco further points out that He "do[es] not identify any actual intellectual property." Id. He makes "only vague references" to some "know-how and ideas." Id. In any event, such references fall short of identifying

9

"trade secrets that Cisco supposedly misappropriated."  Id. at 9.

Second, Cisco argues that, to determine whether a claim should be arbitrated, the court must analyze the nature of the claim itself, *not* those brought by an opposing party. Id. at 7.  Because He's counterclaims "are all grounded in his challenges to the PIIA," they are subject to arbitration.  Id.  Whether or not Cisco relies on the PIIA to support its trade secrets claims is beside the point.  Id. at 8.

The court concludes that He's counterclaims do not fall within the intellectual property claim carveout.  As an initial matter, He correctly suggests that there might be overlap between (1) information that qualifies as "Proprietary" under the PIIA and (2) other information that qualifies as intellectual property under the law.  However, that potential overlap does not convert every claim that challenges the enforceability of the PIIA's "Proprietary Information" definition into one concerning intellectual property.  Some information might qualify as "proprietary" but still not qualify as a patent, copyright, trademark, or trade secret.  The court provided a materially similar logic lesson in its August 5, 2020 order.  Dkt. 126 at 11 ("Plaintiff's first alternative ground runs into another logic problem: merely because the information purportedly misappropriated by Chung might qualify as "proprietary" under contract does not establish that that information satisfies the statutory definition of a "trade secret." Plainly, a lot of information may be proprietary (i.e., owned) but not economically valuable.").

Second, even if the court were to adopt He's characterization of his counterclaims as concerning intellectual property, He only vaguely refers to the protectable information that he purportedly owns.  He neglects any explanation about how or why his supposed "know-how" or "ideas," in legal fact, qualify as intellectual property.  Again, like Chung, other allegations in He's countercomplaint suggest that such information may not qualify as intellectual property.  Dkt. 130 at 30, ¶ 2 ("Indeed, the PIIA is so expansive that it covers normal, unprotectable ideas and information that are not normally thought of as confidential and that any individual leaving a company knows. The PIIA was so expansive that it allowed Cisco to sue Mr. He for leaving Cisco with information or ideas

10

that are not protectable under any laws.").

Third, He's counterclaims do not concern the "validity, infringement, or enforceability" of any protected information (Proprietary, intellectual property, or otherwise). Instead, like Chung, He challenges the enforceability of the PIIA itself and Cisco's purportedly unlawful practice of using agreements like it to restrict employment mobility. Dkt. 130 at 30-35, ¶¶ 1, 10, 21, 26 28 (similar allegations to those bulleted above with respect to Chung's counterclaims). That challenge is one step removed from a claim concerning the enforceability of the information that the PIIA purports to protect.

Lastly, the court understands that He alleges that "[t]he PIIA is Cisco's attempt to gain ownership over its employee's personal ideas and personal work solutions." Dkt. 130 at 33, ¶ 16. Similar to Chung, though, He fails to explain why or how a contract term that he agreed to may qualify as a cognizable theory of infringement of his purportedly protectable information. Absent that, the court finds this single sentence assertion insufficient to trigger the intellectual property claim carveout.

In short, the court finds that He's counterclaims do not concern the infringement, validity, or enforcement of intellectual property. Given that, the court concludes that they do not fall within the intellectual property claim carveout. Accordingly, the court grants Cisco's motion to compel with respect to He and orders his counterclaims to arbitration.

### 3. The Court Stays Further Litigation on the Counterclaims

In its May 26, 2020 order, the court ordered Cisco's claims against defendant Jedd Williams ("Williams") to arbitration. Dkt. 97 at 10. Relying on Title 9 U.S.C. § 3's mandatory stay provision, the court stayed the judicial proceedings against Williams pending completion of his arbitration with Cisco. Id. at 20.

In its opening brief, Cisco requests that the court dismiss the Chung and He counterclaims in the event it orders those claims to arbitration. Dkt. 134 at 11-12; Dkt. 135 at 10. In support of this request, Cisco cites Sparling v. Hoffman Const. Co., 864 F.2d 635 (9th Cir. 1988). In Sparling, the Ninth Circuit recognized that a district court maintains discretion to stay or dismiss claims ordered to arbitration when an arbitration

agreement is "broad enough to bar all of the plaintiff's claims." Id. at 638.

The court declines Cisco's request at this time. Consistent with its treatment of the claims against Williams, the court stays any litigation pertaining to Chung's and He's counterclaims in this proceeding pending the arbitration of those counterclaims.

**C.    Motions to Strike Affirmative Defenses**

**1.    The Court Strikes Chung's Affirmative Defenses**

In its opening brief, Cisco requests that the court strike the following five affirmative defenses alleged by Chung in his answer:

- Laches. Dkt. 134 at 18.
- Statute of limitations. Id. at 18-19.
- Failure to mitigate. Id. at 19.
- Unclean hands. Id.
- Estoppel. Id. at 20.

In support of its request, Cisco asserts Chung fails to allege sufficient allegations providing it adequate notice of the defenses' underlying factual bases. Dkt. 134 at 18. In his opposition, Chung first asks that the court not apply the Twombly/Iqbal plausibility standard to evaluate the adequacy of his defenses. Dkt. 143 at 14. Chung then summarily asserts that his answer provides Cisco with "fair notice" of the defenses he "may raise" at trial. Id. The court considers the challenged defenses below.

**a.    Laches and Statute of Limitations**

In his answer, Chung alleges only that "equitable claims for relief in the complaint are barred by the doctrine of laches" and that plaintiff's lawsuit "is barred by the applicable statute of limitations." Dkt. 128 at 40. Chung does not provide any further detail in support of either defense.

In its SAC, Cisco adequately alleged trade secrets claims against Chung under both California and federal law. Both claims feature a three-year statute of limitations. Cal. Civ. Code § 3426.6 ("An action for misappropriation must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence

United States District Court
Northern District of California

1    should have been discovered."); 18 U.S.C. § 1836(d) ("A civil action under subsection (b)

2    may not be commenced later than 3 years after the date on which the misappropriation

3    with respect to which the action would relate is discovered or by the exercise of

4    reasonable diligence should have been discovered.").

5        Cisco filed this action on November 18, 2019.  Dkt. 1.  The SAC does not allege

6    misappropriation by Chung (or any other defendant) prior to November 18, 2016.  Of

7    course, because the purported misappropriation underlying Cisco's action had not

8    occurred by that date, Cisco could not have learned of it.  Thus, Chung's statute of

9    limitations defense is legally irrelevant.  Given that Chung cannot salvage this defense by

10    further factual amendment, the court strikes it with prejudice.

11        Separate but relatedly, the Ninth Circuit has recognized that "[l]aches serves as

12    the counterpart to the statute of limitations, barring untimely equitable causes of action.

13    While laches and the statute of limitations are distinct defenses, a laches determination is

14    made with reference to the limitations period for the analogous action at law. If the

15    plaintiff filed suit within the analogous limitations period, the strong presumption is that

16    laches is inapplicable." Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835

17    (9th Cir. 2002).

18        Given the above authority, the court presumes that any laches limitations period

19    runs parallel to the statute of limitations period analyzed above.  Given that, Chung's

20    laches defense is also legally irrelevant and cannot be saved by further factual

21    amendment.  Thus, the court also strikes the laches defense with prejudice.

22             **b.**       **The Remaining Defenses**

23        When analyzing the factual sufficiency of an alleged affirmative defense, courts in

24    this district apply the pleading standard set forth in Twombly and Iqbal.  Perez v. Gordon

25    & Wong Law Grp., P.C., 2012 WL 1029425, at *7-8 (N.D. Cal. Mar. 26, 2012) ("The Court

26    therefore joins those other district courts in concluding that the heightened 'plausibility'

27    standard articulated in Twombly, and extended to all civil pleadings in Iqbal, applies

28    equally to the pleading of affirmative defenses as it does to the pleading of claims for

relief in a complaint.") (collecting cases).  This court now does the same.

Having decided the applicable pleading standard, the court finds that Chung failed to allege sufficient facts in support of his defenses for failure to mitigate damages, unclean hands, and estoppel.  Instead, Chung alleges only legal conclusions.  Dkt. 128 at 40-41 ("[1] Dr. Chung is informed and believes and thereon alleges that Plaintiffs failed to mitigate the damages . . . [2] Plaintiffs are barred from recovering . . . under the doctrine of unclean hands . . . [3] Plaintiffs are estopped from asserting each and every cause of action in the Complaint.").  These summary allegations fall painfully short of showing that Chung is plausibly entitled to any such defense.  Accordingly, the court strikes Chung's three remaining affirmative defenses without prejudice.

The pleading requirements contained in Rule 8, as construed by Twombly, Iqbal, and their Ninth Circuit progeny, are black letter law.  Thus, the court need not describe them here.  The court permits Chung a single opportunity to amend the three above-referenced affirmative defenses to comply with those requirements.  If Chung fails to do so, the court will strike those defenses with prejudice.

### 2.      The Court Strikes He's Affirmative Defenses

In its opening brief, Cisco requests that the court strike the following three affirmative defenses alleged by He in his answer:

- Laches, estoppel, and the statute of limitations.  Dkt. 130 at 28 (listed as a single defense).

- Unclean hands.  Id. at 28-29.

- Failure to mitigate.  Id. at 29.

In his opposition, He raises materially similar arguments to those advanced by Chung.  Compare Dkt. 144 at 16-17 (copying and pasting Chung's opposition with minor edits).  Thus, for the same reasons detailed above, the court strikes He's laches and statute of limitations defenses with prejudice.

Like Chung, He also only summarily alleges his defenses premised on failure to mitigate, unclean hands, and estoppel.  Dkt. 130 at 28-29 ("[1] The claims made in the

United States District Court
Northern District of California

Complaint are barred by . . . estoppel . . . [2] The claims made in the Complaint . . . are barred by the doctrine of unclean hands . . . [3] Plaintiffs' claims . . . are barred . . . because Plaintiffs failed to mitigate the damages which they allegedly suffered, if any."). Given that these allegations fall short of the applicable pleading requirements, the court strikes He's three remaining affirmative defenses without prejudice.

The court will permit He leave to amend the three above-referenced affirmative defenses to comply with the applicable pleading requirements. If He fails to do so, the court will strike those defenses with prejudice.

### CONCLUSION

For the above reasons, the court **GRANTS** Cisco's motions to compel Chung's and He's counterclaims to arbitration. Dkt. 134; Dkt. 135. The court stays litigation on those counterclaims in this proceeding pending their arbitration. Given the above, the court need not consider Cisco's alternative motions to dismiss such counterclaims. Accordingly, the court **DENIES** those alternative motions without prejudice as moot.

Additionally, the court **GRANTS** Cisco's motions to strike Chung's and He's affirmative defenses as detailed immediately above. **Within 21 days of this order**, Chung and He may file an amended answer accounting for the pleading deficiencies identified above with respect to the affirmative defenses for failure to mitigate damages, unclean hands, and estoppel. Absent leave of court or Cisco's consent, Chung and He may not otherwise amend their answer. In the event either defendant files an amended answer, he must provide a redline clearly showing the amendments made to his original answer. The subject redline must be filed as a separate attachment.

**IT IS SO ORDERED.**

Dated: February 8, 2021

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge