1

2

3

4  UNITED STATES DISTRICT COURT

5  NORTHERN DISTRICT OF CALIFORNIA

6

7  CISCO SYSTEMS, INC., et al.,

8  Plaintiffs,

9  v.

10  WILSON CHUNG, et al.,

11  Defendants.

12

Case No.  19-cv-07562-PJH


**ORDER DENYING MOTION FOR RECONSIDERATION OF SEALING ORDERS AND GRANTING MOTION TO MAINTAIN SEAL ON NON-PARTY FOXCONN'S INFORMATION**

Re: Dkt. Nos. 169-1, 176, 177

13        Before the court is plaintiff Cisco Systems, Inc., ("plaintiff") motion for partial

14  reconsideration of the court's December 21, 2020 order (Dkt. 168) granting in part and

15  denying in part plaintiff's motions to seal.  Dkt. 169-1.  Also before the court is non-party

16  Hon Hai Precision's ("Foxconn") unopposed administrative motion to keep certain of its

17  information (the "E2E cost model information") under seal.  Dkt. 177.   Having read the

18  parties' papers and carefully considered their arguments and the relevant legal authority,

19  and good cause appearing, the court hereby **DENIES** plaintiff's motion for

20  reconsideration and **GRANTS** Foxconn's motion to keep its information under seal.

21                                              **BACKGROUND**

22        Plaintiff sued defendants for purportedly misappropriating its trade secrets.

23  Following multiple motions to dismiss, defendant Plantronics Inc. ("Plantronics") filed a

24  motion to strike and challenge the sufficiency of plaintiff's California Code of Civil

25  Procedure § 2019.210 trade secret designation (the "disclosure").  Dkt. 136.  Plaintiff

26  made various requests to seal certain documents and information filed in connection with

27  the motion to strike.  Dkts. 141, 149, 156, 160.

28        On December 21, 2020, the court granted in part and denied in part Plantronics'

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

motion to strike.  Dkt. 168 (the "December 21, 2020 order") at 1-18.  The court also granted in part and denied in part plaintiff's requests to seal.  Id. at 19-31.  The court ordered plaintiff to prepare and provide Plantronics a copy of the disclosure applying redactions consistent with the court's sealing orders for filing on the public docket.  Id. at 32.  The court ordered plaintiff to provide that copy by December 31, 2020.  Id.

Nine days later, on December 30, 2020, plaintiff filed a motion for leave to file the instant motion for partial reconsideration of the December 21, 2020 order's denying plaintiff's sealing requests.  Dkt. 169.  On New Years' Eve, plaintiff filed a motion to stay the court's sealing order pending its ruling on the motion for reconsideration.  Dkt. 171.  On New Years' Day, the court permitted plaintiff leave to file the instant motion for reconsideration and stayed its sealing order pending its ruling on that motion.  Dkt. 172.

In its motion for reconsideration, plaintiff challenges only the court's decision to unseal five portions of its disclosure (Dkt. 136-5) and one slide in a supporting document (collectively, the "challenged portions").  Dkt. 169-1 at 3-4.  Plaintiff does not otherwise contest the court's December 21, 2020 order.  The challenged portions include the following:

- Disclosure at 21:15-22:13 (Internal Revenue Targets for Project Sunkist).

- Disclosure at 33:26-34:12 (Project Polaris Internal Strategy).

- Disclosure at 37:14-27 (Project Pricing Strategy).

- Disclosure at 39:15-40:1 (Cisco's End-to End Cost Model).

- Disclosure at 66:12-26 (Project Vecchio Pricing Strategy).

- Docket 156-1 at 8 (the "Sunkist Presentation").

At the outset, the court notes that docket 156-1 at 8 is identical to the information reflected in the disclosure at 21:15-22-13.  Additionally, for purpose of this order (and contrary to the court's ordinary practice), all cites to the disclosure refer to that document's original page and lines (as opposed to those generated by this electronic case filing ("ECF") system).  All other citations will refer to the relevant docket number and its associated ECF page designation.

2

1
2
3
4
5
6

On January 19, 2021, Foxconn filed an administrative motion to stay the court's sealing order with respect to disclosure 39:15-40:1.  Dkt. 176.  On February 5, 2021, before the court ruled on its motion to stay, Foxconn filed another administrative motion to permanently maintain that disclosure portion under seal.  Dkt. 177.[1]  In it, Foxconn asks the court to permanently seal some of its confidential cost information that plaintiff apparently included in one of the challenged portions at issue.  Id.

7
8
9
10

The court has already summarized the disclosure in its December 21, 2020 order. Given that, the court will detail the challenged portions only as necessary in its analysis. Following its analysis of the motion for reconsideration, the court will consider Foxconn's motion to permanently seal any of its information that is contained in the disclosure.

11

**DISCUSSION**

12
13

Under Civil Local Rule 7-9(b), a party may request that a court reconsider a prior order under one of the following conditions:

14
15
16

- When filing the motion for leave, a material difference in fact or law exists from that presented to the court prior to entry of the subject order.  The party must also show that it did not know such fact or law at the time of the subject order.

17
18

- The emergence of new material facts or a change of law occurring after the subject order.

19
20

- A manifest failure by the court to consider material facts or dispositive legal arguments presented prior the subject order.  Civ. L.R. 7-9(b)(1)-(3).

21
22
23
24

In its motion, plaintiff contends that the court "failed to consider critical legal arguments and facts that support sealing the [the challenged portions]." Dkt. 169-1 at 3. To support that contention, plaintiff proffers four reasons.  The court analyzes—and rejects—each reason in turn below.

25

/ / /

26
27
28

---

[1] Because the court had already stayed its sealing orders pending resolution of the motion for reconsideration and, given its decision on Foxconn's more recent motion to seal its information, the court **DENIES** Foxconn's administrative motion to stay as moot.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

I.      **California Civil Code § 3426.5 Does Not Require the Court to Seal the**
        **Challenged Portions**

First, plaintiff argues that the court "misapplied" California Civil Code § 3426.5's rule that "[i]n an action under this title, a court **shall** preserve the secrecy of an **alleged** trade secret by reasonable means."  Dkt. 169-1 at 5 (emphasis added).  Plaintiff takes the position that, because its second amended complaint ("SAC") alleges that the information reflected in the challenged portions of its disclosure constitute trade secrets, the court is required to seal such information.  Id. at 5-7.  According to plaintiff, § 3426.5 applies to any information detailed in its disclosure, including that pertaining to purported trade secrets that the court previously determined may not serve as a basis for its claims.

The court rejects plaintiff's first ground for reconsideration for four reasons.  First, if adopted, plaintiff's construction of § 3426.5 would require courts to seal **any** information that a litigant characterizes in its pleadings as a trade secret.  As plaintiff's own cited authority shows, Dkt. 169-1 at 6-7,[2] California courts reject such a categorical contention. Cypress Semiconductor Corp. v. Maxim Integrated Prod., Inc., 236 Cal. App. 4th 243, 255 (2015) ("[The sealing] motion rested on the premise that **merely by filing a pleading characterizing certain information as a trade secret**, a party can compel the courts to withhold that information from the public record until such time as it finally adjudged *not* to be a trade secret.  . . . Here there was no arguably secret information before the court. Nearly all of the information Cypress sought to place under seal had been compiled *by its opponent* from *public sources* . . . This was not a colorable trade secret**, and Cypress's calling it so did not obligate the court to place it under seal** or take any other action to prevent its further disclosure.") (italics in the original) (bold italics added).

Plaintiff's vague citation to In re Providian Credit Card Cases, 96 Cal. App. 4th

---

[2] As shown by the emphasized language above, plaintiff misleadingly omits critical portions of the court's decision in Cypress Semiconductor when citing it for the proposition that "[A] party can compel the courts to withhold [alleged trade secrets] from the public record until such time as it [is] finally adjudged not to be a trade secret."  Dkt. 169-1 at 6 (brackets in briefing).

292, 298 (2002) does not alter that conclusion.  Dkt. 169-1 at 6.  In that case, the court observed that "[t]he mere presence of claimed trade secrets does not carry a mandatory confidentiality requirement.  Such a requirement is imposed only in actions initiated pursuant to the Uniform Trade Secrets Act for misappropriation of trade secrets."  Id. However, as the court then pointed out, that action did not involve trade secrets claims. Id.  ("The actions commenced against defendants were not of this nature.").  At best, then, In re Providian provides dicta in support of plaintiff's proffered construction.

To the extent In re Providian's dicta conflicts with the above cited portions of the court's decision in Cypress Semiconductor, the court will apply the rules stated in the latter.  Unlike the claims at issue in In re Providian, those in Cypress Semiconductor rested on California's trade secret statutes.  Cypress Semiconductor Corp., 236 Cal. App. 4th at 246 ("Plaintiff Cypress Semiconductor Corporation (Cypress) brought this action alleging that defendant Maxim Integrated Products, Inc. (Maxim), had misappropriated a trade secret, or was in the process of doing so, by seeking to hire away specialists in touchscreen technology, a field in which Cypress and Maxim compete.").  Plaintiff fails to identify and argue any other authority to support its proffered construction of § 3426.5.

Second, independent of the above, the court held in its August 5, 2020 order that plaintiff failed to show the independent economic value of information concerning its "strategy and costs" for pre-release video conferencing display products.  Dkt. 126 at 5-12.  Because of that failure, the court concluded that such information "may not serve as a basis for plaintiff's trade secrets claims."  Id. at 12.

In effect, then, the court dismissed that portion of plaintiff's trade secrets claims that rested on the above-referenced information.  Given such dismissal, the court has "judge[d] on the merits" that such information does not qualify as a trade secret. Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 399 n.3 (1981) ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'").  Thus, plaintiff cannot argue that the court has "not adjudicate[d] the merits of whether the stricken alleged trade secrets are protectable trade secrets as a matter of

law." Dkt. 169-1 at 6.  As shown above, the court has made such a final adjudication.

Third, both California and federal law require that plaintiff take "reasonable measures" to maintain the confidentiality of its supposed trade secret information.  Cal. Civ. Code § 3426.1(d); 18 U.S.C. § 1893(3)(A).  By its conduct in the instant action, plaintiff failed to take such measures.  As already explained in the December 21, 2020 order, plaintiff included the challenged portions as part of its disclosure in direct contravention of the August 5, 2020 order.  Dkt. 168 at 9-10, 13.  Plaintiff defended such inclusion at length in its opposition to Plantronics' motion to strike.  Dkt. 149-4.  Thus, it appears to the court that such inclusion was an intentional, strategic decision by plaintiff, not one of mere negligence.  Given the clarity of the court's prior orders, plaintiff should have expected that § 3426.5's protection would not extend to information the court already determined does not qualify as actionable.  Thus, plaintiff gambled by including the challenged portions in its disclosure.  The court finds that such conduct falls short of the sort of reasonable measures required under applicable California and federal law.

Fourth, the court finds meritless plaintiff's residual argument that it will face an "unjust result" if the court orders the challenged portions unsealed.  Dkt. 169-1 at 7.  By attempting to use the disclosure to reinsert the subject information into this litigation, plaintiff chose to ignore the court's prior order.  Plaintiff rolled the dice but came up short.  Any "unjust result" is of its own making.

## II.     The Court Properly Construed the Relevant Ninth Circuit Authority

Second, plaintiff asserts that the court misapplied the general principle in Kamakana v. City & Cty. of Honolulu, 447 F.3d 1172 (9th Circ. 2006) that:

> "compelling reasons" sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such "court files might have become a vehicle for improper purposes," such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets. Id. at 1179.

According to plaintiff, the court's mistaken application arises from "its distinction between trade secrets 'at issue' and those not 'at issue.'" Dkt. 169-1 at 7.

The court rejects plaintiff's second ground for reconsideration.  This ground rests on the assumption that the challenged portions include information that qualifies as a "trade secret."  As explained above, the court has already determined that plaintiff failed to allege the independent economic value of its "strategy and cost" information for its pre-release video conferencing display products.  Dkt. 126 at 5-12.  Thus, contrary to plaintiff's unsupported assumption, the challenged portions in the disclosure that reflect such information may not qualify as a trade secret.  Such portions include the disclosure at 33:26-34:12 (Project Polaris Internal Strategy), 37:14-27 (Project Polaris Pricing Strategy), 39:15-40:1 (End-to-End Cost Model for Polaris), and 66:12-26 (Project Vecchio Pricing Strategy).

Separately, in its August 5, 2020 order, the court held that, with respect to the information purportedly misappropriated by defendant James He ("He"), plaintiff alleged the independent economic value for only "the design and hardware diagrams for its headset prototypes."  Dkt. 126 at 16.  The court did not find that plaintiff adequately alleged that any **business** information pertaining to such headsets qualify as trade secrets.  To the contrary, the court limited the trade secrets claims against He to design documents and hardware diagrams for its headset prototypes.  Id.  Thus, plaintiff also has not shown that any challenged portions in the disclosure that reflects its business information qualifies as a trade secret.  Absent such showing, Kamakana's general principle is beside the point.

### III.    The Court Considered and Addressed the Evidence Proffered by Plaintiff in Support of Its Request to Seal the Challenged Portions

Third, plaintiff argues that the court "overlooked key aspects of the Haq and Olsheki declarations that, if considered, would support finding compelling reasons to seal the Reconsideration Materials that outweigh the public's interest in disclosure."  Dkt. 169-1 at 8.  With respect to the Haq declaration, plaintiff states that the court failed to consider that Haq "tied" Polaris's "business case" materials to a risk of competitive harm in the event of disclosure.  Id. (citing Dkt. 141-1 ¶ 6).  According to plaintiff, the court also failed

to credit Haq's attempt to incorporate the Olsheki by reference.  Id.  With respect to the

Olsheki declaration, plaintiff states that the court failed to analyze Olsheki's "chart form"

declaration, which, according to plaintiff "outlines . . . the basis for sealing each portion of

the disclosure."  Dkt. 169-1 at 8-9.  Plaintiff asserts that Olsheki "outlines competitive

harm associated with the [challenged portions] in terms the court did not consider,"

namely that:

> The materials also reflect highly confidential financial and customer data, which if disclosed publicly, would cause competitive harm at least by providing information about markets and customers that Cisco is pursuing to competitors, thereby depriving Cisco of a first-mover advantage.  Id. (citing Dkt. 141-1 at 13:24-27.[3]

The court rejects plaintiff's third ground for reconsideration for three reasons.

First, in his declaration, Haq states the following:

> The public disclosure of documents **reflecting the Polaris hardware design** would put Cisco at a competitive disadvantage by facilitating the reverse engineering of its products, and would allow competitors to use Cisco's research and development efforts to develop competing products at a lower cost.  Dkt. 141-1 ¶ 6 (emphasis added).

Thus, contrary to plaintiff's ex post characterization, Haq's statement about

competitive harm is limited to Polaris's hardware information, **not** the business-related

information detailed in the challenged portions.  Further whether Haq "reviewed," "agreed

with," and then "adopted the bases presented" in the Olsheki declaration (addressed

below) does not cure that shortcoming.  Olsheki is an associate at a law firm serving as

plaintiff's outside counsel.  Dkt. 141 ¶ 1.  Haq is plaintiff's employee.  To the extent Haq

must rely on non-plaintiff personnel to testify to the purported harm to plaintiff, the court

finds that such testimony lacks an adequate foundation to support sealing.  Ctr. for Auto

---

[3] Confusingly, plaintiff cites the ECF docket entry but the original filing's page and line designation when referring to the Olsheki declaration.  Where, like here, there is some cover page attached to an original filing, that practice results in inaccurate citations. Going forward, the parties should cite the ECF docket number and **its** associated page stamp in parallel.

Safety v. Chrysler Grp., LLC, 809 F.3d 1092, 1096-97 (9th Cir. 2016) ("Under this stringent standard, a court may seal records only when it finds 'a compelling reason and articulates the factual basis for its ruling, without relying on hypothesis or conjecture.'").

Second, contrary to plaintiff's suggestion, the court did not overlook Olsheki's statements in the "basis" column of his declaration's chart. Dkt. 169-1 at 9 (citing Dkt. 141 at 5:12-16, 6:19-20, 7:24-26, 8:1-4, 8:12-15, 8:19-20, 10:19-20, 11:5-6). The court considered that column. In it, Olsheki only vaguely describes each portion of the information sought for sealing. Noticeably absent from those descriptions, however, is any statement about the harm that plaintiff would suffer if any portion were disclosed. See, e.g., Dkt. 141 at 8:12-15 (describing disclosure 37:14-26 as "highly confidential pricing strategy for a Cisco product" and "highly confidential design details for a Cisco product, including pricing strategy and available features for a Cisco product.").

The court also considered Olsheki's statement at paragraph 8 that:

> The materials also reflect highly confidential financial and customer data, which if disclosed publicly, would cause competitive harm at least by providing information about markets and customers that Cisco is pursuing to competitors, thereby depriving Cisco of a first-mover advantage. Dkt. 141 ¶ 8 (13:24-27).

For starters, the court notes that this statement is one of sixteen sentences in a declaration paragraph extending across three pages. Dkt. 141 at 12-14. Plaintiff bears the burden of making its showing clearly and concisely. Faulkner v. Wausau Bus. Ins. Co., 571 F. App'x 566, 569 (9th Cir. 2014) ("Judges are not like pigs, hunting for truffles *buried in briefs,* much less buried in disorganized, scattershot evidentiary submissions— the situation facing the district judge here."). Paragraph 8 does not bear that burden.

That said, even on the merits, this single statement fails to address the specific harm that would result from the publication of any particular portion of the disclosure sought for sealing. This statement also fails to explain how a competitor's mere understanding of the subject information would, in fact, deprive plaintiff of some purported "first-mover advantage." Lastly, and in any event, plaintiff fails to provide any response to

1    the court's concern that Olsheki, as outside counsel, even maintains a "credible factual

2    basis" to support his claimed statements.  Dkt. 168 at 24-25.  Given these shortcomings,

3    the court reaffirms its finding that the Olsheki declaration does not support sealing the

4    challenged portions.

5         Third, the court will not consider the recently proffered declaration of plaintiff's

6    senior director of product management, John Reeder, Dkt. 169-2, or the arguments that

7    rely on it, Dkt. 169-1 at 9-10.  Plaintiff had the opportunity to proffer that evidence in

8    support of its initial showing.  A motion for reconsideration is not a proper vehicle for

9    plaintiff to introduce previously available, uncited evidence.  Sch. Dist. No. 1J, Multnomah

10   Cty., Or. v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993) (explaining in the context of

11   reconsideration under Rule 59(e) that "[t]he overwhelming weight of authority is that the

12   failure to file documents in an original motion or opposition does not turn the late filed

13   documents into 'newly discovered evidence.'").

14   **IV.    The Compelling Reasons Standard Governs the Sealing Requests**

15        Fourth, plaintiff asserts that the court should have applied the less stringent "good

16   cause" standard when deciding the sealing requests made in connection with Plantronics'

17   underlying motion to strike.  Dkt. 169-1 at 11.  To support that assertion, plaintiff

18   characterizes defendant's motion as a "discovery motion" that is "procedural in nature."

19   Id.  Plaintiff adds that the court's "evaluation of the issues involved in [the motions

20   decided in the December 21, 2020 order] did not more than tangentially relate to the

21   merits of Cisco's trade secrets claims."  Id. at 12.

22        The court rejects plaintiff's fourth ground for reconsideration for two reasons.  First,

23   plaintiff's characterization of the motion to strike as a "procedural" is irrelevant.  Every

24   motion is procedural.  The relevant question is whether the motion is more or less

25   tangentially related to the merits of an action, which, as noted in the December 21, 2020

26   order, plaintiff failed to even address in the first instance.  Dkt. 168 at 20.

27        Second, plaintiff mischaracterizes the motion to strike as a "discovery motion."  It

28   was not.  As detailed in the December 21, 2020 order, the motion to strike focused on

United States District Court
Northern District of California

1    determining which sorts of purported trade secret information fell within and outside the

2    scope of the court's May 26, 2020 and August 5, 2020 orders.  Unless plaintiff means to

3    suggest that its purported trade secrets are only tangential to its action (and even then),

4    the court's decision to apply the compelling reasons standard remains unchanged.

5          In short, the court concludes that none of plaintiff's proffered grounds for

6    reconsideration warrant sealing any of the challenged portions of the disclosure.

7    Accordingly, except as provided below with respect to the Foxconn information detailed in

8    the disclosure at 39:15-40:1, all sealing decisions made in the December 21, 2020 order

9    remain in effect.

10   **V.        The Court Will Maintain Foxconn's E2E Information under Seal**

11         In support of its sealing request, Foxconn filed a declaration by its employee,

12   Frances Lee ("Lee").  Dkt. 177-1.  In his declaration, Lee explains that Foxconn

13   manufactures electronics components.  Id. ¶ 3.  It sells components to technology

14   companies for use in consumer devices.  Id.  Its customers include Cisco.  Id.

15         Foxconn contractually requires Cisco "to keep confidential information it received

16   from Foxconn related to a product's cost or a product's price."  Id. ¶ 6.  According to Lee,

17   because of the highly competitive nature of the components manufacturing industry, id. ¶

18   4, Foxconn "considers its pricing to be highly confidential and proprietary information," id.

19   ¶ 5.  Lee explains that such treatment is necessary "so that competing contract

20   manufacturers cannot undercut Foxconn on price."  Id. ¶ 4.

21         Lee then states that he "examined the E2E Cost Model document."  Dkt. 177-1 ¶

22   7.  Lee fails to specify which exact "document" he examined.  However, based on the

23   accompanying declaration by Foxconn's counsel, Jason Wilson ("Wilson"), it appears that

24   Lee means the disclosure at 39:15-40:1 as well as another document produced by Cisco

25   (Cisco_00043 at 115).  Dkt. 177-2 ¶ 2.  Based on the court's review of its docket, it

26   appears that neither party filed the bates stamped document.  Thus, only the disclosure

27   at 39:15-40:1 remains at issue.

28         Lee states the subject disclosure portion "includes highly confidential business

United States District Court
Northern District of California

1  information that Foxconn provided to Cisco." Dkt. 177-1 ¶ 7. He adds that Foxconn

2  would be prejudiced by publication of the information contained in that portion because

3  such publication "would give a competitor the opportunity to try to undercut Foxconn's

4  pricing" on a "key customer" (namely, plaintiff). Id. ¶ 8. Based on Wilson's declaration, it

5  appears that plaintiff did not notify Foxconn that plaintiff's disclosure included Foxconn's

6  pricing information or that plaintiff's disclosure was filed on the docket (and thus

7  potentially subject to unsealing) until January 7, 2021. Dkt. 177-2 ¶ 2.

8      The court will seal the disclosure at 39:15-40:1. Critically, Foxconn is a non-party

9  to this litigation. The court also finds that Lee adequately demonstrated that Foxconn

10  would suffer competitive harm if its information in the subject disclosure portion were

11  released. Additionally, the court notes that this information is subject to a protective order

12  that requires the parties to notify non-parties when their information is subject to

13  production. Dkt. 127 § 10(b). The record does not indicate that plaintiff attempted to

14  comply with that obligation before serving the subject disclosure on defendants.

15  Accordingly, to avoid unfairness to Foxconn, the court will maintain the seal on its

16  information.

17                          **CONCLUSION**

18      In its December 21, 2020 order, the court directed plaintiff to prepare a copy of its

19  disclosure to provide to defendant for filing on the public docket within 10 days. At the

20  eleventh hour on New Year's Eve, the day that copy was due, plaintiff moved the court to

21  stay its sealing order pending its decision on this motion for reconsideration. The court

22  granted the stay. When doing so, the court specified that plaintiff should be ready to

23  provide Plantronics with a copy of the redacted disclosure for public filing immediately

24  following the court's decision on the motion for partial reconsideration.

25      Accordingly, the court **ORDERS** plaintiff to provide Plantronics the above-

26  referenced public version of the disclosure applying redactions consistent with the sealing

27  decisions made in the court's December 21, 2020 order. The only deviation that plaintiff

28  may (and must) make from that order is to redact to the information in the disclosure at

                                12

39:15-40:1.  Plaintiff must comply with this requirement within **two days** of this order.

Within **four days** of receiving the prepared disclosure, defendant must file it on the public

docket.  At that same time, plaintiff must file a redacted version of docket 156-1, as also

called for in the December 21, 2020 order.

In the past ten months, the court has spent an inordinate amount of time and

resources on this litigation.  It will not entertain any further motions related to any of its

prior rulings.

**IT IS SO ORDERED.**

Dated: March 16, 2021

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge