RUSSELL HAYMAN (SBN 110643)
rhayman@mwe.com
JON DEAN (SBN 184972)
jdean@mwe.com
JASON D. STRABO (SBN 246426)
jstrabo@mwe.com
MICHELLE LOWERY (SBN 302882)
mslowery@mwe.com
TALA JAYADEVAN (SBN 288121)
tjayadevan@mwe.com
McDERMOTT WILL & EMERY LLP
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
(310) 277 4110

AMOL PARIKH (admitted *pro hac vice*)
amparikh@mwe.com
KATHARINE M. O'CONNOR (admitted *pro hac vice*)
koconnor@mwe.com
HAN CUI (admitted *pro hac vice*)
hcui@mwe.com
McDERMOTT WILL & EMERY LLP
444 West Lake Street, Suite 4000
Chicago, IL 60606
(312) 372 2000

Attorneys for Defendants
PLANTRONICS, INC. AND THOMAS PUORRO

## THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND

| | |
|---|---|
| CISCO SYSTEMS, INC., a California Corporation, CISCO TECHNOLOGY, INC., a California Corporation | CASE NO. 4:19-cv-07562-PJH |
| Plaintiffs, | **DEFENDANT PLANTRONICS, INC.'S NOTICE OF MOTION AND MOTION TO EXCLUDE THE TESTIMONY OF ANDREW CRAIN** |
| v. | *[Assigned to the Honorable Phyllis J. Hamilton]* |
| WILSON CHUNG, JAMES HE, JEDD WILLIAMS, and THOMAS PUORRO, individuals, and PLANTRONICS, INC. dba POLY, a Delaware Corporation | [Declaration of Michelle Lowery, filed concurrently herewith; [Proposed] Order lodged concurrently herewith] |
| Defendants. | **Hearing:**<br>Date:    December 8, 2022<br>Time:    1:30 p.m.<br>Judge:    Hon. Phyllis J. Hamilton |

**TABLE OF CONTENTS**

I. INTRODUCTION ...............................................................................................................1

II. SUMMARY OF OPINIONS ..........................................................................................4

    A.    Mr. Crain Admitted that He Did Not Consider Whether Cisco Claims the Allegedly Retained Or Deleted Documents Are Trade Secrets.........................5

    B.    Mr. Crain's Opinion That Dr. Chung Deleted "Cisco-Related" Documents Is Based on the Unreliable Quicklook Database. ..................................................6

    C.    Mr. Crain's Flawed Opinion That Dr. Chung "Likely Retained" the Seagate Drive. ........................................................................................................8

III. LEGAL STANDARD.....................................................................................................10

IV. ARGUMENT ...................................................................................................................11

    A.    Mr. Crain's Opinions Regarding Alleged Deletion Are Irrelevant and Unhelpful to a Factfinder. ..................................................................................12

    B.    The Court Should Exclude Mr. Crain's Opinions for Lack of "Fit" Because They Are Not Tied to the Allegations in the Case...........................................13

    C.    Mr. Crain's Opinions Based on the Quicklook Database Should Be Excluded Because They Are Not the Product of Reliable Principles and Methods. .......15

    D.    Mr. Crain's Opinion That Dr. Chung Retained the Seagate Drive Should Be Excluded Because it Is Unreliable. ..................................................................18

V. CONCLUSION .................................................................................................................21

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Altair Instruments, Inc. v. Telebrands Corp.*,
    19-8967 PSG (JCX), 2021 WL 5238787 (C.D. Cal. Feb. 18, 2021) .......................................12

*Barber v. United Airlines, Inc.*,
    17 F. App'x 433 (7th Cir. 2001) ...............................................................................................20

*In re Bextra & Celebrex Mktg. Sales Pracs. & Prod. Liab. Litig.*,
    524 F. Supp. 2d 1166 (N.D. Cal. Nov. 19, 2007) ....................................................................20

*Colby v. Newman*,
    No. 211CV07413SVWRZX, 2012 WL 12885118 (C.D. Cal. Nov. 20, 2012) ......................16

*Concord Boat Corp. v. Brunswick Corp.*,
    207 F.3d 1039 (8th Cir. 2000) ..................................................................................................20

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993).......................................................................................................... *passim*

*Daubert v. Merrell Dow Pharms., Inc.*,
    43 F.3d 1311 (9th Cir. 1995) (*Daubert II*) ....................................................................... *passim*

*Domingo ex rel. Domingo v. T.K.*,
    289 F.3d 600 (9th Cir. 2002) ......................................................................................10, 17, 18

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997)...................................................................................................11, 14, 15

*Guidroz-Brault v. Missouri Pacific R. Co.*,
    254 F.3d 825 (9th Cir. 2001) ....................................................................................................13

*Jinro Am., Inc. v. Secure Invs., Inc.*,
    266 F.3d 993 (9th Cir. 2001) ..............................................................................................13, 15

*Kolay Flooring Int'l, LLC v. Fuente*,
    No. 18-cv-00108, 2021 WL 4702429 (C.D. Cal. Sept. 10, 2021) ...........................................11

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999)............................................................................................................10, 11

*Mformation Techs., Inc. v. Research in Motion Ltd.*,
    No. 08-cv-4990-JW, 2012 WL 2339762, 2012 WL 2339762 (N.D. Cal. Jun. 7,
    2012) ..........................................................................................................................................12

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-In-Aid Cap Antitrust Litig.*,
  No. 14-md-02541 CW, 2018 WL 4241981 (N.D. Cal. Sep. 3, 2018) ....................................17

*United States v. Mamah*,
  332 F.3d 475 (7th Cir. 2003) ...................................................................................................15

*Van v. Language Line Servs., Inc.*,
  Case No. 14-cv-3791-LHK, 2016 WL 3566980 (N.D. Cal. Jun. 30, 2016) ...........................12

*Wyatt Tech. Corp. v. Malvern Invest., Inc.*,
  No. CV 07-8298 ABC (MANx), 2010 WL 11505684 (C.D. Cal. Jan. 25, 2010) ...................12

**Other Authorities**

Fed. R. Civ. P. 702 ......................................................................................................................10, 13

Fed. R. Evid. 403 ...............................................................................................................11, 12, 13

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on December 8, 2022 at 1:30 p.m. in the District Court for the Northern District of California, Oakland Division, Defendant Plantronics, Inc. ("Poly") will and hereby does move pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), for an order excluding the testimony of Plaintiffs Cisco Systems, Inc. and Cisco Technology, Inc.'s (collectively, "Cisco") purported computer forensic expert, Andrew Crain ("Mr. Crain").

For the reasons stated in Poly's Memorandum of Points and Authorities, Poly requests that the Court exclude Mr. Crain's testimony.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

Cisco's purported computer forensics expert, Mr. Crain, seeks to offer irrelevant, unreliable, and prejudicial opinions regarding alleged document "retention" and "deletion" by two of the individually named defendants in this case, one of whom has been dismissed from this case and who Poly terminated after only approximately 43 days on the job. The Court should exclude the proposed opinions of Mr. Crain because they fail to meet the relevance and reliability requirements of Federal Rules of Evidence 401, 402, 403, 702, and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), for the following four reasons: (1) Mr. Crain's opinions relate to discovery issues—namely, whether Dr. Wilson Chung ("Dr. Chung") or Poly allegedly spoliated evidence—and it is impermissible to argue discovery issues before a finder of fact; (2) Mr. Crain's opinions are irrelevant and prejudicial because they relate to documents that are not at issue in this trade secret action and there is no evidence they constitute trade secrets; (3) Mr. Crain's opinions regarding Dr. Chung's alleged deletion of materials when he was under an obligation to retain them are based on an Apple "Quicklook database," but Mr. Crain's report fails to explain any methodology used to test the database and Mr. Crain cannot point to any authority that the Quicklook database is a reliable forensic tool; and (4) Mr. Crain's conclusion that Dr. Chung allegedly plugged an external drive into a device in July 2019 is based on improper evidentiary cherry-picking and willful ignorance of the facts tied to this case.

*First*, Mr. Crain's opinions related to deletion are relevant if and only if Cisco is able to prove spoliation. If the Court denies either or both of Cisco's two spoliation motions—in other words, if Cisco cannot prove intentional deletion of relevant documents at a time that Dr. Chung or Poly had an obligation to retain them—then Mr. Crain cannot offer opinions on document deletion. That is a discovery matter and any opinions on a discovery matter cannot be offered to the ultimate factfinder because they are irrelevant and prejudicial. The Court should exclude Mr. Crain's opinions in Sections VII, VIII, IX, X, XI, XIII, XV, and XVI accordingly.

*Second*, Mr. Crain's opinions as a whole should be excluded as irrelevant and more prejudicial than probative because they are not helpful to a factfinder in determining whether any remaining Defendant allegedly misappropriated trade secrets. In other words, Mr. Crain's conclusions are not sufficiently tied to Plaintiffs' theory of liability in this case and, therefore, lack the necessary "fit" to be admissible. Mr. Crain's opinions are that Dr. Chung and Mr. James He ("Mr. He") allegedly retained "Cisco-related" documents and that Dr. Chung allegedly deleted "Cisco-related" documents.[1] Mr. Crain never attempted to determine, however, whether Cisco claimed any of the allegedly retained or deleted documents are trade secrets, and therefore relevant to the case.[2] Mr. Crain opined that the devices Dr. Chung allegedly retained contained thousands of "Cisco-related" documents but could identify only one as an alleged trade secret. *See* Ex. 3, Crain Dep. Tr., 58:15-19.[3] This type of testimony is irrelevant because the opinion does not fit the theory of liability alleged. It also is at risk of being extremely prejudicial, far outweighing any probative value, because it could lead a factfinder to believe that thousands of *relevant* documents were retained or deleted when Mr. Crain has made no attempt to link his opinions to relevant documents. Because Mr. Crain failed to link his opinions to the alleged theory of liability in this case—that the Defendants

---

[1] *See* Exhibit ("Ex.") 1 to Declaration of Michelle Lowery ("Lowery Decl."), Crain Report, ¶¶ 17, 18, 31-34, 36-38, 59, 79, Sections V and XIV; Ex. 3 to Lowery Decl., Crain Dep. Tr., 55:15-25; 56:7-15; 56:20-57:10; 100:24-101:6; 103:10-15; 104:23-105:6; 108:23-109:5; 113:4-15.

[2] *See* Ex. 3, Crain Dep. Tr., 56:1-3; *id.* 58:11-14 ("Q. And your report does not contain any opinions on whether any of the Cisco-related documents are alleged to be trade secrets? A. I think that's right.").

[3] Indeed, as described in Poly's motion for summary judgment, this case admittedly concerns only one alleged Cisco trade secret document that inadvertently ended up on the Poly system. *See generally* Poly's Motion for Summary Judgment, filed concurrently herewith.

allegedly misappropriated trade secrets—they should be excluded as irrelevant.  Accordingly, the Court should exclude the entirety of Mr. Crain's report on this basis.

*Third*, several of Mr. Crain's core conclusions are based on the unfounded and untested assumption that "Cisco-related" documents were deleted in October 2019 from a MacBook Pro computer that Dr. Chung retained after leaving Cisco ("the Cisco MacBook") and from Dr. Chung's Google Drive and iCloud accounts (together, "the cloud accounts").  Ex. 1, Crain Rep. ¶ 49.  Mr. Crain bases his conclusions on what he calls the Apple "Quicklook database," which shows thumbnails of documents viewed using the "Finder" application on Macintosh computers.  *See id.* ¶¶ 50-51.  Mr. Crain claims that he can accurately determine whether a document was on the Cisco MacBook on a specific date by looking at the Quicklook database.  Ex. 1, Crain Rep. ¶ 52; Ex. 3, Crain Dep. Tr., 132:14-133:7.  But, although Mr. Crain claimed for the first time during his deposition that a colleague tested the Quicklook database in this case, his report failed to describe any purported test or any methodology for analyzing the Quicklook database at all, making his opinions inherently unreliable and incapable of repetition.  *See* Ex. 3 to Lowery Decl., Crain Dep. Tr., 20:15-21:7.  Moreover, Mr. Crain does not cite to or rely on  any forensic investigation manuals or texts that recommend the Quicklook database as a source of forensic evidence. He, therefore, has no scientific basis for his untested reliance on the Quicklook database in the first place, a further independent reason to reject his untested opinions.  Because Mr. Crain's untested and unscientific reliance on the Quicklook database are core to his conclusions regarding alleged document deletion, this is not an issue of weight, but of reliability.  *Daubert,* 509 U.S. at 580 (Rule 702's requirement that the testimony "'assist the trier of fact to understand the evidence or to determine a fact in issue' goes primarily to relevance by demanding a valid scientific connection to the pertinent inquiry as a precondition to admissibility").  Accordingly, Mr. Crain's conclusions based on the Quicklook database should be excluded.  On this basis, the Court should exclude Sections VIII, IX, X, XI, and XIII of Mr. Crain's report.

*Fourth*, Mr. Crain improperly opines that Dr. Chung "likely retained" an external Seagate-branded hard drive (the "Seagate Drive") that Dr. Chung has testified he left "in his desk" at Cisco.  Ex. 3, Crain Dep. Tr., 191:3-192:6.  Dr. Chung downloaded Cisco emails and documents onto the

Seagate Drive before leaving Cisco.  Ex. 1, Crain Rep. ¶¶ 24-28, 84-87.  According to Dr. Chung, he did so in order for work materials in his Cisco Box folder to be available to his colleagues after he left the company.  *See* Ex. 5, Chung Dep. Tr., 43:14-44:1.  The Seagate Drive has not been recovered and so Dr. Chung's alleged retention of the Seagate Drive forms the basis for some of Cisco's trade secret claims.  Mr. Crain's conclusion that Dr. Chung "likely retained" the Seagate Drive, however, lacks any testable methodology and is the result of cherry-picking and *ipse dixit*. Mr. Crain's opinion ignores Dr. Chung's uncontroverted testimony and is based on Dr. Chung navigating to the registration page for the Seagate Drive through a Google redirection link in July 2019 after having visited the same link a few months earlier.  *See* Ex. 3, Crain Dep. Tr., 188:6-189:25. Mr. Crain willfully ignores the uncontroverted forensic evidence demonstrating that Dr. Chung did not plug the Seagate Drive into any device after leaving his employment at Cisco.  *Id.* at 48:4-50:7; 193:1-194:5.  Mr. Crain's opinion also willfully ignores contrary and more plausible explanations for Dr. Chung navigating to the registration page—for example, that Dr. Chung accidentally navigated to the Google redirection link while browsing to purchase an external drive in July 2019. Mr. Crain's opinion on the Seagate Drive is based on conclusory assumptions untethered to any scientific method.  As such, Mr. Crain's opinion regarding the Seagate Drive should be excluded as unreliable.  Indeed, Mr. Crain apparently believes it is his role to act as factfinder and to offer opinions regarding the "likelihood" of a defendant's state of mind, disconnected from the actual facts of the case.  This is not his role.  The Court therefore should exclude Section XII of Mr. Crain's report accordingly. Mr. Crain's opinions are not based on sufficient facts or data, are not the product of reliable principles and methods, and the probative value of the proposed testimony is substantially outweighed by the prejudice to the factfinder.

## II. SUMMARY OF OPINIONS

Mr. Crain is a Managing Director for Berkeley Research Group, LLC ("BRG").  *See* Ex. 1, Crain Report, ¶ 6.  Cisco's counsel retained Mr. Crain as a computer forensics consultant to examine forensic images, and various other information, about the devices and cloud accounts that Dr. Chung and Mr. He allegedly used to download and store information before they left Cisco.  *Id.* at ¶ 3. Mr. Crain was retained to analyze whether and when Dr. Chung and Mr. He copied, opened, and/or

deleted information from those devices and cloud accounts.  *Id.*  Mr. Crain's expert report offers opinions on: (a) whether Dr. Chung and Mr. He took / retained Cisco-related documents after leaving their employment at Cisco; (b) whether Dr. Chung and Mr. He deleted information from those devices and cloud accounts; (c) when they deleted such information; (d) what information they deleted; and (e) what information was lost as a result.  *Id.*

**A.**    **Mr. Crain Admitted that He Did Not Consider Whether Cisco Claims the Allegedly Retained Or Deleted Documents Are Trade Secrets.**

Mr. Crain opines that Dr. Chung and Mr. He took and retained "Cisco-related" materials.  *See* Ex. 1, Crain Report, ¶¶ 17, 22.  Additionally, Mr. Crain opines that Dr. Chung deleted "Cisco-related" materials."  *Id.* at ¶¶ 19-20.

Mr. Crain failed to ask or investigate whether any of the documents allegedly retained or deleted were documents that Cisco claims are trade secrets.  *See* Ex. 3, Crain Dep. Tr., 58:11-14, 58:23-59:2 ("Q. And your report does not contain any opinions on whether any of the Cisco-related documents are alleged to be trade secrets? A. I think that's right.").  Mr. Crain did not determine whether any documents Dr. Chung allegedly opened on his Poly laptop are alleged trade secrets.  *Id.*, 118:11-17 ("Q. These are the only two documents that you have identified that Dr. Chung opened on a Poly laptop via his iCloud account. Right?  A. Correct.  Q. And you don't know whether these documents are alleged to be trade secrets?  A. I don't.").  Mr. Crain did not identify which of the files and folders allegedly retained on Dr. Chung's iCloud account are alleged trade secrets.  *Id.*, 102:2-6 ("Q. You are not providing any opinion, are you, on which of the alleged 381,832 files and folders contain alleged trade secrets?  A. I think that's correct.  I don't have a specific finding like without reconciliation."); *see also id.*, 103:10-104:22 ("Q. And you wouldn't be surprised that these five documents do not appear on Cisco's trade secret disclosure, would you? . . . A. I don't know that one way or another . . . . Q. And you didn't ask whether these five documents are on Cisco's trade secret disclosure?  A. I don't think I did.").  Mr. Crain did not consider whether any of the materials allegedly retained in Dr. Chung Evernote account are alleged trade secrets.  *Id.*, 109:16-22 ("Q. You are not aware of Cisco's claiming any information contained in these Evernote thumbnails as trade secrets in this case, are you? A. I'm not aware of that. I just don't know.  Q. And you didn't

ask?  A. I don't recall specifically asking if the stuff was a claimed trade secret, no.").  And Mr. Crain did not try to determine whether any of the documents allegedly retained by Mr. He are alleged trade secrets.  *Id.*, 200:17-21 ("Q. And you didn't conduct any analysis to determine whether the files allegedly downloaded to this drive are documents or files that Cisco is claiming as trade secrets? A. Correct.).   In fact, during his deposition, Mr. Crain identified only one document—the "EndpointsandAccessories.xlsx" document—as one that he is aware of containing alleged trade secrets. *Id.*, 266:22-267:1.

Mr. Crain did not even try to determine what portion of the materials allegedly deleted are even "Cisco-related," let alone actually contain alleged trade secrets.  For example, Mr. Crain acknowledged that at least some of the allegedly deleted materials are irrelevant personal files, but he did not attempt to determine what portion of the materials were unrelated.[4]

## B.   Mr. Crain's Opinion That Dr. Chung Deleted "Cisco-Related" Documents Is Based on the Unreliable Quicklook Database.

Mr. Crain relies on a program entitled "Quicklook"[5] to opine that Dr. Chung deleted "Cisco-related" materials in October 2019 when he was on litigation hold and immediately before handing over the Cisco MacBook for imaging.  The Quicklook database was included as part of the Macintosh operating system on the Cisco MacBook, which generates and stores thumbnail images of file content.  *See* Ex. 1, Crain Report, ¶ 50.  A user can right-click on a file and select "Quicklook" in order to preview the contents of the file without actually opening the file.  *Id.* at ¶ 51.  Mr. Crain opines that the Quicklook database records the "last accessed" date/time of each thumbnail, indicating the most recent time the Quicklook service "retrieved" or "checked" the stored thumbnail

---

[4] Mr. Crain claims there was a "data drop" of 269 GB on the MacBook Pro in October 2019.  Ex. 1, Crain Report ¶ 43.  Although he acknowledged that the data drop was due in part to Dr. Chung delinking personal accounts from the computer, including Dr. Chung's wife's accounts, Mr. Crain did not determine what portion of the drop was attributable to each such account.  Ex. 3, Crain Dep. Tr., 126:12-18 (Q. "[Y]ou noticed in reviewing the unified logs that Dr. Chung also removed his wife's personal e-mail accounts?  A. "… yes."; 127:23-128:7: Q. Nowhere in your report do you discus how much data were in those accounts. Right?  A. Correct. I'm not totaling data volumes by account.").

[5] The parties have interchangeably used the term "Quicklook," "Quicklooks," or "QuickLook," in reference to the Apple Quicklook database.

for each file on the computer.  *Id.* at ¶ 52.  According to Mr. Crain, a document must be on the computer for the "last accessed" date/time to update, and, therefore, the Quicklook tool will show whether a document was on a computer as of a certain date. Ex. 1, Crain Report ¶ 52.

The Quicklook database is a core basis for several opinions in Mr. Crain's report.  First, relying on the Quicklook database, Mr. Crain opines that "Cisco-related" files that were present on the computer on October 11, 2019 were no longer present when the Cisco MacBook was forensically imaged on October 22, 2019.  *Id.* at ¶¶ 54-56; Ex. 3, Crain Dep. Tr., 59:17-23, 60:23-61:11, 61:23-62:3 ("Q. So the basis for your opinion regarding the files that Dr. Chung allegedly deleted is a comparison between the Quicklook database on the MacBook with the forensic image of the MacBook created in October of 2019? A. Correct.").  Second, Mr. Crain then opines, based on the Quicklook database, that Dr. Chung deleted "Cisco-related" files from his Google Drive account. Ex. 1, Crain Report ¶ 70; Ex. 3, Crain Dep. Tr., 75:22-76:21.  Third, Mr. Crain relies on Quicklook to claim Dr. Chung deleted "Cisco-related" documents from his Apple iCloud account at an improper time (after he was on litigation hold but before Digital Mountain accessed the account).  Ex. 1, Crain Report ¶ 78; Ex. 3, Crain Dep. Tr., 75:22-76:21.  Fourth, Mr. Crain relies on the Quicklook database to opine that, as of October 22, 2012, Dr. Chung's Evernote cloud-based account contained "Cisco-related" content.  Ex. 1, Crain Report  ¶ 36-37; Ex. 3, Crain Dep. Tr., 109:7-15.

Mr. Crain's report does not discuss any methodology used to analyze or test the Quicklook database or, for that matter, any test of the Quicklook database at all.  During his deposition, Mr. Crain claimed that his colleague conducted Quicklook testing, but admitted that the test was "not discussed in the report." Ex. 3, Crain Dep. Tr., 20:15-21:7; 23:5-7.  Mr. Crain testified that when he refers to the Quicklook database on a MacBook, he is talking about the SQLite database for Quicklook.  *Id.* at 53:13-55:7.  Mr. Crain admitted, however, that his report does not describe any tool he used to review the SQLite database for Quicklook.  *Id.* ("Q. You can't point me to any part in your report where you describe the tool you used to analyze the SQLite database for Quicklooks? A. I don't believe I can.").  In addition to not describing what Quicklook testing was conducted or what tool was used to review the SQLite database for Quicklook, Mr. Crain also admitted that his report does not describe what table he reviewed within the Quicklook database.  *Id.*

1    Mr. Crain further does not point to any scientific texts or materials that describe the Quicklook

2 database as a reliable tool to determine whether a document was on a computer as of a certain date.

3 In fact, Mr. Crain does not cite to any forensic investigation manuals or texts that recommend the

4 Quicklook database as a source of forensic evidence whatsoever.  *Id.* ("Q. You don't cite to any

5 forensic investigation manuals that recommend using . . . the Quicklook database as a source of

6 forensic evidence, do you?  A. I don't think so.  Q. And in your report, you don't cite to any sources

7 discussing the use of the Quicklook database as a form of forensic evidence. Right?  A. I think that's

8 right.").  Poly's expert, Dr. Easttom, likewise was unable to identify any forensic texts or manuals

9 indicating the Quicklook database can be used as a reliable forensic tool.  *See* Ex. 4, Easttom Report

10 ¶ 171.

11   **C.**   **Mr. Crain's Flawed Opinion That Dr. Chung "Likely Retained" the Seagate Drive.**

12    Cisco and Mr. Crain claim that Dr. Chung downloaded "hundreds of thousands" of documents

13 onto the Seagate Drive during the month of February 2019.  Ex. 1, Crain Report ¶ 21; Ex. 8,

14 POLY00043217 (9/9/19 Letter from L. McKnew to M. Huser).  This claim is based on purported

15 reporting from a software system called "Code42" that records information regarding documents that

16 Cisco employees download onto external devices.  *See* Ex. 3, Crain Dep. Tr., 77:23-78:8; Ex. 7,

17 Gravel Dep. Tr., 72:3-74:13.

18    Mr. Crain opines that Dr. Chung had the Seagate Drive "in his possession at least as of July

19 of 2019."  *See* Ex. 1, Crain Report, ¶¶ 21, 23-29.  Mr. Crain's "sole basis for [his] opinion that

20 Dr. Chung possessed the Seagate drive at least as of July 2019, is that Dr. Chung navigated to a

21 device registration link for a Seagate Drive with the same serial number."  *See* Ex. 3, Crain Dep. Tr.,

22 79:25-80:24.  Meanwhile, Dr. Chung testified he left the Seagate Drive in his desk at Cisco.  Ex. 5,

23 Chung Tr., 44:1-4.  When asked about the Seagate Drive, Dr. Chung testified that he downloaded

24 Cisco documents on to the Seagate Drive to make files stored on his Box account and in his email

25 available to his colleagues after he departed Cisco.  *See* Ex. 5, Chung Dep. Tr., 43:14-44:1.

26    Mr. Crain wholly ignored evidence indicating reasons for why Dr. Chung's Google Chrome

27 browsing history showed the visit to the Seagate Drive registration link in July 2019.  The URL that

28 Dr. Chung visited in July 2019 starts with "www.google.com" and appears to be a Google redirection

link—meaning Dr. Chung was directed to the website from a Google search.  *See* Ex. 3, Crain Dep. Tr., 188:6-189:25; *see also* Ex. 6, Summary of Seagate URLs (Ex. 4 to Finch Dep.).  According to Mr. Crain, he replicated the Seagate registration process by "purchasing an identical make/model Seagate Expansion hard drive," connected it to his test computer, and double clicked the "Start_Here_Win.exe" application that was pre-loaded on the Seagate device. Ex. 1, Crain Report, ¶ 86; *See* Ex. 3, Crain Dep. Tr., 188:6-189:25.  This process directed him to a registration URL link that began "https://lyveint.seagate.com," not "www.google.com." Ex. 3, Crain Dep. Tr., 188:14-23 ("Q. And that registration link begins https:/lyveint.seagate.com. Right?  A. Correct.  Q. It does not begin www.Google.com, does it?  A. No.").  Mr. Crain agreed the URL he navigated to in his test differed from the Google redirection link that Dr. Chung navigated to in July 2019.  *See id.*, 188:6-189:25.

Moreover, Mr. Crain did no analysis in his report to determine whether the registration link would remain "cached," or still available on Google Chrome when a user begins to type into the search bar.  *Id.* at 189:12-25 ("Q. You did not look . . . [at] whether the registration link for the drive you purchased was cached in Google Chrome, did you?  A. I don't remember doing that, no.  Q. And certainly it's not in your report. Right?  A. Right.").  Instead, he simply jumped to the *expert conclusion* that Dr. Chung retained the Seagate drive and plugged it into one of his devices.  Ex. 1, Crain Report, ¶ 21.  Mr. Crain also agreed that he did not consider Dr. Chung's other Google browsing history on or around the same day, showing additional visits to websites that appear to be pages to purchase an external drive.  Ex. 3, Crain Dep. Tr. 190:11-192:17.

The forensic evidence indicates the Seagate Drive was not connected to the Cisco MacBook after January 2019 and never was connected to one of Dr. Chung's Poly laptops.  Macintosh computers have forensic artifacts called "unified logs" that show, among other things, when USB drives connect to the computer.  *See* Ex. 3, Crain Dep. Tr., 193:7-15.  The Cisco MacBook unified logs do not show a connection after January 2019.  *See* Ex. 4, Easttom Report ¶ 78.  Mr. Crain agreed the unified logs would contain information showing USB drives being plugged into a computer, but did not include any discussion of them in his report.  Ex. 3, Crain Dep. Tr., 193:2-6 ("Q. And your report contains no analysis of when the unified logs show a connection to the Seagate expansion

1   drive. Right?  A. . . . I don't remember where that is."); *Id.*, 194:2-5 ("Q. And your report does not

2   identify a connection of the Seagate expansion drive to the MacBook Pro in July, 2019?"  A. That's

3   correct.").  Mr. Crain further agreed that the system files produced for Dr. Chung's Poly laptops did

4   not show any connection to the Seagate Drive.  *Id.*, 48:4-50:7, 238:9-22.

5   ### III. LEGAL STANDARD

6       Expert testimony is admissible if the party offering such evidence shows that the testimony

7   is both reliable and relevant.  Fed. R. Evid. 702; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147

8   (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590–91 (1993).  Federal Rule of

9   Evidence 702 permits expert testimony if "(a) the expert's scientific, technical, or other specialized

10  knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b)

11  the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles

12  and methods; and (d) the expert has reliably applied the principles and methods to the facts of the

13  case." Fed. R. Evid. 702.  The proponent of expert testimony has the burden to establish admissibility

14  under Rule 702 by a preponderance of the evidence.  *See Daubert*, 509 U.S. at 592 & n.10; Notes of

15  Advisory Committee on 2000 Amendments.

16      Rule 702 and *Daubert* have two basic requirements: reliability and relevance.  *Daubert*, 509

17  U.S. at 589; *Kumho Tire Co.*, 526 U.S. at 147–149.  "In *Daubert*, the Supreme Court gave a non-

18  exhaustive list of factors for determining whether scientific testimony is sufficiently reliable to be

19  admitted into evidence, including: (1) whether the scientific theory or technique can be (and has

20  been) tested; (2) whether the theory or technique has been subjected to peer review and publication;

21  (3) whether there is a known or potential error rate; and (4) whether the theory or technique is

22  generally accepted in the relevant scientific community." *Domingo ex rel. Domingo v. T.K.*, 289

23  F.3d 600, 605 (9th Cir. 2002). The Supreme Court later held that "a trial court *may* consider one or

24  more" of the *Daubert* factors in determining the reliability of nonscientific expert testimony. *Kumho*

25  *Tire Co.*, 526 U.S. at 141.

26      In addition to determining reliability, the court "must ensure that the proposed expert

27  testimony is 'relevant to the task at hand,' i.e., that it logically advances a material aspect of the

28  proposing party's case." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995)

(*Daubert II*) (quoting *Daubert*, 509 U.S. at 597).  This is known as the "fit" requirement, meaning that the expert testimony must not only be based on reliable science but must also "fit" the particular facts of the case.  Lack of "fit"—or tying of an expert's opinion to the facts of case—means that the expert's opinion is "connected to existing data only by the *ipse dixit* of the expert."  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also id.* at 152 (Breyer, J., concurring); *Kumho Tire Co.*, 526 U.S. at 157.

Even if a court concludes that expert testimony is relevant and reliable, it may still exclude the testimony if the probative value of such testimony is substantially outweighed by the risk of unfair prejudice, confusion of the issues, or undue consumption of time.  Fed. R. Evid. 403.  Such unsubstantiated opinions are, by definition, not based on sufficient facts or data rendering them unreliable and thus, inadmissible.  *See*, *e.g.*, *Kolay Flooring Int'l, LLC v. Fuente*, No. 18-cv-00108, 2021 WL 4702429, at *2 (C.D. Cal. Sept. 10, 2021) (excluding expert testimony on basis that any potential relevance is "'substantially outweighed' by the dangers of 'misleading the jury,' 'confusing the issues,' and 'wasting time.' Fed. R. Evid. 403."); *see also Daubert*, 509 U.S. at 595 (Federal Rule of Evidence 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury").

## IV. ARGUMENT

Mr. Crain's opinions fail to meet the relevance and reliability requirements of Federal Rule of Evidence 702 and *Daubert*, 509 U.S. at 579, for four reasons.  First, Mr. Crain's opinions about deletion relate to discovery, not liability, and should be excluded.  Second, Mr. Crain's opinions should be excluded in their entirety for lack of "fit" or relevance because they are not tied to the allegations of trade secret misappropriation.  Third, Mr. Crain's opinions that rely on the Quicklook database should be excluded because his report contains no testable methodology and Mr. Crain cannot point to any text or source indicating the Quicklook database is a reliable forensic tool for determining when documents were on a MacBook computer.  Fourth, Mr. Crain's opinion that Dr. Chung retained the Seagate Drive should be excluded because his methodology is unreliable, the opinion is the result of cherry-picking and *ipse dixit*.

**A.**     **Mr. Crain's Opinions Regarding Alleged Deletion Are Irrelevant and Unhelpful to a Factfinder.**

Mr. Crain's opinions regarding alleged document deletion are tied to Cisco's Rule 37 discovery motions on spoliation.  As described fully in Poly's opposition to both of Cisco's spoliation motions, there is no basis for the Court to find there has been any spoliation.  *See generally* Dkt. Nos. 238 and 242. Whether any intentional deletion occurred is a discovery issue.  Discovery matters are not proper to bring before a factfinder because they are irrelevant and prejudicial unless there has been a specific finding of spoliation that would make them relevant.  *See*, *e.g*., *Wyatt Tech. Corp. v. Malvern Invest., Inc*., No. CV 07-8298 ABC (MANx), 2010 WL 11505684, *14-16 (C.D. Cal. Jan. 25, 2010) (in trade secret case, excluding evidence of alleged spoliation because plaintiff failed to prove spoliation was warranted); *see also Altair Instruments, Inc. v. Telebrands Corp.*, No. CV 19-8967 PSG (JCX), 2021 WL 5238787, at *2 (C.D. Cal. Feb. 18, 2021) ("Generally, any discovery ruling would be irrelevant to any fact necessary to Plaintiff's case and would only stand to confuse the jury and prejudice Defendant."); *Van v. Language Line Servs., Inc*., Case No. 14-cv-3791-LHK, 2016 WL 3566980, at *4 (N.D. Cal. Jun. 30, 2016) (excluding evidence of discovery disputes under Federal Rule of Evidence 403 because the disputes did not bear on the merits of the plaintiff's claims, and were therefore not relevant); *Mformation Techs., Inc. v. Research in Motion Ltd*., No. 08-cv-4990-JW, 2012 WL 2339762, at *2 (N.D. Cal. Jun, 7, 2012) ("Evidence of the parties' discovery disputes are not relevant to the questions of patent validity or infringement, and thus should not be presented to the jury.").  As the court stated in *Wyatt Technology*, discovery disputes cannot be presented to the finder of fact because "[n]ot only would they waste the jury's time and likely confuse the true issues in this case, Fed. R. Evid. 403, but the Federal Rules of Civil Procedure provide plenary guidelines governing discovery disputes."  2010 WL 11505684, at *16.  "A trial is not the appropriate forum in which to air these grievances and both parties are precluded from bringing any discovery disagreements to light at trial." *Id.*  Because Cisco's spoliation motions lack merit, there is no basis for the Court to permit testimony to a factfinder related to alleged deletion.  Mr. Crain's opinions regarding deletion should therefore be excluded.

**B.**    **The Court Should Exclude Mr. Crain's Opinions for Lack of "Fit" Because They Are**
**Not Tied to the Allegations in the Case.**

Mr. Crain's vague opinions that Dr. Chung and Mr. He took and retained "Cisco-related" materials and that Dr. Chung allegedly deleted "Cisco-related" materials are completely at odds with Cisco's claims of trade secret misappropriation, and the Court should exclude them as irrelevant. The Federal Rules of Evidence and federal case authority are consistent and unambiguous—to be relevant, and therefore admissible, an expert's opinion must be tied to the facts of the underlying case. *See*, *e*.*g*., *Daubert*; 509 U.S. at 591; *Guidroz-Brault v. Mo. Pac. R. Co*., 254 F.3d 825, 830-31 (9th Cir. 2001); Fed. R. Civ. P. 702. Rule 702's second prong—that the testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue"—concerns relevancy, or "fit." *See Daubert*, 509 U.S. at 591. The trial court "must ensure that the proposed expert testimony . . . logically advances a material aspect of the proposing party's case." *Daubert II*, 43 F.3d at 1315. Expert opinion testimony is relevant if the knowledge underlying it has a "valid . . . connection to the pertinent inquiry." *See Daubert*, 509 U.S. at 591-92. A court may also exclude expert testimony if the probative value of such testimony is substantially outweighed by the risk of unfair prejudice, confusion of the issues, or undue consumption of time. Fed. R. Evid. 403. Lack of "fit" can cause this risk because irrelevant opinions can lead a jury to believe there is expert testimony backing up the claims in the case when there is not. *See*, *e*.*g*., *Jinro Am., Inc. v. Secure Invs., Inc*., 266 F.3d 993, 1005 (9th Cir. 2001) ("'Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than lay witnesses.' *Daubert*, 509 U.S. at 595.").

Cisco has brought claims of trade secret misappropriation. But Mr. Crain made no attempt to tie or "fit" his opinion to a case of trade secret misappropriation. Instead, his opinions concern Dr. Chung and Mr. He's alleged retention of *any materials at all*—and is not focused on the purported retention of any Cisco trade secrets, let alone the alleged Cisco trade secrets at issue in this case. Instead, he seeks to vaguely opine as to Mr. He and Dr. Chung's alleged retention and subsequent deletion of "Cisco-related" materials. *See* Ex. 1, Crain Report, ¶¶ 17, 19-20, 22. Mr. Crain admitted

that "[n]ot all Cisco-related documents are Cisco trade secrets," but failed to ask whether any of the documents allegedly retained or deleted were trade secrets, and therefore relevant to the case.  *See* Ex. 3, Crain Dep. Tr., 56:1-3; 58:11-14 ("Q. And your report does not contain any opinions on whether any of the Cisco-related documents are alleged to be trade secrets?  A. I think that's right."); *Id.*, 118:11-17 "Q. These are the only two documents that you have identified that Dr. Chung opened on a Poly laptop via his iCloud account. Right?  A. Correct.  Q. And you don't know whether these documents are alleged to be trade secrets?  A. I don't."); *Id.*, 102:2-6 ("Q. You are not providing any opinion, are you, on which of the alleged 381,832 files and folders contain alleged trade secrets?  A. I think that's correct. I don't have a specific finding like without reconciliation."); *Id.*, 103:10-104:22 ("Q. And you wouldn't be surprised that these five documents do not appear on Cisco's trade secret disclosure, would you? . . . A. I don't know that one way or another . . . . Q. And you didn't ask whether these five documents are on Cisco's trade secret disclosure?  A. I don't think I did."); *Id.*, 109:16-22 ("Q. You are not aware of Cisco claiming any information contained in these Evernote thumbnails as trade secrets in this case, are you?  A. I'm not aware of that. I just don't know.  Q. And you didn't ask?  A. I don't recall specifically asking if the stuff was a claimed trade secret, no."); *Id.*, 200:17-21 ("Q. And you didn't conduct any analysis to determine whether the files allegedly downloaded to this drive are documents or files that Cisco is claiming as trade secrets?  A. Correct.).

These opinions are not "sufficiently tied to the facts" to aid the finder of fact.  *Daubert*, 509 U.S. at 591 (citations omitted).  In *General Electric Co. v. Joiner*, the Supreme Court affirmed the district court's decision to exclude expert testimony where the opinion offered was "so dissimilar to the facts presented" in the case that the only thing connecting the opinion to the facts was "the *ipse dixit* of the expert." 522 U.S. at 144.  Similarly, here, none of Mr. Crain's opinions regarding "Cisco-related" materials suggest any defendant wrongfully acquired, disclosed, or used Cisco's *trade secrets*.  Mr. Crain can assume liability—he is not an expert on whether materials are alleged trade secrets—but he must try to determine whether the materials he alleged were taken or deleted are actually alleged trade secrets and, therefore, connected to the facts of the case.  Without a determination that the documents at issue in Mr. Crain's report are alleged trade secrets, there is an "analytical gap" missing that is needed to link Mr. Crain's opinions to the facts.  *Id*.  Because Mr.

Crain did not attempt to bridge that "analytical gap," his opinions are completely unhelpful to determining the relevant question of whether any wrongdoing occurred in this case. *See id.* ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."); *see also Daubert*, 509 U.S. at 591 (expert testimony must be "sufficiently tied to the facts" of the case in order to aid the fact-finder) (citation omitted); *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003) ("It is critical under Rule 702 that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support.").

Mr. Crain's opinions that Dr. Chung and Mr. He took "Cisco-related" materials and that Dr. Chung deleted "Cisco-related" materials are irrelevant because they are not helpful to a factfinder in determining whether any remaining Defendant allegedly misappropriated Cisco's trade secrets. Rather, they help the jury determine only whether completely unrelated materials—not trade secrets—were retained or deleted. In fact, Mr. Crain has not even defined in his report (or anywhere for that matter) what "Cisco-related" means.

Because they lack any connection to the factual allegations in the case, Mr. Crain's opinions also are more prejudicial than they are probative. For example, Mr. Crain's opinions regarding Dr. Chung retaining "hundreds of thousands" of "*Cisco-related*" files, if permitted, risks confusing the jury that Dr. Chung actually is alleged to have retained hundreds of thousands of *trade secrets*. Ex. 1, Crain Report, ¶¶ 21, 80. This is not only unhelpful, but also unfairly prejudicial because it could lead a finder of fact to believe that some wrongdoing occurred related to the alleged trade secrets when Mr. Crain's opinion does not make that connection. *See*, *e.g.*, *Jinro Am., Inc*., 266 F.3d at 1005 ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.") (internal citation omitted). Accordingly, Mr. Crain's opinions should be excluded for lack of "fit" because they are not tied to the allegations in the case, and, as such, the risk of unfair prejudice substantially outweighs any probative value.

**C.**   **Mr. Crain's Opinions Based on the Quicklook Database Should Be Excluded Because They Are Not the Product of Reliable Principles and Methods.**

Mr. Crain's opinions based on the Quicklook database should be excluded as unreliable because Mr. Crain does not describe his methodology for purportedly testing and analyzing this

database, and therefore, his opinions are incapable of being tested and verified.  *See Daubert II*, 43 F.3d at 1316 (in determining the reliability of proffered expert testimony, the district court's task "is to analyze not what the experts say, but what basis they have for saying it").  Mr. Crain's opinion, therefore, fails the reliability prong of the *Daubert* test and, in particular, his report contains *no* description of any methodology whatsoever—let alone a methodology based on reliable principles and methods.  To be reliable, an expert opinion must "explain the methodology the experts followed to reach their conclusions" or "point to an external source to validate that methodology."  *Daubert II*, 43 F.3d at 1319 (finding opinion inadmissible for lack of reliability); *see also Colby v. Newman*, No. 211CV07413SVWRZX, 2012 WL 12885118, at *6 (C.D. Cal. Nov. 20, 2012) (granting motion to exclude forensic accountant's testimony because the expert gave an "inadequate explanation of [his] methodology," thereby providing "an independent basis for excluding [his] testimony").  Mr. Crain has failed to do either.

Mr. Crain's claim that the Quicklook database is a reliable source to determine a date certain on which documents were located on a computer led to no fewer than four separate conclusions: (1) Dr. Chung deleted files from the Cisco MacBook Pro on October 11, 2019 (Ex. 1, Crain Report, ¶¶ 54-55); (2) Dr. Chung deleted files from his Google Drive account during October 2019 (*id*. at ¶ 70); (3) Dr. Chung deleted hundreds of thousands files from his iCloud account between August 5, 2019 and October 25, 2019 (*id*. at ¶¶ 78, 80); and (4) Dr. Chung's Evernote cloud-based account contained Cisco-related content in October 2019 (*id*. at ¶ 36).

Mr. Crain did not "explain the methodology" he used to reach his conclusion or "point to any external source to validate [his] methodology."  *See Daubert II*, 43 F.3d at 1319.  Mr. Crain admitted, in fact, that his report did not describe any testing of the Quicklook database whatsoever.  Ex. 3, Crain Dep. Tr., 20:22-25 ("Q. Specifically the testing. Where is the discussion of that in your report?  A. I'm not sure that it is discussed in the report); *see also* 21:1-7.  Mr. Crain also failed to describe what tool he used to conduct his testing.  (*Id*. at 54:2-4 "Q. Your report does not describe what tool you used, does it?  A. I don't know that it does.").  Mr. Crain acknowledged that the SQLite database for Quicklook is the database that he reviewed, and also that the database has a number of tables in it, but that his report did not describe what table(s) he reviewed.  *Id*. at 54:14-16.

Because Mr. Crain's report did not describe any testing of the Quicklook database, *Id.*, 20:22-25, Poly's computer forensics expert, Dr. Easttom, was unable to verify what Mr. Crain allegedly did, if anything, because nothing is described in his report.  Dr. Easttom, therefore, could not replicate or verify Mr. Crain's purported conclusions, which itself renders the opinion unreliable.  *See* Ex. 4, Easttom Report ¶¶ 14, 22, 171.  Mr. Crain's untested opinions therefore do not and cannot provide any reliable information regarding whether and what data Dr. Chung allegedly deleted from the Cisco MacBook or the various cloud storage accounts.  *See*, *e.g.*, *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-In-Aid Cap Antitrust Litig.*, No. 14-md-02541 CW, 2018 WL 4241981, at *5-6 (N.D. Cal. Sep. 3, 2018) (excluding expert who did not examine existing data in the case to "quantify, test, evaluate, or confirm" any of his opinions).[6]

In addition to being unreliable because it is not based on any testable methodology, the lack of any methodology means Mr. Crain's Quicklook-based opinions are *ipse dixit*, or the expert's say-so based on guesswork.  *See, e.g., Domingo ex rel. Domingo v. T.K.,* 289 F.3d 600, 607 (9th Cir.2002) (affirming the exclusion of the *ipse dixit* testimony of plaintiff's expert that was not based upon objective, verifiable evidence).  Mr. Crain claimed in his deposition that he "already knew" that Quicklook indicates a document was on a computer as of a certain date because he has worked with the database before.  *Id.* at 138:20-25 ("Q. You didn't perform any experiments to verify this assertion that are in your report, did you?  A. Not in this case. I've – I already knew that.  I've dealt with Quicklook over dozens or hundreds of matters for many years.").  But this is not enough—it is Mr. Crain's say-so alone—and should be excluded as inadmissible *ipse dixit*.  *See Daubert II*, 43 F.3d at 1319 (noting that the trial court's gate-keeping function requires more than simply taking the expert's word for it.").

Finally, Mr. Crain fails to cite to any forensic text, peer reviewed article, or objective source indicating that the Quicklook database is a reliable forensic tool at all, let alone a tool that can be used to determine whether a document was on a computer as of a certain date.  Mr. Crain admitted

---

[6] Dr. Easttom's independent tests, on the other hand, revealed that the Quicklook databased updated the "last accessed" date for documents that had not been on his test computer for years.  *See* Ex. 4, Easttom Report ¶¶ 170-171.

in his deposition that he did not cite to any forensic investigation manuals that recommend using the Quicklook database as a source of forensic evidence. Ex. 3, Crain Dep. Tr., 54:24-55:3. Moreover, he did not cite to any sources in the report discussing the use of the Quicklook database as a form of forensic evidence. *Id*. at 55:4-7. In *Domingo*, the Ninth Circuit excluded as *ipse dixit* an expert opinion where the report did not cite to any objective source, peer reviewed journals, clinical tests, establishment of an error rate, or other evidence to show that the proffered expert followed a valid, scientific method in developing his theory. 289 F.3d at 606. Like the excluded expert in *Domingo*, Mr. Crain's opinions based on the Quicklook database are not based on any objective source, peer reviewed article, verifiable methodology, or tests. Mr. Crain could not cite to any forensic texts or manuals that recommend Quicklook as a forensic tool. Ex. 3, Crain Dep. Tr., 54:55:7. Nor could Mr. Crain explain why or how the Quicklook "last accessed" date even updates. *Id*., 155:18-20 ("Q. You don't know why the [Quicklook] 'thumbnail last accessed' dates update, do you? A. I don't know . . . I think that's fair . . . ."). Moreover, the only literature cited by the forensic experts in this case did not identify Quicklook as a reliable tool. *See* Ex. 4, Easttom Report ¶ 171. Accordingly, without an established scientific or academic basis for his blind reliance on the Quicklook database, the entire premise for his opinion regarding alleged document deletion by Dr. Chung is wholly unreliable. Additionally, the lack of any relevant resource or text identifying the Quicklook database as a reliable tool further highlights why it was important for Mr. Crain to have performed testing, and have explained both the test and his methodology in sufficient detail for it to be repeated. The Court should exclude Mr. Crain's opinions based on the Quicklook database.

**D.**     **Mr. Crain's Opinion That Dr. Chung Retained the Seagate Drive Should Be Excluded Because it Is Unreliable.**

Mr. Crain's opinion that Dr. Chung "likely retained" the missing Seagate Drive allegedly containing Cisco trade secrets likewise should be excluded as unreliable because it lacks any testable methodology and is the result of cherry-picking and *ipse dixit*. *See* Ex. 1, Crain Report, ¶¶ 21, 23-29. Cisco's basis for claiming that Dr. Chung downloaded documents onto the Seagate Drive is its Code42 software, which, among other things, logs when employees connect a USB drive to Cisco devices and also logs when employees download documents onto those USB drives. *See* Ex. 1, Crain

1  Report, ¶ 26; Ex. 7, Gravel Dep. Tr., 265:10-22; 322:16-323:14.  Dr. Chung has claimed all along

2  that he did not retain the Seagate Drive.  Rather, he left it "on his desk" at Cisco so that his former

3  colleagues would still have access to his Cisco work-related materials after his departure.  *See* Ex. 5,

4  Chung Dep. Tr., 43:14-44:1.  Mr. Crain had access to a forensic image of the Cisco MacBook.  The

5  so-called "unified logs" from the forensic image of the Cisco MacBook show when an external drive

6  is connected.  *See* Ex. 3, Crain Dep. Tr., 192:18-193:1; Ex. 4 Easttom Report, ¶ 155.  Here, the unified

7  logs do not show a connection on the MacBook Pro to the Seagate Drive after January 2019.  *See* Ex.

8  3, Crain Dep. Tr., 193:7-15; Ex. 4 Easttom Report, ¶ 78.  Mr. Crain also had access to system files

9  from Dr. Chung's Poly work laptops—none of those computers show a connection to the Seagate

10  Drive.  Ex. 3, Crain Dep. Tr.,  48:4-50:7, 238:9-22.

11      Despite the lack of forensic evidence that the MacBook connected to the Seagate Drive (or

12  that any of Dr. Chung's Poly computers connected to the Seagate Drive for that matter), Mr. Crain

13  somehow concluded that Dr. Chung "likely retained" the Seagate Drive because of one line in Dr.

14  Chung's Google Chrome browsing history.  Ex. 1, Crain Report, ¶ 84.  According to Mr. Crain, the

15  "sole basis" for his opinion is that Dr. Chung navigated to a Google redirection link, which then took

16  him to the Seagate Drive registration page, in July 2019.  *See* Ex. 3, Crain Dep. Tr., 79:25-80:24.

17  Mr. Crain reached his conclusion despite admitting that Dr. Chung appeared to navigate to a Google

18  redirection link, which was different in kind from the link Mr. Crain navigated to using a test Seagate

19  expansion drive.  *Id.*, 188:6-189:25.  Moreover, Mr. Crain admitted that he did no analysis in his

20  report to determine whether the registration link would remain cached in Google Chrome, causing

21  Dr. Chung to potentially click on the Google redirection link unintentionally.  *Id.*, 189:12-25 ("Q.

22  You did not look . . . into whether the registration link for the drive you purchased was cached in

23  Google Chrome, did you?  A. I don't remember doing that, no.  Q. And certainly it's not in your

24  report. Right?  A. Right.").

25      Mr. Crain's Seagate Drive opinion should be excluded because: (1) it is based on an unreliable

26  methodology; and (2) is the result of improper cherry-picking.  First, Mr. Crain's "methodology" in

27  reaching his conclusion is unsound and, therefore, unreliable.  In determining the reliability of

28  proffered expert testimony, the district court's task "is to analyze not what the experts say, but what

basis they have for saying it." *Daubert II*, 43 F.3d at 1316.  Here, Mr. Crain simply has no basis to claim Dr. Chung "likely retained" the Seagate Drive and, therefore, his opinion is not the result of any reliable principles or methods.  Mr. Crain simply purchased a test Seagate Drive and plugged it into a computer.  Ex. 1, Crain Report ¶ 86.  The test Seagate drive that Mr. Crain purchased, however, did not even send him to a similar URL as the Google redirection link to which Dr. Chung navigated.  Ex. 3, Crain Dep. Tr., 188:6-189:25.  Mr. Crain testified that his report failed to analyze whether the registration link would remain cached in Google Chrome in order to rule out other potential explanations for the existence of the URL.  *Id.*, 189:12-25.  Mr. Crain also failed to test whether the registration link URL would prepopulate in Chrome.  *Id.*, 189:13-18.  Finally, Mr. Crain admitted he did not consider the other browsing history that Dr. Chung was conducting at the time to determine if an alternative explanation for Dr. Chung visiting the Google redirection link could be that Dr. Chung was looking to purchase an external drive at the time.  *Id.*, 189:1-193:16.  Mr. Crain's opinion should be rejected because his methodology was unsound in that he simply leaps to the conclusion that Dr. Chung "likely retained" the missing Seagate Drive without basing that conclusion on any discernable methodology.

Second, Mr. Crain cherry-picks information by ignoring reliable evidence and, therefore, engages in pure speculation.  *See, e.g.*, *In re Bextra & Celebrex Mktg. Sales Pracs. & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1176 (N.D. Cal. Nov. 19, 2007) (excluding expert testimony where expert "reaches his opinion by first identifying his conclusion . . . and then cherry-picking observational studies that support his conclusion and rejecting or ignoring the great weight of the evidence that contradicts his conclusion").  Experts cannot ignore data that directly contradicts their opinion.  *Barber v. United Airlines, Inc.*, 17 F. App'x 433, 437 (7th Cir. 2001).  Reliable expert opinion testimony must address, not "ignore[ ] [the] inconvenient evidence." *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056-57 (8th Cir. 2000) (holding cherry-picked opinion should have been excluded as "mere speculation").  Mr. Crain's conclusion willfully ignores the forensic evidence directly contradicting his opinion—specifically the evidence demonstrating Dr. Chung did not plug the Seagate Drive into any device after leaving Cisco.  *See* Ex. 4, Easttom Report ¶ 78; Ex. 3, Crain Dep. Tr. 193:2-6.  And Mr. Crain agreed that Dr. Chung did not connect the Seagate Drive

to any Poly computer, but also ignored that evidence in reaching his opinion on the Seagate Drive. Ex. 3, Crain Dep. Tr., 47:5-48:3; 238:15-22.  Mr. Crain selectively ignored relevant facts plainly tending to demonstrate that Dr. Chung did not retain and use the Seagate Drive, resulting in a cherry-picked and unreliable opinion that Dr. Chung "likely retained" it.  This is Cisco's unfounded speculation dressed up as expert opinion, and is wholly improper.

Mr. Crain's opinion that Dr. Chung retained the Seagate Drive invades the province of the factfinder is simply a bald conclusion regarding a factual matter that is not his to make.  The Court should exclude his opinion.

## V. CONCLUSION

For all the foregoing reasons, Defendant Plantronics, Inc. respectfully requests that this motion be granted and that the Court enter an order excluding the reports and testimony of Mr. Crain at trial in this action.  Specifically, the Court should exclude all or part of Mr. Crain's expert reports for the following reasons:

- Mr. Crain's opinions in Sections VII, VIII, IX, X, XI, XIII, XV, and XVI because they relate exclusively to discovery issues of document deletion that are improper and prejudicial;

- All of Mr. Crain's opinions because his opinions are untethered to the facts of this case because they do not relate to the retention or deletion of trade secrets;

- Mr. Crain's opinions based on the Quicklook database in Sections VIII, IX, X, XI, and XIII because they are unreliable and not based on any discernable methodology; and

- Mr. Crain's opinions regarding the Seagate Drive in Section XII because they are based on an unreliable and unsubstantiated methodology, improper evidentiary cherry-picking, and willful ignorance of the facts tied to this case.

//
//
//
//

1                                  Respectfully submitted,

2   Dated: November 3, 2022         MCDERMOTT WILL & EMERY LLP

3

4                                By: */s/* Michelle Lowery

Russell Hayman (SBN 110643)
rhayman@mwe.com
Jon Dean (SBN 184972)
jdean@mwe.com
Jason D. Strabo (SB 246426)
jstrabo@mwe.com
Michelle Lowery (SBN 302882)
mslowery@mwe.com
Tala Jayadevan (SBN 288121)
tjayadevan@mwe.com
McDERMOTT WILL & EMERY LLP
2049 Century Park East, Suite 3200
Los Angeles, California 90067
(310) 277-4110

Amol Parikh (admitted *pro hac vice*)
amparikh@mwe.com
Katharine M. O'Connor (admitted *pro hac vice*)
koconnor@mwe.com
Han Cui (admitted *pro hac vice*)
hcui@mwe.com
McDERMOTT WILL & EMERY LLP
444 West Lake Street, Suite 4000
Chicago, IL 60606
(312) 372 2000

*Attorneys for Defendants Plantronics, Inc. and Thomas Puorro*