RUSSELL HAYMAN (SBN 110643)
rhayman@mwe.com
JON DEAN (SBN 184972)
jdean@mwe.com
JASON D. STRABO (SBN 246426)
jstrabo@mwe.com
MICHELLE LOWERY (SBN 302882)
mslowery@mwe.com
TALA JAYADEVAN (SBN 288121)
tjayadevan@mwe.com
McDERMOTT WILL & EMERY LLP
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Telephone:    +1 310 277 4110
Facsimile:     +1 310 277 4730

AMOL PARIKH (admitted pro hac vice)
amparikh@mwe.com
KATHARINE M. O'CONNOR (admitted pro hac vice)
koconnor@mwe.com
HAN CUI (admitted pro hac vice)
hcui@mwe.com
McDERMOTT WILL & EMERY LLP
444 West Lake Street, Suite 4000
Chicago, IL 60606
Telephone:    +1 312 372 2000
Facsimile:     +1 312 984 7700

Attorneys for Defendants
PLANTRONICS, INC. AND THOMAS PUORRO

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND

| | |
|---|---|
| CISCO SYSTEMS, INC., a California Corporation, CISCO TECHNOLOGY, INC., a California Corporation, | Case No. 4:19-cv-07562-PJH |
| Plaintiffs, | **DEFENDANT PLANTRONICS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE THE EXPERT TESTIMONY OF ANDREW CRAIN** |
| v. | Date: January 18, 2023 |
| WILSON CHUNG, JAMES HE, JEDD WILLIAMS, and THOMAS PUORRO, individuals, and PLANTRONICS, INC. dba POLY, a Delaware Corporation, | Time: 1:30 p.m. Judge: Hon. Phyllis J. Hamilton |
| Defendants. | |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

    A.    Mr. Crain's irrelevant opinions related to discovery issues should be excluded now. 2

    B.    Cisco cannot rehabilitate Mr. Crain's failure to link any of his opinions to alleged trade secrets with after-the-fact and irrelevant lawyer argument .............................. 4

    C.    Mr. Crain's Quicklook methodology is untested and unsupported as a means for determining whether a document was on the Cisco MacBook as of a certain date.... 8

    D.    Cisco's argument that Mr. Crain's unreliable Seagate Drive opinion should be left to the factfinder fails. ............................................................................................. 13

CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bextra & Celebrex Mktg. Sales Pracs. & Prod. Liab. Litig.*,
   524 F. Supp. 2d 1166 (N.D. Cal. Nov. 19, 2007).....................................................14

*Cascade Yarns, Inc. v. Knitting Fever, Inc.*,
   Case No. C10-861, 2015 WL 11201216 (W.D. Wash. Jan. 30, 2015) .................................12

*Colby v. Newman*,
   Case No. 211CV07413SVWRZX, 2012 WL 12885118 (C.D. Cal. Nov. 20, 2012)............... 8

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) .........................................................................................4, 7, 13

*Daubert v. Merrell Dow Pharms., Inc.*,
   43 F.3d 1311 (9th Cir. 1995) (*Daubert II*)..........................................8, 9, 11, 14

*Domingo ex rel. Domingo v. T.K.*,
   289 F.3d 600 (9th Cir.2002).................................................................................. 9

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) ............................................................................................. 4

*GN Netcom, Inc. v. Plantronics, Inc.*,
   Case No. 18-1287, 2016 WL 3792833 (D. Del. Jul. 12, 2016)............................... 2

*In re Hanford Nuclear Reservation Litig.*,
   292 F.3d 1124 (9th Cir. 2002)............................................................................... 2

*HighMark Digital, Inc. v. Casablanca Design Centers, Inc.*,
   Case No. 18-cv-6105, 2020 WL 2114940 (C.D. Cal. Mar. 26, 2020) .................................. 6

*John v. Cty. of Lake*,
   Case No. 18-cv-6935, 2020 WL 3630391 (N.D. Cal. Jul. 3, 2020) ........................ 3

*Kolay Flooring Int'l, LLC v. Fuente*,
   Case No. 18-cv-00108, 2021 WL 4702429 (C.D. Cal. Sept. 10, 2021) ................................. 7

*Romero v. S. Schwab Co., Inc.*,
   Case No. 15-cv-815, 2017 WL 5885543 (S.D. Cal. Nov. 29, 2017)......................15

*SmartLinx Solutions, LLC v. Zeif*,
   Case No. 21-cv-711, 2022 WL 939846 (D.S.C. Mar. 29, 2022) ............................ 3

*State Farm Fire & Cas. Co. v. Electrolux Home Prod., Inc.*,
   980 F. Supp. 2d 1031 (N.D. Ind. 2013) .................................................................13

ii

*United States v. Ganesh*,
   No. 16-cr-00211, 2018 WL 905941 (N.D. Cal. Feb. 15, 2018) .................................................. 3

*United States v. George Royle V*,
   No. 18-CR-165, 2020 WL 2617133 (N.D. Cal. Jan. 29, 2020) ............................................... 9

*United States v. Mamah*,
   332 F.3d 475 (7th Cir. 2003) .................................................................................................. 4

*United States v. Northrop Grumman*,
   Case No. 95-cv-2985, 2003 WL 27366262 (C.D. Cal. Mar. 10, 2003) ................................. 14

*United States v. Olgado*,
   Case No. 17-cr-603, 2022 WL 62538 (N.D. Cal. Jan. 6, 2022) .............................................. 3

*Waymo LLC v. Uber Techs., Inc.*,
   Case No. 17-c-939, 2017 WL 6887043 (N.D. Cal. Nov. 14, 2017) ......................................... 6

*Wendell v. GlaxoSmithKline LLC*,
   858 F.3d 1227 (9th Cir. 2017) ............................................................................................... 14

*Williams v. Invenergy, LLC*,
   Case No. 13-cv-1391, 2016 WL 1725990 (D. Or. April 28, 2016) ........................................ 12

**Other Authorities**

Fed. R. Civ. P. 26(a)(2)(B)(iii) ..................................................................................................... 12

Fed. R. Civ. P. 26(e)(2) ................................................................................................................... 6

1

## <u>INTRODUCTION</u>

2   Cisco's Opposition (the "Opposition") to Poly's Motion to Exclude the Expert Testimony of

3   Andrew Crain ("Mr. Crain") fails to cite any relevant legal authority, much less any evidence, that

4   supports admitting Mr. Crain's opinions.  Mr. Crain's opinions should be excluded for at least the

5   following four reasons.  **First**, Cisco impliedly admits Mr. Crain's irrelevant and prejudicial opinions

6   related to discovery issues should be excluded by claiming the question is "premature."  The issue is

7   ripe now, however, because the related spoliation motions are fully briefed and there is no legal basis

8   to delay ruling on this motion.  **Second**, Cisco tellingly never directly addresses a key failure with

9   Mr. Crain's opinions—namely, that he never links them to the alleged trade secrets, and in fact

10  repeatedly **admitted** so.  In seeking to side-step this inherent error in Mr. Crain's report, Cisco shifts

11  the rhetoric from Mr. Crain's phrase "Cisco-related," to now describe his opinions vaguely as being

12  "closely tied" or "related" to the alleged trade secrets, or "referencing" the names Sunkist or Polaris.

13  This merely confirms that Mr. Crain's opinions are not linked to the *actual* trade secrets.  Cisco tries

14  to confuse and conflate the issues by referring to specific documents—some (but not all) of which

15  are on Cisco's trade secret disclosure (*see* Opp. at 9-10), but these documents are not connected to

16  Mr. Crain's opinions regarding alleged "retention" or "deletion" on the Cisco MacBook or cloud

17  accounts.  **Third**, Cisco's response to the uncontroverted evidence regarding the unreliability of

18  Quicklook misrepresents the opinions and testimony in the case and therefore fails.  The new

19  "literature" that Cisco cites in its Opposition brief—even if permissible to supplement Mr. Crain's

20  opinions—do not support Mr. Crain's conclusion that certain documents were on the Cisco MacBook

21  on a specific date.  **Fourth**, Cisco's attempt to frame Mr. Crain's unreliable methodology on the

22  Seagate drive as an issue of weight for cross examination fails because Mr. Crain had **no** basis for

23  his conclusion and cherry-picked to ignore the more plausible alternatives.[1]  Cisco should not be

24  _____

25  [1] Although irrelevant to this motion, Cisco's mischaracterization of a valid discovery dispute merits
    response.  Cisco claims Poly "repeatedly refused" to provide certain information in this case related

26  to Poly's internal pre-suit review.  *See* Opp. at 5 & C. Olsheski Decl. ¶ 7.  This characterization is
    wholly inaccurate.  What actually occurred is that Cisco sought discovery related to Poly's internal

27  investigation, and Poly asserted privilege because its in-house attorneys oversaw the internal
    investigation.  Judge Brazil found that some information was in fact privileged while other

28  information was not.  8/2/22 Special Master Brazil Order; 10/19/22 Special Master Brazil

1

permitted to offer untested and unsubstantiated conclusions dressed up as expert opinion. Accordingly, Mr. Crain's opinions should be excluded.[2]

## ARGUMENT

### A. Mr. Crain's irrelevant opinions related to discovery issues should be excluded now.

Cisco implicitly concedes Mr. Crain's opinions related to alleged deletion should be excluded if the Court decides against Cisco on its spoliation motions.  Cisco does not dispute that expert testimony on discovery issues should not be allowed at trial.  Instead, it claims the issue is "premature" and is best brought as a *motion in limine*.  Opp. at 7.  The issue of whether Mr. Crain's opinions regarding alleged deletion should be allowed is very much ripe right now because the spoliation motions are fully briefed and the Court should have the opportunity to decide the propriety of Mr. Crain's opinions at the same time as it considers the spoliation motions because they are interrelated.  The distinction Cisco tries to make between a *Daubert* motion and *motion in limine* is nonsensical as a *Daubert* motion is a type of *motion in limine*, which the Court of course has discretion to decide now.  *See In re Hanford Nuclear Reservation Litig.*, 292 F.3d 1124, 1131 (9th Cir. 2002) (characterizing *in limine* motions as *Daubert* motions); Opp. at 7.  The Court should decide the issue given that it is fully briefed and directly related to matters currently pending before the Court.

The issue of timing aside, contrary to Cisco's assertions, Poly clearly does not otherwise "concede[]" that Mr. Crain's opinions are "proper."  Opp. at 7.  Regardless of the Court's decision on the spoliation motions, Mr. Crain's opinions regarding retention and deletion are wholly improper and irrelevant because they are not tied to the alleged theory of liability—*i.e.*, the misappropriation

---

Order.  Poly complied with Judge Brazil's orders within the set timeline by presenting a corporate representative on September 21, 2022 and responding to specified Interrogatories.

[2] Cisco's repeated references to *GN Netcom, Inc. v. Plantronics, Inc.*, Case No. 18-1287, 2016 WL 3792833 (D. Del. Jul. 12, 2016), Opp. at 8, 11, are improper, irrelevant, and further confirm Cisco raises a discovery issue.  As Poly has made clear already in its proposed surreply to Cisco's spoliation motion against Poly and Dr. Chung (Dkt. 286-3 at 8), *GN Netcom* is inapposite because Poly made structural changes to its IT retention policies that prevent an employee from engaging in deletion.  In fact, Mr. Crain conceded he does not have any reason to doubt that Poly retains all of its emails and makes it impossible for any employee to permanently delete email. Dkt. 248-5, 70:18-71:10, 123:21-124:16.

2

of alleged trade secrets.  Part B., *infra*.

Cisco's position that Mr. Crain's opinion is admissible because it purportedly bears on the issue of intent regardless of whether spoliation occurred is completely unsupported.  Opp. at 8.  If the documents Dr. Chung allegedly deleted are *not trade secrets*, then whether he deleted them or not is irrelevant.  Dr. Chung never would have been prohibited from delinking or deleting his wife's work materials, for example, or photos and videos of his children.  Cisco's argument to the contrary merely underscores the potential for abuse and prejudicial argument regarding alleged irrelevant deletions, which, contrary to Cisco's assertions, most certainly should not be permitted without even an actual finding of spoliation.  For spoliation to occur, Cisco must first show that the document is one that "should have been preserved" in the first place—*i.e.*, that it is a relevant document.  *John v. Cty. of Lake*, No. 18-cv-6935, 2020 WL 3630391, at *5 (N.D. Cal. Jul. 3, 2020) (quoting Fed. R. Civ. P. 37(e)).  Cisco turns this argument on its head and suggests that an expert spinning tails regarding alleged document deletion is permitted to demonstrate intent—presumably intent to delete and spoliate relevant evidence—even if there is no finding of spoliation by the Court.  *See* Opp. at 8. This is not the law.  Indeed, the *Ganesh* case Cisco cites in support of this argument is inapposite as it is a criminal fraud and false claims case discussing the scienter requirement under the relevant criminal statute and, additionally, the "efforts to conceal" in that case related directly to the actual alleged false claims at issue.  *United States v. Ganesh*, No. 16-cr-00211, 2018 WL 905941, *1, *6-7 (N.D. Cal. Feb. 15, 2018).

Similarly, the cases Cisco cites to argue the alleged "mass-deletions" are relevant to intent also fail, Opp. at 11, because (a) its cases discuss ***criminal intent*** and this is a civil case in which intent is not an element of liability; and (b) although intent to ***download*** the actual trade secrets may be relevant to the element of misappropriation, that alleged intent has to be affirmatively linked to the actual trade secrets and the cases discuss downloading not ***deleting***.  *See United States v. Olgado*, Case No. 17-cr-603, 2022 WL 62538, at *5 (N.D. Cal. Jan. 6, 2022) (downloading large amount of relevant files evidence of criminal intent); *SmartLinx Solutions, LLC v. Zeif*, Case No. 21-cv-711, 2022 WL 939846, at *7 (D.S.C. Mar. 29, 2022) (evidence of mass downloading relevant to misappropriation element and sufficient to survive plausibility standard under Rule 12(b)(6)).  No

3

case states that opinion testimony regarding intent to delete (regardless of any connection to the alleged trade secrets) is independently relevant to a trade secrets action and therefore admissible.

The Court should exclude Mr. Crain's opinions in Sections VII, VIII, IX, X, XI, XIII, XV, and XVI because they relate exclusively to discovery issues that are improper and prejudicial.

**B. Cisco cannot rehabilitate Mr. Crain's failure to link any of his opinions to alleged trade secrets with after-the-fact and irrelevant lawyer argument.**

Cisco's Opposition brief never directly addresses Poly's argument that Mr. Crain must link his opinions to the alleged trade secrets to be relevant and, therefore, admissible expert opinions. Dkt. 248 at 13-15; *see, e.g.*, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993). Cisco tries to reframe the issue by claiming there is such a "low bar" for "relevance" that it should be allowed to introduce expert opinions despite their lack of connection to any issue of liability in the case. Opp. at 6-8. This is not so. An expert opinion is "relevant" only if it fits "a material aspect of the proposing party's case." *Daubert*, 509 U.S. at 597; *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (Lack of "fit"—or tying of an expert's opinion to the facts of case—means that the expert's opinion is "connected to existing data only by the *ipse dixit* of the expert"). Consequently, expert opinions must be "sufficiently tied to the facts" in order to aid the finder of fact. *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003) ("It is critical under Rule 702 that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support.").

The record in this case establishes that Mr. Crain's opinions are not tied to a material aspect of this trade secret action. For example, Mr. Crain admitted at his deposition that he did not tie any of his conclusions to the alleged trade secrets. More specifically, he admitted the following:

**Q.** And your report does not contain any opinions on whether any of the Cisco-related documents are alleged to be trade secrets? **A.** I think that's right.

**Q.** You are not providing any opinion, are you, on which of the alleged 381,832 files and folders contain alleged trade secrets? **A.** I think that's correct.

**Q.** And you wouldn't be surprised that these five documents do not appear on Cisco's trade secret disclosure, would you? . . . **A.** I don't know that one way or another.

4

**Q.** And you are aware that Zootopia is not a project Cisco was assessing as a trade secret in this case? **A.** I don't know that one way or the other.

**Q.** Were you ever asked to go look for certain documents identified as trade secrets in either of the cloud accounts? . . . **A.** No.

(Dkt. 248-5, 58:11-14; 100:17-102:12; 103:10-104:22; 181:11-182:2; 266:22-267:17; *see also* 109:16-22, 118:11-17, 200:17-21.)  Cisco cannot dispute these admissions.

Despite this testimony, Cisco argues instead that some of the files discussed in Mr. Crain's report or listed in his exhibits "referenc[e]," "relat[e]," or are somehow "closely tied" to the alleged trade secrets because they have "Polaris" or "Sunkist" names or were in folders with those names. Opp. at 3-4, 8-11.  These types of unexplained word games in an Opposition brief do not suddenly resuscitate irrelevant, untethered opinion testimony.  Whether Dr. Chung or any individual defendant retained or misappropriated documents vaguely "related" to or somehow "closely tied" to alleged trade secrets, whatever that may mean, is irrelevant.  We are at the merits stage of this case.  To be relevant and admissible, Mr. Crain's opinions must relate to the merits of Cisco's *trade secrets claim*.

Cisco attempts to confuse the issue and conflate the allegedly misappropriated trade secrets with the allegedly spoliated devices and accounts.  But the two are completely separate issues.  Mr. Crain never linked his opinions of alleged deletion on the Cisco MacBook and cloud accounts to any alleged trade secrets.[3]  Dkt. 248-5, 58:11-59:2, 102:2-12, 103:10-104:22.  This is despite knowing exactly what was on the Cisco MacBook as of February 3, 2019, having forensic artifacts from the Cisco MacBook after February 3, 2019, and knowing exactly what was in Dr. Chung's iCloud account as of August 5, 2019.  *See id.* at 28:15-21, 35:1-6, 100:24-101:9, 163:15-164:19; Dkt. 248-3 ¶ 32.  Cisco lists a handful of documents that contain "Sunkist" or "Polaris" in their title, apparently to further advance the assertion that because an allegedly spoliated document contained these words it must be relevant to the issue of trade secrets spoliation.  Opp. at 9-10.  But all of those documents

---

[3] Cisco's claim that the EA Document was deleted from the Cisco MacBook relies on Mr. Crain's unreliable Quicklook analysis.  *See infra* n.11.

1   appear on the Samsung USB Drive and the Seagate Drive, which are not allegedly spoliated devices.[4]

2   The Samsung USB was returned to Cisco through Digital Mountain. Dkt. 248-5, 172:3-7. Mr. Crain

3   received the file listing and forensic image of the Samsung USB. *See* Dkt. 248-3, Crain Rpt., ¶ 24 &

4   n. 27.   The location of the Seagate Drive may be in dispute, but Cisco does not claim Dr. Chung

5   spoliated the device.[5]   Simply put, Cisco cannot use Mr. Crain to testify regarding what documents

6   were on the USB drives.   Mr. Crain did not analyze the USB drives but rather relied on the Code42

7   reporting for the fact that documents were downloaded onto them. *See* Dkt. 248-3, Crain Rpt., ¶ 26;

8   *see also* Dkt. 248-5, 77:23-78:8; *HighMark Digital, Inc. v. Casablanca Design Centers, Inc.*, Case

9   No. 18-cv-6105, 2020 WL 2114940, at *8 (C.D. Cal. Mar. 26, 2020) (expert opinion inadmissible

10   where expert merely restates alleged facts learned from the party).

11   And even if the documents Cisco lists in its response were relevant to Mr. Crain's opinions

12   (they are not), Cisco cannot supplement an expert report through after-the-fact lawyer argument. *See*

13   Fed. R. Civ. P. 26(e)(2) ("Any additions or changes" to an expert's opinions must be disclosed

14   through a supplemental expert report); *Waymo LLC v. Uber Techs., Inc.*, Case No. 17-c-939, 2017

15   WL 6887043, at *5 (N.D. Cal. Nov. 14, 2017) (excluding "lawyer argument dressed up as expert

16   opinion").   Mr. Crain did not link any of his opinions to the alleged trade secrets, and Cisco's

17   attorneys cannot do so now. *Id.*   Cisco also does not articulate any reason why it matters to its trade

18   secret misappropriation claims whether Dr. Chung retained, opened, or deleted documents (whether

19   "Cisco-related" or not) that are not alleged trade secrets.   The Court should therefore reject Cisco's

20

21

22   [4] The documents titled "4341-078-71190_assy-polaris_20181213.SLDASM"* and "Polaris LCD
    LM270WR3-SSA3_3D_170320.SLDPRT"* were allegedly downloaded to the Seagate Drive. The

23   documents titled "CVTG_Polaris_ExecutionCommit(1).pptx,"*
    "CVTG_Polaris_ConceptCommit.pptx,"* "Sunkist-BC-September.pptx," and "Polaris prototpe
    walkthrough_small.mov" were allegedly downloaded to the Samsung drive. (Dkt. 282-4; CISCO-

24   00004631; CISCO-00004634; CISCO-00004639; CISCO-00004707).   Those with asterisks are on
    the trade secret disclosure.   As to the EA Document, Mr. Crain vaguely testified only that he is

25   "aware" the document is an alleged trade secret but admitted he never did any analysis to link his
    opinions to alleged trade secrets. Dkt. 248-5 at 58:11-19, 265:23-266:4.

26   [5] Cisco's evidence of the documents that Dr. Chung allegedly downloaded onto the Seagate Drive is
    a Code42 report, which is an internal Cisco software that, among other things, tracks downloads

27   to USB devices. Dkt. 248-9 at 296:9-298:25; 241:19-242:13; 265:10-266:7; 322:16-323:14. Mr. Crain
    is not the appropriate witness to authenticate the Code42 reporting, which was extracted by a former

28   Cisco employee, Kevin Currie. *Id.* at 190:6-191:2.

1    unsupported assertions.

2           Additionally, Cisco incorrectly suggests in its Opposition brief that Poly's motion puts too

3    high of a burden on expert opinion testimony in arguing that Mr. Crain had to analyze the trade

4    secrets and testify to the "scope" of the trade secrets to be admissible.  Opp. at 10.  This strawman

5    argument misses the mark.  Poly never argued that Mr. Crain has to offer opinions on the "scope" of

6    the alleged trade secrets for his opinions to be admissible.  *Compare* Dkt. 248 at 13-15, *with* Opp. at

7    10.  Rather, to be admissible, Mr. Crain needs to tie his opinions regarding deletion and spoliation

8    to the facts and circumstances at issue in this trade secret case.  The caselaw cited by Poly states this

9    burden quite clearly.  Dkt. 248 at 13-15.  Instead of addressing Poly's argument directly, Cisco

10   instead cites to a single case, *HighMark Digital*, for the uncontroversial point that an expert cannot

11   opine on legal conclusions, but may provide ***relevant*** opinions to the factfinder.  Opp. at 10.  Mr.

12   Crain must link his opinions to the actual liability allegations so that they are relevant.

13          Finally, Cisco's Opposition brief also highlights why permitting Mr. Crain to testify on the

14   issues in his report would be more prejudicial than probative.  Cisco tries to argue that the "scope"

15   or purported magnitude of any alleged deletion makes it "independently relevant."  *See* Opp.  at 10.

16   Not so.  Rather, permitting Mr. Crain to testify about alleged deletion of non-trade secret documents

17   would only confuse a factfinder as to relevant issues.  *See*, *e.g.*, *Kolay Flooring Int'l, LLC v. Fuente*,

18   No. 18-cv-00108, 2021 WL 4702429, at *2 (C.D. Cal. Sept. 10, 2021) (excluding expert testimony

19   on basis that any potential relevance is "'substantially outweighed' by the dangers of 'misleading the

20   jury,' 'confusing the issues,' and 'wasting time.' Fed. R. Evid. 403."); *see also Daubert*, 509 U.S. at

21   595 (a court acting as gatekeeper may exclude relevant evidence under Rule 403).   Further

22   highlighting this plain prejudice, Mr. Crain did not even try to determine what volume of the allegedly

23   deleted materials were even linked to personal accounts as opposed to other accounts.  Cisco should

24   not be permitted to testify about alleged deletions so that it can make the inference that all of the

25   alleged deletions somehow related to relevant materials.  In sum, Mr. Crain made no attempt to link

26

27

28

1   his opinions to the alleged trade secrets, which renders his opinions irrelevant.[6]

2   **C. Mr. Crain's Quicklook methodology is untested and unsupported as a means for**

3   **determining whether a document was on the Cisco MacBook as of a certain date.**

4   As Poly's opening brief demonstrated, Mr. Crain's Quicklook opinion is unreliable because

5   he did not explain his methodology at all, did not describe any testing in his report confirming his

6   assertions, and did not cite to any text or literature confirming that Quicklook is a reliable source of

7   forensic evidence for determining a ***specific date a document was on a computer***.  Dkt. 248 at 3, 15-

8   18; *see also Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) (*Daubert II*)

9   (in determining the reliability of proffered expert testimony, the district court's task "is to analyze

10  not what the experts say, but what basis they have for saying it"); *Colby v. Newman*, No.

11  211CV07413SVWRZX, 2012 WL 12885118, at *6 (C.D. Cal. Nov. 20, 2012) (granting motion to

12  exclude forensic accountant's testimony because the expert gave an "inadequate explanation of [his]

13  methodology," thereby providing "an independent basis for excluding [his] testimony").

14  As Cisco admits, Mr. Crain ***starts*** with the premise that "a necessary condition for a

15  Quicklook 'last accessed' date to update is that the corresponding file is stored on the computer at

16  the time." Opp. at 15.  But Mr. Crain made no attempt whatsoever even to test that hypothesis.  His

17  opinion merely assumes that hypothesis to be true:  that the Quicklooks database is a reliable method

18  to establish the date on which a document was on a computer.  Because Mr. Crain made no attempt

19  to prove this premise with his own testing, he needs something else to make the claim reliable.  Cisco

20  says it does not matter that Mr. Crain does not cite "any 'peer reviewed article' or 'objective source,'"

21  but it most certainly does matter when there is no other objective measure of reliability utilized by

22  the proffered expert like a repeatable test.  Opp. at 16.  Mr. Crain simply asserts what he claims

23  Quicklook shows without proof of its reliability—and then relies on that untested database to make

24  key conclusions as to when documents were allegedly on the MacBook.  Opp. at 13.  This type of

25

26  ---

[6] Further demonstrating the potential for confusion, Cisco conflates and combines the alleged "mass-downloads" and alleged "subsequent mass-deletion" in an attempt to infer that the two are linked or related.  Opp. at 11.  The alleged "mass-downloads" relates to the USB drives, while the alleged "mass-deletion" relates to the Cisco MacBook.  Cisco's argument infers that the two are somehow the same set of materials when they plainly are not.

27

28

8

untested opinion testimony is inherently unreliable and also amounts to quintessential inadmissible *ipse dixit*. *Domingo ex rel. Domingo v. T.K.,* 289 F.3d 600, 607 (9th Cir.2002) (affirming the exclusion of the *ipse dixit* testimony of plaintiff's expert that was not based upon objective, verifiable evidence); *see also See Daubert II*, 43 F.3d 1311 at 1319 (9th Cir. 1995) (noting that the trial court's gate-keeping function requires more than "simply taking the expert's word for it").

Cisco argues in its Opposition brief that, "Poly's criticism of what data Mr. Crain used in his analysis is legally insufficient to exclude Mr. Crain's testimony, because '[e]xperts' decisions about what data to use in their analysis bear on the weight, not the admissibility, of expert testimony.'" Opp. at 12. The problem with Mr. Crain's Quicklook opinions does not concern "decisions about what data to use in [his] analysis," Opp. at 12, however, but rather with the lack of any scientific basis for the analysis itself. The key issue here is not whether the Quicklook database can be considered by an expert at all—it can, if utilized properly—but rather whether the Quicklook database is a reliable tool in this case for determining whether a document was on a computer as of a certain date—it is not.[7] Mr. Crain uses the Quicklook database to conclude that documents were on the Cisco MacBook as of a certain date. *See* Opp. at 4-5. As Dr. Easttom explained, the Quicklook database can be a useful tool to determine whether a document *ever* was *viewed* or Quicklooked on a computer. *See* Dkt. 283-1, Easttom Tr. at 100:8-101:15. The best example of this is in a child pornography case where a determinative fact is whether a document was ever viewed at any point in time. *Id.* at 100:23-101:2. Cisco's reliance on *United States v. George Royle V*, No. 18-CR-165, 2020 WL 26117133, at *3, *5 (N.D. Cal. Jan. 29, 2020), demonstrates exactly this point. *See* Opp. at 12-13. *George Royle V* is a child pornography case where "the MacBook's QuickLook thumbnail cache [] indicat[ed] the presence of child pornography on the MacBook"—but the Quicklook database in that case never was used to determine the specific date on which a document was on the

---

[7] Cisco's discussion on page 14 seems to imply that it is enough that Mr. Crain identified what he reviewed—period—and that Dr. Easttom was able to cobble together some understanding of the data Mr. Crain reviewed. That does not mean that Mr. Crain's *methodology* is reliable or testable in any way. Notably, Cisco does not (because it cannot) cite to Mr. Crain's report even for a clarification of the field within the Quicklook database that Mr. Crain calls the "last accessed" date (the name of the field actually is "last_hit_date"). *See* Opp. at 14 & Dkt. 282-8 at 427.

9

1   computer.  *Id.* at \*5.

2       And Cisco cites no authority (neither legal nor scientific) for the proposition that a Quicklook

3   database is a reliable tool for determining whether a document was on a computer as of a certain date.

4   This is not a question of weight, but of reliability and admissibility.  Permitting Mr. Crain to testify

5   as an expert in blind reliance on the Quicklook database, without performing any testing or

6   establishing any basis for its reliability, would allow conclusory opinion in the form of expert

7   testimony and would suggest to a factfinder that the Quicklook database is forensically sound and

8   reliable in determining the specific date on which a document was on a computer.  Nothing in Mr.

9   Crain's report supports that conclusion.

10      Because Mr. Crain states no basis for his reliance on Quicklook, Cisco tries to somehow

11  rehabilitate Mr. Crain's opinions by misrepresenting other expert testimony in the case.  *See* Opp. at

12  12-14.  Mr. Finch's and Dr. Easttom's testimony regarding Quicklook, however, support Poly, not

13  Cisco.  Mr. Finch explained that he did *not* form any opinion or do any analysis regarding the

14  Quicklook database on the Cisco MacBook.  *See* Dkt. 284-1, Finch Tr., 153:7-156:23 ("Q.  In your

15  report and in your work, are you offering any opinion on the accuracy of the dates in the [Quicklook]

16  database that was found on the MacBook computer that you analyzed? . . . A.  No, I didn't opine on

17  that in my report.").  In addition, Cisco attempts to undercut Dr. Easttom's analysis regarding the

18  Quicklook database by claiming that he failed to identify any file in the Quicklook database on his

19  test computer that had a "last accessed" date (which is not actually called a "last accessed" date in

20  Quicklook) later than when the file was removed from the computer.  Opp. at 16.  But that is precisely

21  what Dr. Easttom found through his testing.  As Dr. Easttom explained during his deposition, he

22  found files from a USB drive in the Quicklook database with "last-accessed date[s] . . . that reflected

23  a date well past the last time the USB had been . . . connected."  Dkt. 266-2,  Easttom Tr., 424:24-

24  426:11.[8]  Thus, the substance of neither Mr. Finch's nor Dr. Easttom's testimony lends any support

25

26  [8] Dr. Easttom demonstrated through his testing that the Quicklook database can include records for
    documents that were ***never on the computer to begin with***, but rather accessed through an external
27  drive, as he clearly stated during his deposition. Dkt. 266-2, Easttom Tr., 144:21-145:13, 148:20-
    149:6, 151:18-152:7.  That uncontroverted fact in itself shows that the Quicklook database is not a
28  reliable indicator of documents that were previously on the computer.

to Mr. Crain's opinions regarding Quicklook.[9]

At the same time, Cisco tries to gloss over Mr. Crain's direct admissions that his Quicklook theory is untested and lacks scientific basis.  Cisco admits that "Mr. Crain's opinions related to Quicklook are not based on testing" but rather vaguely based on his purported "extensive experience."  Opp. at 15.[10]  Mr. Crain admitted that his report does not describe any tool he used to examine the Quicklook database, or even what table within the database he analyzed.  Dkt. 248-5, 53:13-55:7.  In addition, Mr. Crain admitted that he did not cite any forensic investigation manuals or texts that recommend the Quicklook database as a source of forensic evidence or cite any sources whatsoever for his various assertions about Quicklook.  *Id.* at 54:24-55:7, 132:14-133:7, 136:17-137:5, 138:9-139:18, 141:1-4.

Despite the fact that the very issue here is what causes the "last accessed" date to update, Mr. Crain could not answer basic questions about how Quicklook operates.  *Id.* at 134:17-135:5 (Q. There aren't any tests described in your report regarding how often Quicklook retrieves or checks on a stored thumbnail, is there? A. I think that's correct.  Q. You don't describe in your report that Quicklook retrieves or checks on stored thumbnails at any regular interval, do you? A. I don't say that no. Q. And you are aware of Quicklook retrieving or checking on stored thumbnails at any regular interval?  A. I'm not aware that it's on some exact precise, once-per-hour kind of thing. That's correct.).  Cisco also admits that Mr. Crain could not "list off all of the different sort of permutations or actions or scenarios" that would cause Quicklook "last accessed" date to update.  Opp. at 15.  In fact, Mr. Crain could not list ***any*** "permutations" that cause the Quicklooks date to update.  *See* Dkt.

---

[9] Moreover, Cisco's misleading and incomplete references to the testimony of other experts in this case cannot cure Mr. Crain's deficiencies.  Dr. Easttom is the only expert that actually tested the Quicklook database and found it unreliable.  *Compare* Dkt. 249-2, Easttom Rpt., ¶¶ 16, 168, 171, *with* Dkt. 248-5 at 20:15-23:7.  The unfounded claim that Dr. Easttom's Quicklook findings as to unreliability were not definitive enough does not somehow mean that Mr. Crain should be permitted to blindly rely on Quicklook.  And Mr. Finch definitively stated he provided no findings in his report on Quicklook and there is no evidence he in any way relied upon this database. Dkt. 284-1, 153:7-156:23.  But regardless, Cisco's baseless attacks clearly do not suddenly transform Mr. Crain's untested opinions into admissible ones.

[10] The fact that Mr. Crain has been using Quicklook for "years" is beside the point.  Opp. at 12.  He could have been using it improperly or in entirely different circumstances.  Cisco cannot rely on Mr. Crain's say so alone as that is improper *ipse dixit*.  *Daubert II*, 43 F.3d at 1319.

248-5, 155:18-23.  If any of the possible causes could result in an updated "last accessed" date for a document not physically on a computer, then Mr. Crain's opinions are not probative of anything and his untested reliance on the Quicklook database plainly unsound.   Simply put,   Mr. Crain's methodology is unsound and fails because he did not in any way test whether Quicklook can update the "last accessed" date for a document that no longer is on the computer or never was on the computer in the first place because it was accessed through a USB drive.[11]

Cisco tries to supplement Mr. Crain's report with new "literature" allegedly supporting his Quicklook opinion, Opp. at 16, but Mr. Crain did not cite or rely on these sources in his report.  As such, this is another improper attempt by Cisco to supplement Mr. Crain's report.  Fed. R. Civ. P. 26(a)(2)(B)(iii) ("The report must contain . . . any exhibits that will be used to summarize or support" the expert's opinions) (emphasis added); *Williams v. Invenergy, LLC*, Case No. 13-cv-1391, 2016 WL 1725990, at *16 (D. Or. April 28, 2016) (citing Rule 26(a)(2)(B)(iii) in rejecting plaintiff's attempt to rely on a declaration in its Daubert opposition brief that included "string citations to various papers and studies which purportedly support [plaintiff's expert's] opinion" but which the expert "did not cite . . . in his expert witness report"); *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, Case No. C10-861, 2015 WL 11201216, at *2 (W.D. Wash. Jan. 30, 2015) (striking declaration submitted with plaintiff's Daubert opposition brief that detailed "research sources" not discussed in expert report).

The new "literature" Cisco has conjured up for its response does not support Cisco's position. The literature only generally discuss uses for the Quicklook database, like determining whether a document was on a computer at any time.  None of the materials state that the Quicklook database

---

[11] The EA Document is a prime example of how Mr. Crain's opinions related to Quicklook are based on an unsound and unreliable methodology.  The EA Document that was located on the Quicklook database was: (a) found among the Cisco MacBook download activity artifacts as having been downloaded to the computer in December 2018; but (b) not located on the CrashPlan back-up of the Cisco MacBook dated February 3, 2019. Dkt. 249-2, Easttom Rpt. ¶ 181.  There is no further entry in the downloads activity showing Dr. Chung downloaded the EA Document again after February 3, 2019.  *Id.*  This necessarily means one of two things.  The first, logical explanation, is that the EA Document no longer was on the computer in October 2019, but the "last accessed" date for the document updated regardless.  The only other option is that the document was on Cisco's CrashPlan and Cisco failed to produce it.

1   can or should be used to determine **a date certain** on which a document was on a computer.  *See* Dkt.

2   288-11 at 19 ("Quick Look Thumbnails . . . can still serve the purpose of identifying visual content.");

3   Dkt. 288-12 at 1, 3-4 (Quicklook content is useful for determining whether specific file names

4   appeared in a Macintosh computer's history and in what folder); Dkt. 288-13 (generally discussing

5   how to convert the Quicklook database into a usable format).  Regardless, none of these materials

6   are cited in Mr. Crain's report and therefore could not form a basis on which he relied on Quicklook

7   in this case in any event.

8       Because Mr. Crain's untested and unscientific reliance on the Quicklook database is core to

9   his conclusions regarding alleged document deletion, this is an issue not of weight, but of reliability.

10  The opinion therefore should be excluded.  *See Daubert*, 509 U.S. at 589.[12]

11      **D.  Cisco's argument that Mr. Crain's unreliable Seagate Drive opinion should be left to**

12      **the factfinder fails.**

13      Cisco claims the Seagate Drive is relevant because Dr. Chung allegedly downloaded hundreds

14  of thousands of files onto it before leaving Cisco.  Opp. at 3, 17.  Cisco apparently seeks to have

15  Mr. Crain offer opinions regarding the Seagate Drive to improperly infer that something nefarious

16  occurred with that drive.  But therein lies the problem.  Mr. Crain is aware of the downloads from

17  that drive only because that was what he was told, and experts cannot act as mouthpieces simply to

18  relay facts.  *State Farm Fire & Cas. Co. v. Electrolux Home Prod., Inc.*, 980 F. Supp. 2d 1031, 1048

19  (N.D. Ind. 2013) ("[A]n expert's proffered opinion that merely parrots information provided to her

20  by a party is generally excluded.").

21      Still further, Mr. Crain makes the unsupported conclusion that Dr. Chung *retained* or

22  misappropriated the Seagate Drive after he left Cisco—based solely on a Google Chrome hyperlink

23

24  ――――――――――――――――

25  [12]  Cisco further argues that "Poly had never raised any argument, prior to Mr. Crain's submission of his expert report, that the Quicklook database was unreliable—despite knowing for months that Cisco was relying on that database."  Opp. at 16.  Cisco appears to be suggesting that a *Daubert* motion is

26  due to be filed as soon as counsel mentions a topic in an email.  *Id.* at 16 & Ex. I.  Cisco cites no support for this proposition.  This argument is completely without merit.  Poly was under no

27  obligation to raise any objections to the use of Quicklook before its *Daubert* motion.  Cisco's desperate argument to the contrary highlights the fact that Mr. Crain's unsupported opinion must be

28  excluded.

that does not even match the type of hyperlink that Mr. Crain visited with a drive that he purchased. Dkt. 248-5, 188:6-189:25.  Cisco does not contest the fact that the hyperlink Mr. Crain visited does not match Dr. Chung's Chrome browsing history.  Nor can it because Mr. Crain confirmed this fact. *Id*.  As Cisco puts it, Mr. Crain "did not consider" the other possibilities such as Dr. Chung accidentally visiting the Seagate registration page.  Opp. at 19.[13]  In sum, Mr. Crain purchased a Seagate drive, the webpage he was directed to did not even match what Dr. Chung's Chrome history showed, and then he jumped to the unsupported conclusion that Dr. Chung retained the Seagate Drive while ignoring the other evidence and possible inferences.  That is plainly cherry-picking.  *See*, *e.g.*, *In re Bextra & Celebrex Mktg. Sales Pracs. & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1176 (N.D. Cal. 2007) (excluding expert testimony where expert "reaches his opinion by first identifying his conclusion . . . and then cherry-picking observational studies that support his conclusion and rejecting or ignoring the great weight of the evidence that contradicts his conclusion").

Cisco argues that Mr. Crain was not required to "eliminate all possible explanations for data to offer reliable testimony."  Opp. at 19.  This argument is irrelevant as it is not what Mr. Crain did. Mr. Crain did not fail to eliminate other explanations—rather, he jumped to a conclusion that was not even supported by the one piece of data he reviewed and then ignored every single other plausible conclusion.  Mr. Crain has no *basis* at all for his conclusion that Dr. Chung retained the Seagate Drive—and that renders his opinion unreliable.  *Daubert II*, 43 F.3d at 1316.  Cisco's cited cases are inapposite or support Poly.  *See Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1235-37 (9th Cir. 2017) (not addressing cherry picking and merely stating that expert opinion regarding a rare disease was admissible even though the experts had not published studies on the disease because "the standards for courtroom testimony do not necessarily parallel those of the professional publications"); *United States v. Northrop Grumman*, Case No. 95-cv-2985, 2003 WL 27366262, at *6 (C.D. Cal. Mar. 10, 2003) (expert testimony admissible where the expert formed an opinion after

---

[13] The point Cisco bolds and italicizes at Opp. 18:5 is uncontested and inconsequential.  The Seagate Drive registration page had the same serial number as the device at issue because it is the registration page for the device at issue.  The relevant question is whether Dr. Chung's visiting the registration page through a Google redirection link is evidence Dr. Chung had the Seagate Drive in his possession on that date—it is not.

reviewing relevant literature and "considered a plethora of documentation" and ignored implausible alternatives). *Romero v. S Schwab Co., Inc.*, supports Poly's position outright. It states that an expert testimony must "address[]  obvious alternative causes and provide[] a reasonable explanation for dismissing those specific alternative factors identified by the defendant." Case No. 15-cv-815, 2017 WL 5885543, at *14 (S.D. Cal. Nov. 29, 2017) (citation omitted). Here, Mr. Crain has failed to do just that. And unlike the expert in the *Northrop Grumman* case Cisco cites, Mr. Crain ignored the *more plausible* explanations and chose to credit the one implausible explanation. His conclusory opinion, therefore, is unreliable.

Finally, in a desperate attempt to speculate that Dr. Chung could have plugged the Seagate Drive into another computer, Cisco raises the new and completely hypothetical concept of the existence of a computer other than the Cisco MacBook and Dr. Chung's three Poly laptops. Cisco agrees that there is "evidence showing [] that the Seagate drive had not been connected to either the MacBook or Dr. Chung's Poly-issued work laptops." Opp. at 20. In other words, the forensic evidence clearly shows Dr. Chung did not plug the Seagate Drive into one of the known computers. Instead of challenging this point (because it cannot), Cisco makes a last-ditch attempt to imply there was some heretofore unidentified computer that could have been used to access the Seagate drive. There simply is no evidence of any such a computer. The only mention of an "iMac" anywhere is from an old folder called "iMac" on one of Dr. Chung's cloud accounts (Dkt. 248-5 at 176:3-23), which he no longer used in 2019 along with another "very old MacBook Pro" (Dkt. 288-16 at 290:22-291:4.). Dr. Chung further testified that he *did not* "store any Cisco documents" on those old personal computers and he used them *prior* to the time period at issue in this case. (*Id.* at 291:12-20). After Dr. Chung's testimony, Cisco failed to pursue this discovery issue further. As such, there is no actual forensic evidence of any other computer that was been used during the time periods at issue in this case. The Court should exclude Mr. Crain's unreliable Seagate Drive opinion.

## CONCLUSION

For the above stated reasons, and for the reasons stated in Poly's reply brief, Poly respectfully requests that this Court grant Poly's Motion to Exclude the Expert Testimony of Mr. Crain.

//

1    Dated: November 25, 2022             **McDERMOTT WILL & EMERY LLP**

2

3                                    By:   */s/ Michelle Lowery*

4                                          Michelle Lowery (SBN 302882)
                                           mslowery@mwe.com
5                                          Russell Hayman (SBN 110643)
                                           rhayman@mwe.com
6                                          Jon Dean (SBN 184972)
                                           jdean@mwe.com
7                                          Jason D. Strabo (SB 246426)
                                           jstrabo@mwe.com
8                                          Tala Jayadevan (SBN 288121)
                                           tjayadevan@mwe.com
9                                          McDERMOTT WILL & EMERY LLP
10                                         2049 Century Park East, Suite 3200
                                           Los Angeles, California 90067
11                                         (310) 277-4110

12
                                           Amol Parikh (admitted *pro hac vice*)
13                                         amparikh@mwe.com
                                           Katharine M. O'Connor (admitted *pro hac vice*)
14                                         koconnor@mwe.com
                                           Han Cui (admitted *pro hac vice*)
15                                         hcui@mwe.com
                                           McDERMOTT WILL & EMERY LLP
16                                         444 West Lake Street, Suite 4000
                                           Chicago, IL 60606
17                                         (312) 372 2000
                                           *Attorneys for Defendants Plantronics, Inc. and*
18                                         *Thomas Puorro*

19

20

21

22

23

24

25

26

27

28